

ORIGINAL
FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 23 2003

LUTHER D. THOMAS, Clerk
By_____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICHARD BROWN; MARY C. BROWN;           )
SANDRA JANSEN; LAMARA MORRIS;           )
JAMES MORRIS; CHERYL CRADDOCK;          )
CHRISTOPHER CRADDOCK; JOSEPH            )
BANIEWICZ; LINDA WILSON; WILLIAM        )   CIVIL ACTION FILE
WILSON; CHRISTINA BURCH; NANCY          )
BROCK; DENNIS BROCK; GEORGE LEWIS;      )   NO. _____
KATHLEEN RANSDELL; LEWIS A.             )
RANSDELL; GLORIA HUBER; DONALD F.       )
HUBER; THERESA PERFETTO; SHANON         )   1:03-CV-2070
KEENAN; ERIC KEENAN; TRACY              )
FOINTNO; ARZELLA WHITE; MICHAEL         )
MEAD; IRIS MEAD; SYLVIA FITE;           )          -JTC
WILLIAM L. FITE; WILMA PARHAM;          )
AMOROS ALEXANDER PARHAM; CARITA         )
MYRICK; LILLIAN IDLETT; EUGENE          )
IDLETT; ANGELA WHITFIELD; MAX           )
WHITFIELD; KATHLEEN KNEZICH;            )
DEBORAH JONES; SUSAN THURNHERR;         )
LARRY THURNHERR; CHERYL BESEDICK;       )
REBECCA BOYETTE; CYNTHIA EDWARDS;       )
SYLVIA BROWN; BRENDA WORLEY;            )
JAMES WORLEY; ELAINE DAVIDSON;          )
EDWARD DAVIDSON; PATRICIA               )
GRANIERO; DONALD GRANIERO; GILLIAN      )
PAWLICK; HELEN MOORE; MONIQUE           )
MARCOUX; ROCK MARCOUX; SHIELA           )
HAROLD; CHARLES HAROLD; LESA            )
THOMAS; GARY THOMAS; LUTHER             )
PHILLIP CARTER; KAREN MOSLEY            )
CARTER; HELEN BLANQUE; JOHN             )
BLANQUE; MICHELLE CHICK; JOHN           )
LANDWEHR; DONNA LANDWEHR;               )
BEVERLY DAVIS; JOEL ROSENBLATT;         )

JUDGE RECEIVED
Consent To US Mag. _____
Pretrial Instructions _____
Title VII NFC
_____

PAMELA TAYLOR; KATHY BARKER;           )
KEITH BARKER; GLADYS HACKNEY;          )
LINDA WHITE; WANDA CARTER; MARCEL      )
CARTER; FLORENCE WILSON; RONALD        )
WILSON; BARBARA STADLER; KENNETH       )
STADLER; CAROL CANNAROZZO; VICTOR      )
CANNAROZZO Jr.; ANGELA GUAGLIANO;      )
NORMA JEAN ROBERTS; EARL SCOTT;        )
MARVELLE EDELIN; RHONDA TRACEY;        )
FRANCIS CLARK; BARBARA HARTNETT;       )
SALLY ROGALA; PATRICIA FULLER;         )
JOANN ABRAM; MARY SUGGS; LEON          )
SUGGS; TAMMY FRYMAN; RANDOLPH          )
FRYMAN; MINNIE FOX; KIMBERLY           )
GREEN; JAMES PASTONIK; YVONNE          )
RUTTERS; THOMAS RUTTERS; DEBORAH       )
GOOD; DONALD W. GOOD; ANETTE           )
KELLY; MARILYN THOMPSON; ALLEN         )
NESTOR; BLEN GARY; and GENA WILSON,    )
                                       )
                         Plaintiffs,   )
                                       )
v.                                     )
                                       )
WYETH, INC., f/k/a AMERICAN HOME       )
PRODUCTS CORPORATION; WYETH            )
PHARMACEUTICALS, INC., f/k/a WYETH-    )
AYERST PHARMACEUTICALS, INC., a        )
Division of American Home Products     )
Corporation; INDEVUS                   )
PHARMACEUTICALS, INC., f/k/a           )
INTERNEURON PHARMACEUTICALS, INC.;     )
MEDEVA PHARMACEUTICALS, INC.;          )
FISONS PHARMACEUTICALS; CELLTECH       )
PHARMACEUTICALS, INC.; GOLDLINE        )
LABORATORIES, INC.; ZENITH-GOLDLINE    )
PHARMACEUTICALS, INC.; ROBERT L.       )
SCOTT, a citizen of the State of Georgia; JOHN  )

2

**A. MOLNAR, a citizen of the State of Georgia;**          )
**STEVEN KAISER a citizen of the State of**                )
**Georgia; and JOHN DOE NOS. 1 - 5,**                      )
                                                           )
                                    **Defendants.**   )
                                                           )

## NOTICE OF REMOVAL

Defendants Wyeth, formerly known as American Home Products Corporation and including defendant Wyeth Pharmaceuticals, Inc. (formerly known as Wyeth-Ayerst Pharmaceuticals, Inc.), Robert L. Scott, John A. Molnar and Steven Kaiser (collectively, "Petitioners") file this Notice of Removal removing this action from the State Court of Fulton County, Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division. For the reasons stated below, this Court should sever, and retain jurisdiction over, the claims of all the plaintiffs except for Cheryl Besedick and Rebecca Boyette – the only plaintiffs who assert claims against a properly joined non-diverse defendant.

### Preliminary Statement

Each plaintiff alleges injuries arising from his or her use, or his or her spouse's use, of the diet drugs fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine. Pondimin often was taken in combination with

3

~ Doc# 513553.02 ~

phentermine. Wyeth sold Pondimin and Redux, but not phentermine. Phentermine was sold by a number of other companies.

All federal diet drug cases have been consolidated before the United States District Court for the Eastern District of Pennsylvania (the "MDL Court") since 1997. The MDL Court has developed substantial expertise with respect to the legal and scientific issues presented in diet drug cases. In 2000, the MDL Court approved a nation-wide class action settlement (the "National Settlement"). The settlement class includes all diet drug users except for those who opted out of the class. Plaintiffs allege that, although they are members of the settlement class, they may sue under provisions of the National Settlement that permit class members to file lawsuits in certain circumstances.[1]

There has been an explosion of cases in the diet drug litigation in which plaintiffs attempt to evade the MDL Court by filing lawsuits in state court, fraudulently joining non-diverse defendants, against whom there is no reasonable possibility of recovery or any good faith intent to pursue a claim, and misjoining in

---

[1]   It is yet to be determined whether plaintiffs meet the medical and other criteria for being permitted to assert such claims under the terms of the National Settlement. If they do not meet those criteria, an existing injunction entered by the MDL Court bars and enjoins plaintiffs from asserting their claims. Brown v. Am. Home Prods. Corp., Nos. 1203 and 99-20593, 2000 WL 1222042, at *72 (E.D. Pa. Aug. 28, 2000). If this case is transferred to the MDL Court, the MDL Court will determine whether plaintiffs meet those criteria.

4

one complaint the claims of dozens or even hundreds of plaintiffs, only one or a

small number of whom are not diverse from Wyeth.  The MDL Court addressed

this problem in Anderson v. American Home Products Corporation, 220 F. Supp.

2d 414 (E.D. Pa. 2002), explaining:

> What has been transpiring can only be characterized as a
> sham, at the unfair expense not only of AHP [now known
> as Wyeth] but of many individuals and small enterprises
> that are being unfairly dragged into court simply to
> prevent the adjudication of lawsuits against AHP, the real
> target, in a federal forum.

Id. at 425 (emphasis added).   The Court cautioned that "'so long as federal

diversity jurisdiction exists . . . the need for its assertion may well be greatest when

plaintiff tries hardest to defeat it.'"  Id. (quoting Boyer v. Snap-on Tools Corp., 913

F.2d 108, 111 (3d Cir. 1990)).

In Anderson, the MDL Court specifically held that the plaintiffs had

fraudulently joined phentermine manufacturers, sales representatives, pharmacies

and doctors to try to defeat diversity jurisdiction.  220 F. Supp. 2d at 420-25.  The

MDL Court concluded that the phentermine defendants were fraudulently joined

because, among other things, there is no epidemiologic data that phentermine

actually causes heart problems, and phentermine defendants have been "routinely

and voluntarily dismissed from hundreds of cases by plaintiffs without any

settlement."  Id. at 421; see also id. at 420.  The MDL Court also concluded that

5

the sales representative defendants were fraudulently joined, noting that the complaints failed to allege that the sales representatives supplied plaintiffs or their doctors with any drugs, failed to comply with Federal Rule of Civil Procedure 9(b), and failed to provide a reasonable basis for any claim under state law. Id. at 424-25. The MDL Court further concluded that the pharmacy defendants were fraudulently joined because there was no basis for a claim against them under state law and diet drug plaintiffs "never pursued [them] to judgment." Id. at 424.

Addressing the claims against the defendant doctors, the MDL Court found that forty-eight of the fifty plaintiffs had not been treated by the doctors. Accordingly, the claims of the only two plaintiffs who had been treated by non-diverse doctors were remanded to state court, and the MDL Court retained diversity jurisdiction over the claims of the other forty-eight plaintiffs. Anderson, 220 F. Supp. 2d at 422. This was consistent with the MDL Court's prior decision in Chaney v. Gate Pharmaceuticals, No. Civ.A. 98-20478, 1999 WL 554584 (E.D. Pa. July 16, 1999). In that case, plaintiffs had attempted "to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs." Id. at *3. The MDL Court found joinder of such claims in one pleading was "devoid of any redeeming feature

6

as respects the underlying purpose of the joinder rules." Id. It thus severed the claims of the non-diverse plaintiffs and retained jurisdiction over the claims of the diverse plaintiffs, applying the approach that the Eleventh Circuit Court of Appeals approved in Tapscott v. M.S. Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, 204 F.3d 1069 (11th Cir. 2000). Chaney, 1999 WL 554584, at *2-*4.

Unfortunately, the sham litigation that the MDL Court tried to stop in Anderson continues. In an effort to avoid the MDL Court, plaintiffs are filing scores of cases in Fulton County that fraudulently join defendants and plaintiffs from all over the United States. The Complaint in this case is one example. It incorporates the disparate claims of plaintiffs from several states whose residencies are diverse from the real defendant in this case, Wyeth. Yet plaintiffs attempt to defeat federal jurisdiction as to these plaintiffs by fraudulently joining as defendants phentermine manufacturers and former Wyeth employees, and by naming just two plaintiffs who are not diverse from Wyeth.

Plaintiffs' ploy must fail. As demonstrated below, the phentermine defendants in this case, as in Anderson, are fraudulently joined. Plaintiffs do not allege that they took a brand of phentermine that any non-diverse phentermine manufacturer made, and there is no evidence that phentermine causes the injury

7

plaintiffs allege. Indeed, in the entire history of the diet drug litigation, no phentermine defendant has ever paid a penny in judgment or settlement. Moreover, plaintiffs' claims against the phentermine defendants are time-barred.

In addition, the Wyeth employee defendants are fraudulently joined. Plaintiffs have no reasonable basis for a claim against them and no good faith intent to pursue one. Among other things, plaintiffs do not allege that these defendants had any contact with plaintiffs or their doctors, and plaintiffs cannot show that these defendants harmed plaintiffs in any way.

Finally, the plaintiffs who are diverse from Wyeth – and whose claims clearly would be subject to federal jurisdiction if they had sued individually – cannot defeat Wyeth's right to removal simply by joining their claims with those of one or more plaintiffs who are not diverse from Wyeth. The claims of all plaintiffs who are diverse from Wyeth belong in federal court and this Court should sever and retain jurisdiction over them.

### **The Complaint**

1.

Wyeth is a defendant in a civil action brought against it in the State Court of Fulton County entitled <u>Richard Brown, et al. v. Wyeth, Inc., et al.</u>, bearing Civil Action No. 2003VS052187.

8

2.

A copy of the Complaint, the Amended and Recast Complaint, and any process, pleadings and orders served on or by Petitioners are attached hereto as Exhibit A.

3.

The action was commenced by the filing of a Complaint on or about June 23, 2003, and an Amended and Recast Complaint on or about June 30, 2003, in the State Court of Fulton County.

4.

The Complaint names one hundred four individual plaintiffs. Based upon the allegations in the Complaint, the plaintiffs are citizens of the following States:

Maryland – Lamara Morris, James Morris, Linda Wilson, William Wilson, Christina Burch, Monique Marcoux, Rock Marcoux, Sheila Harold, Charles Harold, Joseph Rosenblatt, Marvelle Edelin, Rhonda Tracey, Francis Clark, Sally Rogala, Deborah Good, Donald W. Good, Annette Kelly, Marilyn Thompson and Gena Wilson.

New York – Kathleen Knezich, Susan Thurnherr, Larry Thurnherr, Gillian Pawlick, Florence Wilson, Ronald Wilson, Barbara Stadler, Kenneth Stadler, Carol Cannarozzo, Victor Cannarozzo Jr. and Angela Guagliano.

Virginia – Sandra Jansen, Joseph Baniewicz, Therea Perfetto, Michelle Chick, Earl Scott, Barbara Hartnett, Kimberly Green, James Pastonik and Allen Nestor.

Louisiana – Gloria Huber, Donald F. Huber, Lesa Thomas, Gary Thomas, Helen Blanque, John Blanque and Joann Abram.

9

North Carolina – Nancy Brock, Dennis Brock, Luther Phillip Carter and Karen Mosley Carter.

Tennessee – Kathleen Ransdell, Lewis A. Ransdell, Norma Jean Roberts and Minnie Fox.

Kentucky – Arzella White, Tammy Fryman and Randolph Fryman.

District of Columbia – Cynthia Edwards, Helen Moore and Blen Gary.

West Virginia – Yvonne Rutters and Thomas Rutters.

Indiana – Shanon Keenan and Eric Keenan.

Ohio – Deborah Jones.

Georgia – Richard Brown, Mary C. Brown, Cheryl Craddock, Christopher Craddock, George Lewis, Tracy Fointino, Michael Mead, Iris Mead, Sylvia Fite, William L. Fite, Wilma Parham, Amoros Alexander Parham, Carita Myrick, Lillian Idlett, Eugene Idlett, Angela Whitfield, Max Whitfield, Sylvia Brown, Brenda Worley, James Worley, Elaine Davidson, Edward Davidson, Patricia Graniero, Donald Graniero, John Landwehr, Donna Landwehr, Beverly Davis, Pamela Taylor, Kathy Barker, Keith Barker, Gladys Hackney, Linda White, Wanda Carter, Marcel Carter and Patricia Fuller.

Pennsylvania – Cheryl Besedick and Rebecca Boyette.

5.

The Complaint names as defendants Wyeth (formerly known as American Home Products Corporation) and Wyeth Pharmaceuticals, Inc. (formerly known as Wyeth-Ayerst Pharmaceuticals, Inc.). Another named defendant is Indevus Pharmaceuticals, Inc. (formerly known as Interneuron Pharmaceuticals, Inc.) ("Indevus"), which was involved with the development of Redux. Also named as

defendants are the following companies, which each manufactured and/or sold phentermine (the "phentermine defendants"):    Celltech Pharmaceuticals, Inc. ("Celltech"); Medeva Pharmaceuticals, Inc. ("Medeva"); Fisons Pharmaceuticals, Inc. and/or Fisons Corporation ("Fisons"); Goldline Laboratories, Inc. ("Goldline"); and Zenith Goldline Pharmaceuticals, Inc. ("Zenith Goldline").   The Complaint names three individuals as defendants, who are former Wyeth employees:  Robert L. Scott, John A. Molnar and Steven Kaiser.  The only other defendants are alleged to be "John Does."

6.

Wyeth is a Delaware corporation with its principal place of business in New Jersey.   Wyeth Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business in Pennsylvania.

7.

Based upon the allegations of the Complaint, Indevus is a Delaware corporation with its principal place of business in Massachusetts.    Indevus' residency is thus diverse from the residencies of all the plaintiffs.

8.

Based on the Complaint allegations concerning the phentermine defendants, Celltech is a Delaware corporation with its principal place of business in New York, Fisons is a Delaware corporation with its principal place of business in New

11

York, Goldline is a Florida corporation with its principal place of business in Florida, and Zenith Goldline is a Florida corporation with its principal place of business in Florida. Medeva was merged into Celltech in 1998 and, to the extent Medeva exists, Medeva is (and has been since 1998) a Delaware corporation with its principal place of business in New York. Documents from the Delaware Secretary of State and the Texas Secretary of State evidencing the merger and Medeva's citizenship (to the extent Medeva exists) are attached as Exhibit 1.

9.

Robert L. Scott, John A. Molnar and Steven Kaiser are citizens and residents of the State of Georgia.

### The Phentermine Defendants Are Fraudulently Joined

10.

The presence of the phentermine defendants does not defeat removal because they are fraudulently joined. Plaintiffs have no reasonable basis for a claim against these defendants and no good faith intent to pursue a claim against them.

11.

Plaintiffs allege that the phentermine defendants sold and marketed phentermine products, which were sometimes taken in connection with Pondimin.

12

Plaintiffs have no reasonable basis for a claim against the phentermine defendants for several reasons, including the following.

First, all of the plaintiffs fail to allege that they or their spouses took phentermine at all. They allege only injuries arising from use of fenfluramine (Pondimin®), dexfenfluramine (Redux™) "and/or" phentermine. The plaintiffs must know what drugs they or their spouses took and they also undoubtedly understand that alleging use of a non-diverse phentermine defendant's products would aid their effort to defeat federal jurisdiction. Their failure to allege such use, therefore, shows that they have no basis to allege such use. Accordingly, plaintiffs do not have a reasonable basis for a claim against the phentermine defendants.

Second, there is no evidence that phentermine causes the heart valve problems that plaintiffs allege. Stanger v. Am. Home Prods. Corp., Nos. 03-20086 and 03-20088, slip op. at 7-8 (E.D. Pa. May 29, 2003) (attached as Exhibit 2) ("no case has been brought to our attention in which a court has found scientifically reliable evidence of phentermine causing valvular heart disease"); Anderson v. Am. Home Prods. Corp., 220 F. Supp. 2d 414, 420-21 (E.D. Pa. 2002) (no epidemiologic data supports increased risk of heart problems from phentermine). No phentermine manufacturer has paid a penny in damages or settlement in any

13

diet drug case.  For example, according to an April 8, 2002 filing with the United States Securities and Exchange Commission by Aventis – the corporate parent of phentermine manufacturer Fisons – Fisons "has made no payment in settlement of any case and has been dismissed from approximately 2,600 cases."  Aventis Form 20-F at 114 (attached as Exhibit 3).  Similarly, IVAX Pharmaceuticals (which distributed phentermine made by Eon and which now owns Goldline and Zenith-Goldline) reported in its Form 10-K for the year ended December 31, 2001 that it had been named in 5027 cases and had been dismissed from 4757, with additional dismissals pending.  IVAX Form 10-K at 26 (attached as Exhibit 4).

Third, any plaintiff claim against the phentermine defendants is time-barred. The statute of limitations on a claim seeking recovery for personal injury is two years regardless of the legal theory on which the claim is brought, or four years for loss of consortium.  O.C.G.A. § 9-3-33; Daniel v. Am. Optical Corp., 251 Ga. 166, 304 S.E.2d 383 (1983).[2]  The last day any plaintiff could have purchased "fen-phen" (the combination of Pondimin and phentermine) was September 15, 1997, when Pondimin and Redux were withdrawn from the market.  In addition, any alleged injury plaintiffs suffered as a result of diet drugs occurred no later than that

---

[2]  Wyeth does not concede that Georgia law applies to plaintiffs' claims.  Wyeth cites Georgia law because plaintiffs' counsel has cited Georgia law on remand motions in other diet drug cases.

14

time because there is no evidence that heart valve damage possibly associated with diet drugs is latent, meaning that it does not develop after use of the drugs has ceased.  Brown v. Am. Home Prods. Corp., Nos. 1203 and 99-20593, 2000 WL 1222042, at *46 (E.D. Pa. Aug. 28, 2000) (MDL Court finding "no evidence" of heart valve injuries developing later); see also Rainey v. Wyeth, No. 03-20128, slip op. at 7 n.4 (E.D. Pa. June 12, 2003) (attached as Exhibit 16) (MDL Court "found that there is no latency period between the time of drug use and injury").

Moreover, as a matter of law, all plaintiffs knew or should have known that diet drugs could possibly cause health problems by September or October 1997 because of massive national and local publicity.  On July 8, 1997, the United States Department of Heath and Human Services issued a Health Advisory, and both the Food and Drug Administration and the Mayo Clinic issued press releases, concerning health risks possibly associated with the use of diet drugs.  The September 15, 1997 withdrawal of the drugs from the market was accompanied by numerous press releases and advertisements.  The withdrawal also was accompanied by massive publicity in the national and local media in the areas where each of the plaintiffs resides.  Substantial additional publicity about the diet drugs and the national diet drug settlement appeared in the media between 1997

~ Doc# 513553.02 ~

and early 2000, both nationally and in localities in which plaintiffs reside.  See Declaration of Sharon Taylor (attached as Exhibit 15).

This mass of information put plaintiffs on inquiry notice of their claims.  See United Klans of Am. v. McGovern, 621 F.2d 152, 154-55 (5th Cir. 1980) (per curiam) (agency press conference, press release, and publication of a Senate report led to conclusion that "in the exercise of due diligence, plaintiff should have known that it had a potential claim"); Hughes v. Vanderbilt Univ., 215 F.3d 543, 548-49 (6th Cir. 2000) (plaintiff should have known of potential claim where publicity was extensive); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 403-04 (5th Cir. 1998) (as a matter of law, extensive media coverage in the mid-1980's concerning Agent Orange put plaintiff on notice at that time that she should investigate her potential claim), cert. denied, 526 U.S. 1034 (1999).

12.

Because plaintiffs have no reasonable basis for a claim against the phentermine defendants, plaintiffs have no good faith intent of pursuing a claim against these defendants.  In addition, the MDL Court found that the plaintiffs in Anderson had no good faith intent to pursue claims against phentermine defendants based on the entire history of the diet drug litigation, the absence of evidence that phentermine causes harm, the fact that no phentermine defendant has paid a penny

16

in settlement or judgment, and the "universal lack of prosecution" of the phentermine defendants.  <u>Anderson</u>, 220 F. Supp. 2d at 420-22.  That history is summarized in the Declaration of Daniel Pariser, attached hereto as Exhibit 5 (without exhibits).  Moreover, the MDL Court in <u>Stanger</u> recently confirmed that this history continues:

> We cannot turn a blind eye to . . . the history and realities of fen-phen litigation.  In our role as the MDL court, we necessarily have a broader perspective than is available to a court faced with an individual fen-phen case.  We conclude that as in <u>Anderson</u>, plaintiffs here "have no real intention in good faith to seek a judgment against the phentermine defendants and that as a result the phentermine defendants are fraudulently joined in these actions."  . . . Complicity between plaintiffs and the phentermine defendants will not be allowed to eviscerate federal diversity jurisdiction.

Slip op. at 9 (Exhibit 2) (quoting and citing <u>Anderson</u>, 220 F. Supp. 2d at 422).

The diet drug litigation in Georgia is entirely consistent with the lack of good faith intent to prosecute phentermine defendants that the MDL Court found. Plaintiffs have never pursued a phentermine defendant to judgment in hundreds of cases filed to date.  These facts, the desperate attempts of plaintiffs to defeat federal jurisdiction in this and other cases, and plaintiffs' transparent effort to gerrymander the Complaint in this case, make plain that the phentermine

17

defendants were joined solely for the purpose of attempting to defeat federal diversity jurisdiction.

13.

If the Court has any doubt that the phentermine defendants are fraudulently joined, it should permit Wyeth discovery on the issue.

## Defendants Scott And Molnar Are Fraudulently Joined

14.

The presence of Robert L. Scott and John A. Molnar does not defeat removal because plaintiffs have no reasonable basis for a claim against these defendants and no good faith intent to pursue a claim against them. As Judge Thrash held in denying remand of another diet drug case, "[i]t is quite apparent that the only reason for joining these Defendants in this case was to defeat Wyeth's legitimate right to remove the case to federal court." Johnson v. Wyeth, 1:02-CV-1368, slip. op. at 4 (N.D. Ga. Jan. 3, 2003) (emphasis added) (attached as Exhibit 7).[3]

---

[3] In Roane v. American Home Products Corp., No. 1:02-CV-2681 (N.D. Ga. Jan. 21, 2003), Judge Martin concluded, without mentioning Judge Thrash's earlier decision in Johnson, that plaintiffs had not fraudulently joined Mr. Scott because there was "a possibility" that the complaint "state[d] a cause of action" against him for fraud. Yet Judge Martin also found that "in light of the evidence developed in similar lawsuits, it does not appear that the plaintiffs can recover on a fraud claim against Scott" (emphasis added). Fraudulent joinder exists unless a plaintiff shows "'a reasonable basis for predicting that state law might impose liability on the facts involved.'" Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997) (quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 177 (5th Cir. 1968)). Given her finding that plaintiffs could not recover against Mr. Scott for any liability based on fraud, Wyeth respectfully submits that Judge Martin erred in concluding that Mr. Scott was not fraudulently joined, and that Judge Thrash was correct in holding that Mr. Scott was fraudulently joined.

~ Doc# 513553.02 ~

15.

To have a reasonable basis for a claim against Messrs. Scott and Molnar, plaintiffs would need to show that those defendants had some personal participation in a tort that harmed plaintiffs. Messrs. Scott and Molnar cannot be liable merely because they are former employees of Wyeth. James v. Parke-Davis, 1:00-CV-1203-JEC, slip. op. at 18-19, 21 (N.D. Ga. Nov. 30, 2000) (attached as Exhibit 8) (defendant must be the "guiding spirit behind the wrongful conduct" or "the central figure . . . in the challenged corporate activity"; internal quotation marks and citation omitted; finding fraudulent joinder of sales representatives in suit against drug company); see also DCA Architects, Inc. v. Am. Bldg. Consultants, Inc., 203 Ga. App. 598, 600, 417 S.E.2d 386, 389 (1992) (even a corporate officer is not personally liable unless he personally participated in or personally directed commission of tort).

Messrs. Scott and Molnar did not have as part of their job responsibilities promoting diet drugs to patients or their physicians. Scott Affidavit ¶¶ 10–11 (attached as Exhibit 9); Scott Deposition Tr. 218-20 (attached as Exhibit 10); Molnar Affidavit ¶¶ 7-8 (attached as Exhibit 11); Molnar Deposition Tr. 264 (attached as Exhibit 12). Messrs. Scott and Molnar had no role in developing, selling or marketing diet drugs. Scott Affidavit ¶ 12; Scott Deposition Tr. 218-20;

~ Doc# 513553.02 ~

Molnar Affidavit ¶ 10; Molnar Deposition Tr. at 264.   They had no role in obtaining government approval for diet drugs.   Scott Affidavit ¶ 13; Molnar Affidavit ¶ 10.

Plaintiffs therefore attempt to base their claims against Mr. Scott on the contention that he gave incorrect information to certain state regulators in lobbying them to "deschedule" diet drugs – i.e., remove the drugs from a list of controlled substances.  Plaintiffs try to base their claims against Mr. Molnar on the allegation that he gave incorrect information to members of the Tennessee Legislature in lobbying them to change a law regarding diet drugs.  Plaintiffs have no basis for either claim for several reasons, including the following.

First, plaintiffs have no basis for their claim against Mr. Scott because none of the states whose regulators Mr. Scott contacted with respect to descheduling ever descheduled diet drugs.  See Scott Affidavit ¶ 5, ¶ 7, ¶ 8 (Exhibit 9); Scott Deposition Tr. 218 (Exhibit 10).  Thus, despite any activities of Mr. Scott, the sale of diet drugs in those states continued to be subject to the same regulatory restrictions as they had been before those activities.  Mr. Scott's alleged activities could not have injured plaintiffs.

Second, plaintiffs have no basis for a claim against Mr. Scott or Mr. Molnar because plaintiffs failed to comply with O.C.G.A. § 9-11-11.1.  Plaintiffs' claims

20

against Messrs. Scott and Molnar arise from their alleged lobbying of government officials with respect to laws and regulations affecting diet drugs. O.C.G.A. § 9-11-11.1 requires that any claim that "could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government" be brought only if accompanied by verifications from both the party asserting the claim and the party's attorney of record. The verifications must state under oath that the party and the attorney have read the complaint, that the claim "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law," that the speech at issue is not protected by O.C.G.A. § 51-5-7, and that the claim is not interposed for "any improper purpose." O.C.G.A. § 9-11-11.1. When a complaint does not contain the required verification, and the plaintiff fails to correct the defect, the court must dismiss the claim. Hawks v. Hinely, 252 Ga. App. 510, 516, 556 S.E.2d 547, 551 (2001); Davis v. Emmis Publ'g Corp., 244 Ga. App. 795, 798, 536 S.E.2d 809, 812 (2000). Plaintiffs here have failed to provide the verification required under O.C.G.A. § 9-11-11.1 for their claims against Messrs. Scott and Molnar, and so have no basis for those claims.

Third, plaintiffs have no basis for a claim against Mr. Molnar for his actions in lobbying the Tennessee Legislature, or for Mr. Scott in lobbying state regulators,

21

because those activities were protected by the First Amendment. See, e.g., Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138-40 (1961) (upholding conduct of railroads in seeking to obtain legislation to disadvantage competing truck industry as protected under the First Amendment even though the railroads' tactics involved "deception of the public," "the manufacture of bogus sources of reference" and "distortion of public sources of information"); Davric Maine Corp. v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000) ("[e]ven false statements presented to support such petitions are protected"; citation omitted); TEC Cogeneration, Inc. v. Fla. Power & Light Co., 76 F.3d 1560, 1571 (11th Cir.) (petitioning legislators is protected regardless of motives), modified on other grounds, 86 F.3d 1028 (11th Cir. 1996).

Fourth, as Judge Thrash held in the Johnson case, plaintiffs have no basis for a claim against Messrs. Scott or Molnar for a variety of other reasons. Plaintiffs cannot recover on the theory that they were indirectly harmed as a result of a third party's alleged reliance on any fraudulent or negligent misrepresentations that Messrs. Scott or Molnar made. Johnson, slip. op. at 4 (Exhibit 7) (no reasonable basis for this claim because plaintiffs "cannot show" that they or their doctors relied upon any misrepresentation that Messrs. Scott and Molnar made); see also Lawson v. Smith and Nephew Richards, Inc., No. Civ.A.4:96-CV0297RWS, 1999

22

WL 1129677, at *7 (W.D. Ga. Sept. 30, 1999) (plaintiff cannot base fraud claim on allegation that he was indirectly harmed by FDA's alleged reliance on misstatements); White v. BDO Seidman, LLP, 249 Ga. App. 668, 670-73, 549 S.E.2d 490, 493-94 (2001) (investor cannot base fraud claim on allegation that he was indirectly harmed by regulator's reliance on auditor's false report).

Plaintiffs' fraud claims against Messrs. Scott and Molnar also fail because they are not pled with the required particularity. See Fed. R. Civ. P. 9(b); Allen v. Tyson Foods, Inc., 153 F. Supp. 2d 886, 889-90 (S.D. Miss. 2001) (finding fraudulent joinder where plaintiff failed to allege the "time, place or specific content" of the alleged false statements); In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 283 (S.D.N.Y. 2001) (finding fraudulent joinder where plaintiffs failed to plead specific communications, reliance, and other facts with specificity); Jacobson v. Ford Motor Co., No. 98 C 742, 1999 WL 966432, at *4 (N.D. Ill. Sept. 30, 1999) (finding fraudulent joinder because plaintiff had no chance of prevailing where complaint failed "to set forth any particularized allegations of fraudulent conduct" by the defendant).

Plaintiffs likewise have no basis for their claims against Messrs. Scott or Molnar for conspiracy to defraud. Messrs. Scott and Molnar did not enter into an agreement with any phentermine manufacturer or Indevus. Johnson, slip. op. 4

23

(Exhibit 7) (finding that there was no proffered evidence of any such conspiracy);

Scott Affidavit ¶ 14 (Exhibit 9); Scott Deposition Tr. 188-89 (Exhibit 10); Molnar

Affidavit ¶ 11 (Exhibit 11); Molnar Deposition Tr. 180 (Exhibit 12).  Messrs. Scott

and Molnar also could not have conspired with each other, with Mr. Kaiser, or with

Wyeth, because, as a matter of law, a corporation cannot conspire with its own

employees acting within the scope of their employment.  Johnson, slip. op. at 4

(Exhibit 7); see also Alta Anesthesia Assoc. of Ga., P.C. v. Gibbons, 245 Ga. App.

79, 85-86, 537 S.E.2d 388, 394-95 (2000) (corporation cannot conspire with itself).

Plaintiffs' allegations are not pled with the requisite particularity in any event.

Finally, plaintiffs do not have a reasonable basis for a claim against Messrs.

Scott or Molnar in this action because the MDL Court has held that an intermediate

opt-out plaintiff – as plaintiffs in this case purport to be – cannot introduce

evidence against Wyeth concerning descheduling of diet drugs.  See Brown v. Am.

Home Prods. Corp., No. 99-20593, slip op. at 3 (E.D. Pa. Jan. 29, 2003) (attached

as Exhibit 17).[4]  The MDL Court held that such evidence would constitute an

improper attempt to inflame the jury and circumvent the Settlement Agreement's

prohibition against intermediate opt-out plaintiffs seeking punitive damages from

---

[4]  The order with respect to this opinion was superseded by a subsequent more comprehensive
order, but the underlying opinion was not superseded.

~ Doc# 513553.02 ~

Wyeth.  See id.   The MDL Court further held that such a plaintiff cannot circumvent this prohibition by seeking to admit such evidence against other defendants.  See Brown v. Am. Home Prods. Corp., No. 99-20593, slip op. at 39-40 (E.D. Pa. April 8, 2003) (attached as Exhibit 14).  These orders, while directly applicable to the plaintiffs there, constitute an interpretation of the Settlement Agreement equally applicable to these plaintiffs, with the result that they could not even introduce any evidence concerning any alleged descheduling activities of Messrs. Scott or Molnar.

<div align="center">16.</div>

Plaintiffs have no good faith intent to pursue a claim against Messrs. Scott or Molnar.  Plaintiffs have joined Messrs. Scott and Molnar solely to attempt to defeat federal jurisdiction, and not to pursue any claim against them.

<div align="center">17.</div>

If the Court has any doubt that Mr. Scott or Mr. Molnar is fraudulently joined, it should permit discovery on the issue.

<div align="center">**Defendant Kaiser Is Fraudulently Joined**</div>

<div align="center">18.</div>

The presence of Steven Kaiser as a defendant does not defeat removal because plaintiffs have no reasonable basis for a claim against Mr. Kaiser and no good faith intent to pursue a claim against him.

<div align="center">25</div>

~ Doc# 513553.02 ~

19.

Mr. Kaiser was an area business director for Wyeth from 1995 to 2001. In that capacity, Mr. Kaiser was responsible for managing nine district managers who, in turn, managed approximately 134 sales representatives, in the States of Georgia and Alabama. Kaiser Affidavit ¶ 2 and ¶ 8 (attached as Exhibit 13). Mr. Kaiser never had any direct contact with patients regarding Pondimin or Redux. Id. at ¶ 3. He has not discussed Pondimin or Redux with any physician since 1977, and before that with physicians in Indiana and Illinois. Id. at ¶ 4. He has never made a sales call to any physician to discuss Redux. Id. at ¶ 5 and ¶ 9. He was not involved with the design, manufacture, testing, or labeling of Pondimin or Redux. Id. at ¶ 6. He was not involved in the regulatory approval process for diet drugs. Id. Mr. Kaiser also was not involved in developing the advertising and promotional materials for the sale of Pondimin or Redux, and did not direct or develop any of the training materials used by sales representatives. Id. at ¶¶ 9-10.

Plaintiffs have no reasonable basis for a claim against Mr. Kaiser because he did not cause, and could not have caused, any injury to plaintiffs. None of the plaintiffs have any evidence that Mr. Kaiser supplied them or their doctors with any drugs, or that he ever had any communications with them or their doctors on which they relied.

26

Plaintiffs attempt to impose liability on Mr. Kaiser by alleging that he was responsible for, and participated in, the dissemination of false and misleading information about diet drugs.  That is not only contrary to the facts as set forth in Mr. Kaiser's affidavit, but also is exactly the type of generalized allegation that Judge Carnes held insufficient to state a reasonable basis for a claim against sales representatives.  James v. Parke-Davis, 1:00-CV-1203-JEC, slip op. at 17-21 (N.D. Ga. Nov. 30, 2000) (Exhibit 8) (allegation that defendant was involved in implementing deceptive "sales strategy" was not sufficient to avoid finding of fraudulent joinder).

Plaintiffs' fraud and conspiracy to defraud claims against Mr. Kaiser fail for the additional reason that plaintiffs fail to plead them with particularity.  See Fed. R. Civ. P. 9(b).  The conspiracy claim fails for the further reason that Mr. Kaiser did not enter into any agreements with phentermine manufacturers, see Kaiser Affidavit ¶ 7 (Exhibit 13), and could not have conspired with Wyeth, or with Messrs. Scott or Molnar, as a matter of law.  Johnson, slip. op. at 4 (Exhibit 7); see also Alta Anesthesia Assoc. of Ga., P.C. v. Gibbons, 245 Ga. App. 79, 85-86, 537 S.E.2d 388, 394-95 (2000) (corporation cannot conspire with itself).

In addition, plaintiffs' claims against Mr. Kaiser fail because plaintiffs have not complied with O.C.G.A. §9-11-11.1.

27

20.

Plaintiffs have no good faith intent to pursue a claim against Mr. Kaiser. Plaintiffs have joined Mr. Kaiser solely to attempt to defeat diversity jurisdiction, and not to pursue any claim against him.

21.

If the Court has any doubt that Mr. Kaiser is fraudulently joined, it should permit discovery on the issue.

### The "John Doe" Defendants Are Irrelevant

22.

Pursuant to 28 U.S.C. § 1441(a), the citizenship of the alleged "John Does" is to be disregarded for purposes of determining diversity jurisdiction.

### The Court Should Sever And Retain Jurisdiction
### Over The Claims Asserted By The Diverse Plaintiffs

23.

The Court should not permit the diverse plaintiffs to defeat Wyeth's right to remove their claims by joining their claims, over which diversity jurisdiction exists, with the claims of any non-diverse plaintiff.

In Tapscott v. M.S. Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, 204 F.3d 1069 (11th Cir. 2000), the Eleventh Circuit recognized that the misjoinder of parties could be just

28

as abusive a tactic as fraudulent joinder.  In that case, diversity existed between defendant Lowe's and the only two plaintiffs asserting claims against it, but Lowe's was joined with several Alabama defendants against whom claims were asserted by Alabama plaintiffs.  The Eleventh Circuit held that Lowe's had properly removed the entire action based on diversity of citizenship.  Id. at 1360. It further held that the district court had properly severed and retained jurisdiction over the claims against Lowe's, while remanding the remaining claims to state court.  Id. at 1355-1360.  The Eleventh Circuit found that the claims against Lowe's and the claims against the Alabama defendants arose from different transactions and occurrences, and that the misjoinder of the claims against Lowe's was so egregious as to amount to "fraudulent joinder."  Id. at 1360.  The Court explained:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921).

Id. (footnote omitted).  The Eleventh Circuit later cited Tapscott with approval in Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). Numerous courts have elaborated on and expanded the application of Tapscott.

29

In In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002), the Fifth Circuit made clear that plaintiffs who have claims against diverse defendants cannot defeat diversity simply by joining in an action with a plaintiff who asserts a claim with a non-diverse defendant. In that case, defendants contended that only four of seventeen plaintiffs had any possibility of recovery against non-diverse defendants and that the district court had erred in failing to sever and retain jurisdiction over the claims of the other thirteen plaintiffs. The Fifth Circuit noted that the district court had "no doubt inadvertently overlooked that this point was timely raised." Id. at 298. The Fifth Circuit denied mandamus to give the district court the opportunity to examine the issue, as the Fifth Circuit was "confident" that the "district court did not intend to overlook a feature critical to jurisdictional analysis." Id. (emphasis added). The district court later remanded, stating that it considered and rejected the misjoinder argument. On a second petition for mandamus, the Fifth Circuit was constrained to deny relief because it no longer had jurisdiction. In re Benjamin Moore & Co., 318 F.3d 626 (5th Cir. 2002). The Court stressed, however, that it was reaching that decision "without detracting from the force of the Tapscott principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction." Id. at 630-31. While the circumstances of Benjamin Moore

did not permit the Fifth Circuit to grant mandamus, the Fifth Circuit made absolutely clear that the misjoinder of plaintiffs is not permitted.

In the diet drug litigation, the MDL Court has applied the Tapscott rule to hold that plaintiffs cannot defeat diversity jurisdiction over an action in its entirety when only some plaintiffs assert a claim against non-diverse defendants. Anderson v. Am. Home Prods. Corp., 220 F. Supp. 2d 414, 422 (E.D. Pa. 2002) ("[w]e will therefore grant the motion to remand of plaintiffs Crystal Gatlin and Verna Brown and deny the motion of the remaining plaintiffs"); Chaney v. Gate Pharms., No. Civ.A. 98-20478, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999) (retaining jurisdiction and "dismiss[ing] the non-diverse Plaintiffs' claims").

In re Rezulin Products Liability Litigation, 168 F. Supp. 2d 136, 148 (S.D.N.Y. 2001), presented a similar situation.  There, plaintiffs alleging claims only against drug manufacturers, as to which there would be complete diversity if asserted alone, were joined with a plaintiff who also asserted a claim against a non-diverse home health care provider.  The court ordered the severance of the latter plaintiff "for purposes of maintaining the defendants' right to removal of the remainder of the action."  Id. at 148.  In another circumstance, the same court considered the impact on removal of joining five plaintiffs suing a drug company and a non-diverse physician with four plaintiffs suing only the drug company.  The

31

court recognized that there may be efficiency benefits to joinder, "but these benefits must be weighed against a defendant's right to removal." Id. Thus, the court determined that the proper remedy was to sever plaintiffs' claims "so as to preserve the defendants' right to removal" in the actions where there was diversity. Id.; see also In re Rezulin Prods. Liab. Litig., No. 00 CIV. 2843(LAK), 2002 WL 548750, at *2 (S.D.N.Y. Apr. 12, 2002) (severing claims of plaintiffs "who have no connection to each other aside from the fact that they ingested Rezulin"); In re Rezulin Prods. Liab. Litig., MDL No. 1348, 2002 WL 519743, at *1-2 (S.D.N.Y. Apr. 5, 2002); In re Rezulin Prods. Liab. Litig., MDL No. 1348, 2002 WL 313146, at *1 (S.D.N.Y. Feb. 27, 2002).

These decisions are consistent with the decisions of other courts. See, e.g., Lyons v. Am. Tobacco Co., No. Civ.A. 96-0881-BH-S, 1997 WL 809677, at *4 (S.D. Ala. Sept. 30, 1997) (denying remand where misjoinder of plaintiffs was a "transparent artifice to defeat . . . diversity" and therefore constituted fraudulent joinder); Koch v. PLM Int'l, Inc., No. Civ.A. 97-0177-BH-C, 1997 WL 907917, at *4 (S.D. Ala. Sept. 24, 1997) (same); Coleman v. Conseco, Inc., 238 F. Supp. 2d 804, 817-19 (S.D. Miss. 2002) (finding forty-five out-of-state plaintiffs improperly attempted to defeat diversity by joining their claims with three in-state residents).

32

In pharmaceutical cases, courts have found that plaintiffs' failure to allege that they took the same drugs, for the same periods of time, as prescribed by the same doctors at the same point in time, and having received the same information about the drugs, supported the conclusion that plaintiffs were improperly joined. Chaney, 1999 WL 554584, at *3-*4 (claims of diet drug plaintiffs who did not take "the same drug or combinations of drugs" and who "have not purchased or received diet drugs from an identical source, such as a physician, hospital, or diet center," were misjoined); In re Rezulin Prods. Liab. Litig., 168 F. Supp. 2d at 146 (plaintiffs who "do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time" were misjoined); Simmons v. Wyeth Labs., Nos. CIV.A.96-CV-6631, CIV.A.96-CV-6686, CIV.A.96-CV-6728, CIV.A.96-CV-6730, 1996 WL 617492, at *4 (E.D. Pa. Oct. 24, 1996) (claims of plaintiffs misjoined, at least in the absence of evidence that they "received identical information from the defendants through identical means or sources at the same point in time, and were implanted with the drug by the same doctors at the same facility"); see also, e.g., In re Rezulin Prods. Liab. Litig., No. 00 CIV 2843(LAK), 2002 WL 548750, at *2 (S.D.N.Y. Apr. 12, 2002) (reiterating

that "the joinder of plaintiffs who have no connection to each other aside from the fact that they ingested Rezulin is misjoinder").[5]

The same factors exist here. Because plaintiffs reside in different states, they obviously were prescribed diet drugs by different doctors, who had different bases of knowledge about the potential hazards of diet drugs and took different factors into account in deciding whether and how to prescribe them. Plaintiffs do not claim to have taken the same combination of drugs for the same periods of time. Plaintiffs allege only that they took – or in some cases only that their spouses took – Redux, Pondimin, "and/or" phentermine. The fact that plaintiffs took the drugs at different times is important because the warnings accompanying the drug changed over time. For these and other reasons, resolution of diet drug claims is highly dependent on facts unique to each diet drug plaintiff. See Brown v. Am.

---

[5]  In Hodges v. Wyeth, Inc., No. 1:08-CV-276 (N.D. Ga. June 16, 2003) and Laurin v. Wyeth, Inc., No. 1:03-CV-1108-WBH (N.D. Ga. July 15, 2003), Judges Camp and Hunt found that diet drug plaintiffs were not misjoined with the only non-diverse plaintiff because that plaintiff's claims arose from the same series of transactions as the other plaintiffs' claims, but without discussing or even mentioning any of the diet drug and other pharmaceutical cases to the contrary cited in the text. Judge Hunt cited no authority for so ruling. Judge Camp cited Alexander v. Fulton, 207 F.3d 1303 (11th Cir. 2000), a case in which plaintiffs alleged a pattern and practice of racial discrimination by the same employer. Defendants respectfully submit that the nature of the claims and proof in this case is more akin to that in other diet drug and pharmaceutical cases than to employment discrimination cases, and that Judges Camp and Hunt erred. The only other apparently inconsistent diet drug decisions turned on the application of Mississippi's joinder rules, which are irrelevant to this Georgia case removed to federal court. See, e.g., Chrestman v. Am. Home Prods. Corp., No. 03-20097 (E.D. Pa. May 20, 2003). This Court is bound to follow the Eleventh Circuit's holding in Tapscott, which applied federal joinder rules. See Tapscott, 77 F.3d at 1360.

34

Home Prods. Corp., No. 99-20593, slip op. at 9-39 (E.D. Pa. April 8, 2003) (attached as Exhibit 14) (plaintiffs claiming an intermediate opt out right under the Settlement Agreement prohibited from introducing generalized evidence concerning Wyeth's conduct on a variety of issues). These facts, and the diet drug history described in Anderson, make plain that plaintiffs have improperly and egregiously misjoined non-diverse plaintiff claims for the purpose of defeating jurisdiction.

Some courts have required something more than mere misjoinder before severing claims, using different terms to describe what is necessary. See, e.g., Tapscott, 77 F.3d at 1360 (referring to "egregiousness" of the misjoinder); Coleman, 238 F. Supp. 2d at 814 (misjoinder must be "totally unsupported, or egregious"); Chaney, 1999 WL 554584, at *3 (complaint went "well beyond mere misjoinder"); Koch, 1997 WL 907917, at *4 (noting case contained "the additional element of collusive joinder to defeat the diversity jurisdiction"). Regardless of the specific terms used, these courts agreed that severance is appropriate when plaintiffs have misjoined their claims with the intent of destroying jurisdiction. Such intent can be inferred here. Here, there is no logical connection between plaintiffs' disparate claims, and plaintiffs have given no legitimate reason for

35

joining them in one action. It is plain that they did so solely in an effort to defeat jurisdiction.

The Court should apply the above authorities to sever, and retain jurisdiction over, the claims of all plaintiffs other than Cheryl Besedick and Rebecca Boyette.

## This Case Satisfies The Other Requirements For Diversity Jurisdiction And Removal

24.

Based on the allegations and claims in the Complaint, the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is a civil action brought in a state court over which the United States District Court has original jurisdiction because there is both a diversity of citizenship between the properly joined parties and the amount in controversy meets the monetary requirements under 28 U.S.C. § 1332.

25.

All properly joined and served defendants in this case consent to this Notice of Removal. See Exhibit B. Wyeth is not required to obtain the consent of the phentermine defendants because they are fraudulently joined. See, e.g., Stanger v. Am. Home Prods. Corp., Nos. 03-20086 and 03-20088, slip op. at 4-9 (E.D. Pa. May 29, 2003) (Exhibit 2); Anderson v. Am. Home Prods. Corp., 220 F. Supp. 2d 414, 419-22, 425 (E.D. Pa. 2002).

~ Doc# 513553.02 ~

36

26.

The pending action is one that may be removed to this Court, and this Notice of Removal is filed pursuant to 28 U.S.C. § 1441 et seq.

27.

After the filing of this Notice of Removal, Petitioners will promptly give notice thereof to Plaintiffs and will file a true and correct copy of this Notice of Removal with the State Court of Fulton County, Georgia.

WHEREFORE, Petitioners pray that this Notice of Removal be filed; that said action being Civil Action No. 2003VS052187 in the State Court of Fulton County, Georgia be removed to this Court; that this Court sever, and retain jurisdiction over, all claims asserted by all plaintiffs other than Cheryl Besedick and Rebecca Boyette; and that no further proceedings be had with respect to those claims in the State Court of Fulton County, Georgia.

Respectfully submitted this 23rd day of July, 2003.

_____
Stephen M. Lore
Georgia Bar No. 457845
Stephen M. Brooks
Georgia Bar No. 085151
Richard B. North
Georgia Bar No. 545549

37

NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Suite 1400
999 Peachtree Street, NE
Atlanta, GA 30309
(404) 817-6000
Fax (404) 817-6050

*Attorneys for Defendants Wyeth, Wyeth*
*Pharmaceuticals, Inc., Robert L. Scott,*
*John A. Molnar and Steven Kaiser*

38

~ Doc# 513553.02 ~

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1D, counsel certifies by signing below that the foregoing has been prepared using Times New Roman 14 point font, one of the fonts specified in Local Rule 5.1B.

Stephen M. Lore
Georgia Bar No. 457845
Stephen M. Brooks
Georgia Bar No. 085151
Richard B. North
Georgia Bar No. 545549

NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Suite 1400
999 Peachtree Street, NE
Atlanta, GA 30309
(404) 817-6000
Fax (404) 817-6050

*Attorneys for Defendants Wyeth,*
*Wyeth Pharmaceuticals, Inc., Robert*
*L. Scott, John A. Molnar and Steven*
*Kaiser*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD BROWN; MARY C. BROWN; | ) | |
| SANDRA JANSEN; LAMARA MORRIS; | ) | |
| JAMES MORRIS; CHERYL CRADDOCK; | ) | |
| CHRISTOPHER CRADDOCK; JOSEPH | ) | |
| BANIEWICZ; LINDA WILSON; WILLIAM | ) | CIVIL ACTION FILE |
| WILSON; CHRISTINA BURCH; NANCY | ) | |
| BROCK; DENNIS BROCK; GEORGE LEWIS; | ) | NO. _____ |
| KATHLEEN RANSDELL; LEWIS A. | ) | |
| RANSDELL; GLORIA HUBER; DONALD F. | ) | |
| HUBER; THERESA PERFETTO; SHANON | ) | |
| KEENAN; ERIC KEENAN; TRACY | ) | |
| FOINTNO; ARZELLA WHITE; MICHAEL | ) | |
| MEAD; IRIS MEAD; SYLVIA FITE; | ) | |
| WILLIAM L. FITE; WILMA PARHAM; | ) | |
| AMOROS ALEXANDER PARHAM; CARITA | ) | |
| MYRICK; LILLIAN IDLETT; EUGENE | ) | |
| IDLETT; ANGELA WHITFIELD; MAX | ) | |
| WHITFIELD; KATHLEEN KNEZICH; | ) | |
| DEBORAH JONES; SUSAN THURNHERR; | ) | |
| LARRY THURNHERR; CHERYL BESEDICK; | ) | |
| REBECCA BOYETTE; CYNTHIA EDWARDS; | ) | |
| SYLVIA BROWN; BRENDA WORLEY; | ) | |
| JAMES WORLEY; ELAINE DAVIDSON; | ) | |
| EDWARD DAVIDSON; PATRICIA | ) | |
| GRANIERO; DONALD GRANIERO; GILLIAN | ) | |
| PAWLICK; HELEN MOORE; MONIQUE | ) | |
| MARCOUX; ROCK MARCOUX; SHIELA | ) | |
| HAROLD; CHARLES HAROLD; LESA | ) | |
| THOMAS; GARY THOMAS; LUTHER | ) | |
| PHILLIP CARTER; KAREN MOSLEY | ) | |
| CARTER; HELEN BLANQUE; JOHN | ) | |
| BLANQUE; MICHELLE CHICK; JOHN | ) | |
| LANDWEHR; DONNA LANDWEHR; | ) | |
| BEVERLY DAVIS; JOEL ROSENBLATT; | ) | |

PAMELA TAYLOR; KATHY BARKER;          )
KEITH BARKER; GLADYS HACKNEY;         )
LINDA WHITE; WANDA CARTER; MARCEL     )
CARTER; FLORENCE WILSON; RONALD       )
WILSON; BARBARA STADLER; KENNETH      )
STADLER; CAROL CANNAROZZO; VICTOR     )
CANNAROZZO Jr.; ANGELA GUAGLIANO;     )
NORMA JEAN ROBERTS; EARL SCOTT;       )
MARVELLE EDELIN; RHONDA TRACEY;       )
FRANCIS CLARK; BARBARA HARTNETT;      )
SALLY ROGALA; PATRICIA FULLER;        )
JOANN ABRAM; MARY SUGGS; LEON         )
SUGGS; TAMMY FRYMAN; RANDOLPH         )
FRYMAN; MINNIE FOX; KIMBERLY          )
GREEN; JAMES PASTONIK; YVONNE         )
RUTTERS; THOMAS RUTTERS; DEBORAH      )
GOOD; DONALD W. GOOD; ANETTE          )
KELLY; MARILYN THOMPSON; ALLEN        )
NESTOR; BLEN GARY; and GENA WILSON,   )
                                      )
                          Plaintiffs, )
                                      )
v.                                    )
                                      )
WYETH, INC., f/k/a AMERICAN HOME      )
PRODUCTS CORPORATION; WYETH           )
PHARMACEUTICALS, INC., f/k/a WYETH-   )
AYERST PHARMACEUTICALS, INC., a       )
Division of American Home Products    )
Corporation; INDEVUS                  )
PHARMACEUTICALS, INC., f/k/a          )
INTERNEURON PHARMACEUTICALS, INC.;    )
MEDEVA PHARMACEUTICALS, INC.;         )
FISONS PHARMACEUTICALS; CELLTECH      )
PHARMACEUTICALS, INC.; GOLDLINE       )
LABORATORIES, INC.; ZENITH-GOLDLINE   )
PHARMACEUTICALS, INC.; ROBERT L.      )
SCOTT, a citizen of the State of Georgia; JOHN )

2

**A. MOLNAR, a citizen of the State of Georgia;**     )
**STEVEN KAISER a citizen of the State of**     )
**Georgia; and JOHN DOE NOS. 1 - 5,**     )
                                        )
                   **Defendants.**    )
                                        )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing

**NOTICE OF REMOVAL** by depositing a copy of same in the United States Mail

in a properly addressed envelope with sufficient postage affixed thereto to ensure

delivery to the following:

> Robert C. Buck, Esq.
> C. Andrew Childers, Esq.
> Schlueter, Buck & Childers
> 940 Center Street
> Conyers, GA 30012
>
> Charles A. Mathis, Jr., Esq.
> The Mathis Law Firm
> The Equitable Building
> Suite 1400
> 100 Peachtree Street, N.W.
> Atlanta, GA 30303
>
> Attorneys for Plaintiffs

~ Doc# 513553.02 ~

Lori G. Baer, Esq.
Clifton M. Iler, Esq.
Laura Johnson, Esq.
Alston & Bird, LLP
One Atlanta Center
1201 West Peachtree Street
Atlanta, GA  30309-3424

Attorneys for Fisons Corporations, Medeva
Pharmaceuticals Inc. and CellTech Pharmaceuticals, Inc.


M. Elizabeth O'Neill, Esq.
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA  30308-3243

Attorneys for Indevus Pharmaceuticals, Inc., f/k/a
Interneuron Pharmaceuticals


Chrisna J. Walker, Esq.
Devlin & Robinson PC
The Candler Building, Suite 300
127 Peachtree Street, NE
Atlanta, GA  30303

Attorneys for Goldline Pharmaceuticals, Inc. and Zenith-
Goldline Pharmaceuticals, Inc.

This 23rd day of July 2003.

Stephen M. Lore
Georgia Bar No. 457845
Stephen M. Brooks

4

~ Doc# 513553.02 ~

Georgia Bar No. 085151
Richard B. North
Georgia Bar No. 545549

NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Suite 1400
999 Peachtree Street, NE
Atlanta, GA 30309
(404) 817-6000
Fax (404) 817-6050

*Attorneys for Defendants Wyeth, Wyeth
Pharmaceuticals, Inc., Robert L. Scott,
John A. Molnar and Steven Kaiser*

5

~ Doc# 513553.02 ~



# EXHIBIT / ATTACHMENT

**(To be scanned in place of tab)**

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

RICHARD BROWN; SANDRA JANSEN;   )
LAMARA MORRIS; CHERYL CRADDOCK;  )
JOSEPH BANIEWICZ; LINDA WILSON;   )
CHRISTINA BURCH; NANCY BROCK; GEORGE LEWIS; )  **CIVIL ACTION FILE**
KATHLEEN RANSDELL; GLORIA HUBER;  )  **NO._____**
THERESA PERFETTO; SHANON KEENAN   )
TRACY FOINTNO; ARZELLA WHITE; MICHAEL MEAD; )
SYLVIA FITE; WILMA PARHAM; CARITA MYRICK; )
LILLIAN IDLETT;  ANGELA WHITFIELD;   )
KATHLEEN KNEZICH; DEBORAH JONES;  )
SUSAN THURNHERR; unknown plaintiff   )
CYNTHIA EDWARDS; SYLVIA BROWN;   )
BRENDA WORLEY; ELAINE DAVIDSON;   )
PATRICIA GRANIERO; GILLIAN PAWLICK;  )
HELEN MOORE; MONIQUE MARCOUX;   )
SHIELA HAROLD; LESA THOMAS; L.PHILLIP CARTER; )
HELEN BLANQUE; MICHELLE CHICK;   )
JOHN LANDWEHR; BEVERLY DAVIS;   )
JOEL ROSENBLATT; PAMELA TAYLOR;   )
KATHY BARKER;   GLADYS HACKNEY; LINDA WHITE; )
WANDA CARTER; FLORENCE WILSON;   )
BARBARA STADLER; CAROL CANNAROZZO; )
ANGELA GUAGLIANO; NORMA JEAN ROBERTS; )
EARL SCOTT; MARVELLE EDELIN; RHONDA TRACEY; )
FRANCIS CLARK; BARBARA HARTNETT;  )
SALLY ROGALA; PATRICIA FULLER;   )
JOANN ABRAM; MARY SUGGS; TAMMY FRYMAN )
MINNIE FOX; KIMBERLY GREEN; YVONNE RUTTERS;  )
DEBORAH GOOD; ANETTE KELLY;   )
MARILYN THOMPSON; ALLEN NESTOR; BLEN GARY;  )
And  GENA WILSON       )
           )
  **Plaintiffs,**      )
           )
**vs.**           )
           )
**WYETH, INC., f/k/a AMERICAN HOME**  )
**PRODUCTS CORPORATION;**    )
**WYETH PHARMACEUTICALS, INC f/k/a**  )
**WYETH-AYERST PHARMACEUTICALS,**  )
**INC., a Division of American Home Products** )
**Corporation; INDEVUS**     )
**PHARMACEUTICALS, INC., f/k/a**   )

INTERNEURON PHARMACEUTICALS, INC.;                )
MEDEVA PHARMACEUTICALS, INC.;                     )
FISONS PHARMACEUTICALS; CELLTECH                  )
PHARMACEUTICALS, INC.; GOLDLINE                   )
LABORATORIES, INC.; ZENITH-GOLDLINE               )
PHARMACEUTICALS, INC.;                            )
ROBERT L. SCOTT, a citizen of the State of        )
Georgia; JOHN A. MOLNAR, a citizen of the         )
State of Georgia; STEVEN KAISER a citizen of      )
the State of Georgia; and JOHN DOE NOS.           )
1 B5,                                             )
                                                  )
        Defendants.                               )
_____ )

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs, **RICHARD BROWN, SANDRA JANSEN, LAMARA MORRIS, CHERYL CRADDOCK, JOSEPH BANIEWICZ, LINDA WILSON, CHRISTINA BURCH, NANCY BROCK, GEORGE LEWIS, KATHLEEN RANSDELL, GLORIA HUBER, THERESA PERFETTO, SHANON KEENAN, TRACY FOINTNO, ARZELLA WHITE, MICHAEL MEAD, SYLVIA FITE, WILMA PARHAM, CARITA MYRICK, LILLIAN IDLETT, ANGELA WHITFIELD, KATHLEEN KNEZICH, DEBORAH JONES, SUSAN THURNHERR, unknown plaintiff, CYNTHIA EDWARDS, SYLVIA BROWN, BRENDA WORLEY, ELAINE DAVIDSON, PATRICIA GRANIERO, GILLIAN PAWLICK, HELEN MOORE, MONIQUE MARCOUX, SHIELA HAROLD, LESA THOMAS, L. PHILLIP CARTER, HELEN BLANQUE, MICHELLE CHICK, JOHN LANDWEHR, BEVERLY DAVIS, JOEL ROSENBLATT, PAMELA TAYLOR, KATHY BARKER, GLADYS HACKNEY, LINDA WHITE, WANDA CARTER, FLORENCE WILSON, BARBARA STADLER, CAROL CANNAROZZO, ANGELA GUAGLIANO, NORMA JEAN ROBERTS, EARL SCOTT, MARVELLE EDELIN,**

**RHONDA TRACEY, FRANCIS CLARK, BARBARA HARTNETT, SALLY ROGALA, PATRICIA FULLER, JOANN ABRAM, MARY SUGGS, TAMMY FRYMAN, MINNIE FOX, KIMBERLY GREEN, YVONNE RUTTERS, DEBORAH GOOD, ANETTE KELLY, MARILYN THOMPSON, ALLEN NESTOR, BLEN GARY** and **GENA WILSON**
in the matter above captioned and files this Complaint against Defendants as follows:

## INTRODUCTION

1.

Plaintiff RICHARD BROWN is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

2.

Plaintiff SANDRA JANSEN is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

3.

Plaintiff LAMARA MORRIS, is a citizen and resident of the state of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

- 3 -

4.

Plaintiff CHERYL CRADDOCK is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

5.

Plaintiff JOSEPH BANIEWICZ is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

6.

Plaintiff LINDA WILSON is a citizen and resident of the state of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

7.

Plaintiff CHRISTINA BURCH is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

8.

Plaintiff NANCY BROCK is a citizen and resident of the State of North Carolina suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

9.

Plaintiff GEORGE LEWIS is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

10.

Plaintiff KATHLEEN RANSDELL is a citizen and resident of the State of Tennessee suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

11.

Plaintiff GLORIA HUBER is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

12.

- 5 -

Plaintiff THERSA PERFETTO is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

13.

Plaintiff SHANON KEENAN is a citizen and resident of the State of Indiana who is suffering from heart valve damage and/or valvular regurgitation which required surgical intervention as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux ™), and/or phentermine.

14.

Plaintiff TRACY FOINTNO is a citizen and resident of the State of Georgia who is suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

15.

Plaintiff ARZELLA WHITE is a citizen and resident of the Commonwealth of Kentucky suffering from heart valve damage and/or valvular regurgitation which required surgical intervention as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

- 6 -

16.

Plaintiff MICHAEL MEAD is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.


17.

Plaintiff SYLVIA FITE is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.


18.

Plaintiff WILMA PARHAM is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.


19.

Plaintiff CARITA MYRICK is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

- 7 -

20.

Plaintiff LILLIAN IDLETT is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

21.

Plaintiff ANGELA WHITFIELD is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

22.

Plaintiff KATHLEEN KNEZICH is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

23.

Plaintiff DEBORAH JONES is a citizen and resident of the State of Ohio suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

24.

Plaintiff SUSAN THURNHERR is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

25.

Plaintiff BLANK is a citizen and resident of the State of BLANK who is suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux ™), and/or phentermine.

26.

Plaintiff BLANK is a citizen and resident of the State of BLANK who is suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux ™), and/or phentermine.

27.

Plaintiff CYNTHIA EDWARDS is a citizen and resident of the District of Columbia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

28.

Plaintiff SYLVIA BROWN is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

29.

Plaintiff BRENDA WORLEY is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

30.

Plaintiff ELAINE DAVIDSON is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

31.

Plaintiff PATRICIA GRANIERO is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

32.

Plaintiff GILLIAN PAWLICK is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion,

consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<center>33.</center>

Plaintiff HELEN MOORE is a citizen and resident of the District of Columbia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<center>34.</center>

Plaintiff MONIQUE MARCOUX is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<center>35.</center>

Plaintiff SHEILA HAROLD is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<center>36.</center>

Plaintiff LESA THOMAS is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<center>- 11 -</center>

37.

Plaintiff L. PHILLIP CARTER is a citizen and resident of the State of North Carolina suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

38.

Plaintiff HELEN BLANQUE is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

39.

Plaintiff MICHELLE CHICK is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

40.

Plaintiff JOHN LANDWEHR is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

41.

- 12 -

Plaintiff BEVERLY DAVIS is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

42.

Plaintiff JOSEPH ROSENBLATT is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

43.

Plaintiff PAMELA TAYLOR is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

44.

Plaintiff KATHY BARKER is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

45.

Plaintiff GLADYS HACKNEY is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

46.

Plaintiff LINDA WHITE is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

47.

Plaintiff WANDA CARTER is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

48.

Plaintiff FLORENCE WILSON is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

49.

Plaintiff BARBARA STADLER is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion,

consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

50.

Plaintiff CAROL CANNAROZZO is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

51.

Plaintiff ANGELA GUAGLIANO is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

52.

Plaintiff NORMA JEAN ROBERTS is a citizen and resident of the State of Tennessee suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

53.

Plaintiff EARL SCOTT is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion,

consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<div align="center">54.</div>

Plaintiff MARVELLE EDELIN is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<div align="center">55.</div>

Plaintiff RHONDA TRACEY is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<div align="center">56.</div>

Plaintiff FRANCIS CLARK is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

<div align="center">57.</div>

Plaintiff BARBARA HARTNETT is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

58.

Plaintiff SALLY ROGALA is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

59.

Plaintiff PATRICIA FULLER is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

60.

Plaintiff JOANN ABRAM is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

61.

Plaintiff MARY SUGGS is a citizen and resident of the State of NORTH CAROLINA suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

62.

Plaintiff TAMMY FRYMAN is a citizen and resident of the Commonwealth of Kentucky suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion,

- 17 -

consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

63.

Plaintiff MINNIE FOX is a citizen and resident of the State of Tennessee suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

64.

Plaintiff KIM GREEN is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

65.

Plaintiff YVONNE RUTTERS is a citizen and resident of the State West Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

66.

Plaintiff DEBORAH GOOD is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

- 18 -

67.

Plaintiff ANNETTE KELLY is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

68.

Plaintiff MARILYN THOMPSON is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

69.

Plaintiff ALLEN NESTOR is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

70.

Plaintiff BLEN GARY is a citizen and resident of the District of Columbia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

71.

Plaintiff GENA WILSON is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

72.

Each named Plaintiff, by virtue of certain defined damage to their heart incurred as a result of their ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine, is properly classified as a Brown class member (Brown v. American Home Products, et al., U.S.D.C. E.D.Pa. Civil Action File No. 99-20593) holding claims which may be properly opted out of the Nationwide Class Action Settlement Agreement With American Home Products Corporation (hereinafter "National Settlement") under the terms and conditions of Pre-trial Order No. 1415 entered in Multi District Litigation Proceeding 1203, pending in the United States District Court for the Eastern District of Pennsylvania.

73.

The injuries that are the subject of this Complaint were first diagnosed by echocardiograms performed subsequent to September 30, 1999.

74.

Each Plaintiff suffers from injury to their mitral and/or aortic valve that has been established as being FDA Positive or greater by a board certified cardiologist.

75.

- 20 -

Each named Plaintiff timely and properly filed an Intermediate and/or Back-End opt-out form with the Claims Administrator in compliance with the terms and conditions of the National Settlement.

76.

By virtue of the filing of an Intermediate and/or Back-End opt-opt out, each named Plaintiff is entitled to pursue the present action against the "AHP/WYETH Defendants" as defined herein below.

77.

This action has been brought by each named Plaintiff for the purpose of recovering damages for the personal injuries and damages they sustained as the result of their ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.  Defendants are liable to Plaintiffs for their individual and collective acts, omissions, and involvement in developing, testing, evaluating, securing government approval for, manufacturing, distributing, advertising, conspiring to promote, monitoring and/or selling said drug compounds despite Defendants' knowledge of the unreasonable risk of death and bodily injury associated with the use of said drugs which was knowingly and purposely concealed by Defendants from the Plaintiffs, the Plaintiffs' doctors, and others.

78.

Each named Plaintiff seeks to recover only those damages permitted under the terms and conditions of the National Settlement in relation to the "AHP/WYETH Defendants."

79.

- 21 -

Each named Plaintiff seeks to recover all damages permitted under law against all other Defendants in this action (i.e. all Defendants other than the "AHP/WYETH Defendants").

80.

The injuries sustained by Plaintiffs were the result of the acts and omissions of Defendants committed both inside and outside the State of Georgia.

81.

As a direct and proximate result of Defendants' purposeful concealment of the dangers associated with the use of fenfluramine, dexfenfluramine and phentermine, Plaintiffs have only recently discovered and learned that that they were injured and damaged by Defendants' misconduct.  Plaintiffs were prevented from discovering, and could not have discovered, their injuries and damages earlier because of Defendants' fraudulent misrepresentations, conspiracy and concealment of facts and information relating to the subject drugs as more specifically alleged below.

82.

The Honorable Louis Bechtle, formerly of the District Court for the Eastern District of Pennsylvania made the following findings in his Order approving the Nationwide Class Action Settlement with American Home Products in MDL Proceeding 1203 (In Re: Diet Drugs):

"The instant class has a great deal of cohesion in that the class was basically

exposed to one substance, manufactured by one defendant over a relatively short

period of time and suffers or is at risk of suffering one particular type of injury."

(PTO 1415 at p. 46)

"Each class member's claims allege a common defect in the diet drugs and a common

course of conduct by AHP with regard to developing and marketing those diet drugs."

(PTO 1415 at p. 43)

"[T]he court finds that common issues that pre-existed this settlement - -  involving a

common product, defendant, and course of conduct - - when considered in light of the

proposed settlement, predominate over any individual issues between class members."

(PTO 1415 at p. 43)

"Although there are some individual differences among class members, the

common class-wide focus of AHP's knowledge and conduct predominate such

that judicial efficiency will be improved through the class mechanism as opposed

to relitigating the same issues in a series of individual cases...the class here

involves a single defendant with essentially a single diet drug product." (PTO

1415 at p. 42)

See Pretrial Order 1415 (MDL Proceeding 1203), 2000 WL 1222042 (E.D. Pa. August 8, 2000)

83.

The Honorable Harvey Bartle of the District Court for the Eastern District of

Pennsylvania made the following findings in his Order approving the joinder of multiple

- 23 -

intermediate and back-end opt out plaintiffs in single complaints in MDL Proceeding 1203 (In Re: Diet Drugs):

> "We do not think that the joinder of multiple intermediate and back-end opt-out plaintiffs adversely affects the intentions or goals of the parties to the Settlement Agreement. Each such plaintiff in a joint trial is limited to compensatory damages, and each must prove his or her own individual claim. We are confident that in these circumstances, the appropriate limiting instructions to the jury will protect Wyeth from the dangers related to res judicata, collateral estoppel, issue preclusion and claim preclusion. In addition, we cannot ignore the interests of judicial economy which are at the heart of procedural rules allowing multiple joinder. They generally have the effect of saving the court=s time and reducing the parties' costs. They also allow cases, particularly in overburdened jurisdictions, to move to trial more quickly than if a blanket rule existed requiring each person's case to be instituted and tried separately."

See Pretrial Order 2627 (MDL 1203) at p. 3 (A copy of PTO 2627 is attached hereto as Exhibit "A").

84.

The Honorable Penny Brown Reynolds of the State Court of Fulton County, Georgia recently held not only that the claims of two (2) individuals alleging injuries as a result of their ingestion of diet drugs were properly joined under O.C.G.A. § 9-11-20, but that said claims were properly joined for trial as well. (See November 27, 2002 Order attached hereto as Exhibit "B").

- 24 -

85.

On December 6, 2002, the Honorable Penny Brown Reynolds of the State Court of Fulton County, Georgia denied Defendants' Motion for Reconsideration of her November 27, 2002 Order (Exhibit "B" attached hereto), and denied Defendant's request for a Certificate of Immediate Review. (See December 6, 2002 Order attached hereto as Exhibit "C").

86.

In Alexander v. Fulton County, 207 F.3d 1303 (11th Cir. 2000), the Eleventh Circuit Court of Appeals discussed Federal Rule of Civil Procedure 20, the permissive joinder rule on which O.C.G.A. § 9-11-20 is based. In Alexander, eighteen plaintiffs sued a defendant for discriminatory practices. Following discovery, the defendants moved to sever the plaintiffs' claims on the grounds that the multiple claims would confuse the jury and unfairly prejudice the defendant. The district court denied the motion. The Eleventh Circuit affirmed on appeal, noting that "the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." Id. at 1323. The Court held that, even though each plaintiff had a different claim and sought different relief, all of the plaintiffs' claims were "based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame." Id. at 1324.

87.

Plaintiffs claims are properly joined in this action under O.C.G.A. § 9-11-20, as they have asserted rights to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and have alleged that multiple questions of law and fact common to all of them will arise in this action. Further, judgment may be given for one of more

- 25 -

of the plaintiffs according to their respective rights to relief and against one or more of the defendant according to their respective liabilities.

## **DEFENDANTS**

88.

Defendant, WYETH, INC. (formerly known as AMERICAN HOME PRODUCTS CORPORATION) (hereinafter "AHP/WYETH" or "AHP/WYETH Defendant," or "Manufacturer Defendant"), has its principal place of business at 5 Giralda Farms, Madison, New Jersey. AHP/WYETH is incorporated under the laws of the State of Delaware. At all times relevant hereto, AHP/WYETH (itself and as a successor to A. H. Robins Company) was and has been in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceutical drugs fenfluramine and/or dexfenfluramine. At all times relevant to this action, AHP/WYETH developed, manufactured, promoted, marketed, distributed and/or sold the aforementioned drugs through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause.

89.

On March 11, 2002 AMERICAN HOME PRODUCTS CORPORATION changed its name to "WYETH" or "WYETH, INC."

90.

Defendant AHP/WYETH may be served with a copy of summons and complaint through its registered agent for service of process, Prentice-Hall Corp System, Inc. at 4845 Jimmy Carter Blvd., Norcross, Gwinnett County, State of Georgia, 30093.

- 26 -

91.

Defendant AHP/WYETH is subject to the jurisdiction and venue of this court.

92.

Defendant, WYETH PHARMACEUTICALS, INC., a division of Wyeth, Inc. (formerly known as Wyeth-Ayerst Pharmaceuticals, Inc.) (hereinafter "WYETH PHARMACEUTICALS" or "AHP/WYETH Defendant" or "Manufacturer Defendant"), has its principal place of business at 555 Lancaster Avenue, St. Davids, Pennsylvania 19087.   To the extent that WYETH PHARMACEUTICALS does not maintain its principal place of business at said address, it maintains its principal place of business at 500 Arcola Road, Collegeville, Pennsylvania 19426.   WYETH PHARMACEUTICALS is incorporated under the laws of the State of Delaware.   At all times relevant hereto, WYETH PHARMACEUTICALS was in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceutical drugs fenfluramine and /or dexfenfluramine.   At all times relevant to this action WYETH PHARMACEUTICALS developed, manufactured, promoted, marketed, distributed and/or sold the aforementioned drugs through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause.

93.

On March 11, 2002 WYETH-AYERST PHARMACEUTICALS, INC. changed its name to "WYETH PHARMACUETICALS."

94.

Defendant WYETH PHARMACEUTICALS may be served with a copy of summons and complaint through the Georgia Secretary of State and/or at its principal place of business, 555 Lancaster Avenue, St. Davids, Pennsylvania 19087.

- 27 -

95.

Defendant WYETH PHARMACEUTICALS is subject to the jurisdiction and venue of this court.

96.

Defendant, INDEVUS PHARMACEUTICALS, INC. (formerly known as INTERNEURON PHARMACEUTICALS, INC.) (hereinafter "INTERNEURON" or "Manufacturer Defendant"), has its principal place of business at One Ledgemont Center, 99 Hayden Avenue, Lexington, Massachusetts. Defendant Interneuron is incorporated under the laws of the State of Delaware. At all times relevant hereto, Interneuron was engaged in the business of manufacturing, distributing, promoting, marketing, and/or selling the pharmaceutical dexfenfluramine. At all times relevant hereto, Interneuron developed, manufactured, promoted, marketed, and/or sold its products through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause. Defendant Interneuron is not registered with the Georgia Secretary of State as an entity properly qualified to transact business within the State.

97.

On April 2, 2002 INTERNEURON PHARMACEUTICALS, INC. changed its name to "INDEVUS PHARMACEUTICALS."

98.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant Interneuron.

99.

- 28 -

Defendant Interneuron may be served with a copy of summons and complaint, through the Georgia Secretary of State and/or at its principal place of business, One Ledgemont Center, Suite 200, 99 Hayden Avenue, Lexington, Massachusetts, 02173.

100.

Defendant Interneuron is subject to the jurisdiction and venue of this court.

101.

Defendant, MEDEVA PHARMACEUTICALS, INC. (hereinafter "MEDEVA" or "Manufacturer Defendant"), is a corporation previously having its principal place of business at 14801 Sovereign Road, Ft. Worth, Texas. Defendant MEDEVA is incorporated under the laws of the State of Texas. Prior to the filing of the present action, MEDEVA entered into a series of mergers, including a merger with CELLTECH PHARMACEUTICALS, INC. CELLTECH PHARMACEUTICALS, INC. currently serves as successor in interest MEDEVA. At all times relevant hereto, MEDEVA was engaged in the business of manufacturing, distributing, promoting, marketing, and/or selling the pharmaceutical phentermine. At all times relevant hereto, MEDEVA developed, manufactured, promoted, marketed, and/or sold its products through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause.

102.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant MEDEVA.

103.

Defendant MEDEVA may be served with a copy of summons and complaint by service upon its successor in interest, CELLTECH PHARMACEUTICALS, INC. CELLTECH

- 29 -

PHARMACEUTICALS, INC.'s registered agent for service of process is C.T. Corporation System, 1201 Peachtree Street, Atlanta, Fulton County, State of Georgia, 30361.

104.

Defendant MEDEVA is subject to the jurisdiction and venue of this court.

105.

Defendant, FISONS CORPORATION (hereinafter "FISONS" or "Manufacturer Defendant"), has its principal place of business at 755 Jefferson Road, Rochester, NY. Defendant FISONS is incorporated under the laws of the State of Delaware. At all times relevant hereto, FISONS manufactured, marketed, promoted, distributed and/or sold the pharmaceutical phentermine in interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause.

106.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant FISONS.

107.

Defendant FISONS may be served with a copy of summons and complaint by service upon its registered agent for service of process C.T. Corporation System, 101 Federal Street, Boston, Massachusetts 02110.

108.

Defendant FISONS is subject to the jurisdiction and venue of this court.

109.

Defendant, CELLTECH PHARMACEUTICALS, INC. (hereinafter "CELLTECH" or "Manufacturer Defendant"), has its principal place of business at 755 Jefferson Road, Rochester,

NY 14603. Defendant CELLTECH is incorporated under the laws of the State of Delaware. Prior to the filing of the present action, CELLTECH entered into a series of mergers and acquisitions, as a result of which, it now serves as the successor in interest to Defendant MEDEVA. Defendant CELLTECH is liable to Plaintiffs for the obligations and liabilities of Defendant MEDEVA as their successor in interest.

110.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant CELLTECH.

111.

Defendant CELLTECH may be served with a copy of summons and complaint through its registered agent for service of process, C.T. Corporation System at 1201 Peachtree Street, Atlanta, Fulton County, State of Georgia, 30361.

112.

Defendant CELLTECH is subject to the jurisdiction and venue of this court.

113.

Defendant, GOLDLINE LABORATORIES, INC. (hereinafter "GOLDLINE LABS"), maintains its principal place of business at 4400 Biscayne Boulevard, Miami, Florida 33137. Defendant GOLDLINE LABS is incorporated under the laws of the State of Florida. At all times material hereto, Defendant GOLDLINE LABS was in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs phentermine hydrochloride, fenfluramine hydrochloride and/or dexfenfluramine hydrochloride through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to

- 31 -

this cause. Defendant GOLDLINE LABS is not registered with the Georgia Secretary of State as an entity properly qualified to transact business within the State.

114.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant GOLDLINE LABS.

115.

Defendant GOLDLINE LABS may be served with a copy of summons and complaint through the Georgia Secretary of State and/or at its principal place of business located at 4400 Biscayne Boulevard, Miami, Florida 33137.

116.

Defendant GOLDLINE LABS is subject to the jurisdiction and venue of this court.

117.

Defendant, ZENITH GOLDLINE PHARMACEUTICALS, INC. (hereinafter "Zenith"), maintains its principal place of business at 4400 Biscayne Boulevard, Miami, Florida 33137. Defendant Zenith is incorporated under the laws of the State of Florida. At all times material hereto, Defendant Zenith was in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs phentermine hydrochloride, fenfluramine hydrochloride and/or dexfenfluramine hydrochloride through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause. Defendant Zenith is not registered with the Georgia Secretary of State as an entity properly qualified to transact business within the State.

118.

- 32 -

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant Zenith.

<div align="center">119.</div>

Defendant Zenith may be served with a copy of summons and complaint through the Georgia Secretary of State and/or at its principal place of business located at 4400 Biscayne Boulevard, Miami, Florida 33137.

<div align="center">120.</div>

Defendant Zenith is subject to the jurisdiction and venue of this court.

<div align="center">121.</div>

Defendant ROBERT L. SCOTT (hereinafter Defendant Scott or "AHP/WYETH Defendant" is a citizen of the State of Georgia residing at 660 St. Regis Lane, Alpharetta, Fulton County, State of Georgia. At all times relevant to the allegations set forth under this Complaint Defendant Scott was employed by Defendant Wyeth-Ayerst, its predecessor in interest, Lederle, and/or Defendant AHP/WYETH.

<div align="center">122.</div>

Defendant Scott assisted Wyeth-Ayerst, Lederle and AHP/WYETH, as well as the other Defendants, in the promotion, marketing, and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine throughout portions of the United States, including but not limited to, the state(s) in which Plaintiffs obtained or ingested the subject drug products.

<div align="center">123.</div>

Defendant Scott affirmatively undertook to provide materially false and misleading information relating to the safety and efficacy of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine to various state medical boards, state pharmacy boards, and state

<div align="center">- 33 -</div>

regulatory entities for the specific purpose of increasing the availability and sale of the subject drug products to Plaintiffs and the general public by lobbying for the removal of restrictions on the consumption and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine in the subject states.

124.

Defendant Scott, in his capacity as State Government Affairs Manager for various defendants, was responsible for obtaining of government approval for the pharmaceutical drugs phentermine hydrochloride, fenfluramine hydrochloride and/or dexfenfluramine hydrochloride so as to permit their distribution, sale and consumption in the United States of America.

125.

Defendant Scott was also involved in a conspiracy with the named Defendants to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

126.

Defendant Scott may be served with a copy of summons and complaint at his residence located at 660 St. Regis Lane, Alpharetta, Fulton County, State of Georgia 30022.

127.

Defendant Scott is subject to the jurisdiction and venue of this court.

128.

Defendant JOHN ("JACK") A. MOLNAR (hereinafter "Defendant Molnar" or "AHP/WYETH Defendant") is a citizen of the State of Georgia residing at 740 Winston Drive, Lawrenceville, Gwinnett County, State of Georgia.  At all times relevant to the allegations set

forth under this Complaint, Defendant Molnar was employed by Defendant Wyeth-Ayerst, its predecessor in interest, Lederle, and/or Defendant AHP/WYETH.

129.

Defendant Molnar assisted Wyeth-Ayerst, Lederle and AHP/WYETH, as well as the other Defendants, in the promotion, marketing, and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine throughout portions of the United States, including but not limited to, the state(s) in which Plaintiffs obtained or ingested the subject drug products.

130.

Defendant Molnar affirmatively undertook to provide materially false and misleading information relating to the safety and efficacy of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine to various state medical boards, state pharmacy boards, and state regulatory entities for the specific purpose of increasing the availability and sale of the subject drug products to Plaintiffs and the general public by lobbying for the removal of restrictions on the consumption and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine in the subject states.

131.

Prior to May 20, 1997, all Tennessee physicians (including **KATHLEEN RANSDELL, NORMA JEAN ROBERTS** and **MINNIE FOX's** prescribing physicians) were precluded by law from prescribing Pondimin, Redux, and phentermine to their patients.

132.

On May 20, 1997, Tennessee State Senate Bill No. 1343, which lifted the ban on prescribing of Pondimin, Redux, and phentermine by Tennessee physicians (including

- 35 -

**KATHLEEN RANSDELL, NORMA JEAN ROBERTS** and **MINNIE FOX's** prescribing physicians), was signed into law by Tennessee Governor Don Sunquist.

133.

In addition to lifting the ban on prescribing of Pondimin, Redux, and phentermine by Tennessee physicians, Tennessee State Senate Bill No. 1343 also effectively prevented the Tennessee Board of Medical Examiners from promulgating rules to limit physicians' (including **KATHLEEN RANSDELL, NORMA JEAN ROBERTS** and **MINNIE FOX's** prescribing physicians) abilities to prescribe Pondimin, Redux, and phentermine, except where the patient being treated for obesity was under eighteen (18) years of age.

134.

Prior to the passage of Tennessee State Senate Bill No. 1343, Defendant Molnar petitioned the Tennessee Board of Medical Examiners and the Tennessee legislature to give Tennessee physicians (including **KATHLEEN RANSDELL, NORMA JEAN ROBERTS** and **MINNIE FOX's** prescribing physicians) the ability to prescribe Pondimin, Redux, and phentermine.

135.

Defendant Molnar's efforts to have the ban on prescribing Pondimin, Redux, and phentermine in Tennessee lifted were successful with the enactment of Tennessee State Senate Bill 1343.

136.

According to a May 28, 1997 Wyeth memorandum, the passage of the Tennessee State Senate Bill lifting the ban on prescribing of Pondimin, Redux, and phentermine by Tennessee physicians (including **KATHLEEN RANSDELL, NORMA JEAN ROBERTS** and **MINNIE**

- 36 -

**FOX's** prescribing physicians), was possible only through the excellent work and efforts of Defendant Molnar and one other individual, with assistance from Wyeth's Tennessee sales force.

137.

The passage of Tennessee State Senate Bill No. 1343 was the direct result of material misrepresentations made by Defendant Molar to Tennessee legislators, physicians, and citizens relating to the safety and efficacy of Pondimin, Redux, and phentermine.

138.

But for the passage of Tennessee State Senate Bill No. 1343, Plaintiffs **KATHLEEN RANSDELL, NORMA JEAN ROBERTS, MINNIE FOX** and possibly other Plaintiffs in this action, would never have been prescribed Pondimin, Redux, and/or phentermine.

139.

Defendant Molnar was further responsible for obtaining governmental approval for the pharmaceutical drugs phentermine hydrochloride, fenfluramine hydrochloride (Pondimin) and/or dexfenfluramine hydrochloride (Redux) so as to permit their distribution, sale and consumption in the United States of America.

140.

Defendant Molnar was also involved in a conspiracy with the named Defendants to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

141.

Defendant Molnar may be served with a copy of summons and complaint at his residence located at 740 Winston Drive, Lawrenceville, Gwinnett County, State of Georgia 30044.

142.

- 37 -

Defendant Molnar is subject to the jurisdiction and venue of this court.

143.

Defendant Steven Kaiser (hereinafter "Defendant Kaiser", "Sales Director Defendant", or "AHP/WYETH Defendant") is a citizen of the State of Georgia residing at 595 Danas Ridge Drive, Roswell, Fulton County, State of Georgia.  At all times material hereto, this Defendant was in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs phentermine, fenfluramine and/or dexfenfluramine in the States of Georgia, Tennessee, and Florida, as well as other states in the southeastern United States.  This Defendant was responsible for and participated in the dissemination of false and misleading information, including but not limited to safety and associated risks, regarding the pharmaceutical drugs phentermine, fenfluramine and/or dexfenfluramine to physicians in the States of Georgia, Tennessee, and Florida, as well as other states in the southeastern United States, including the physician(s) of Plaintiffs **WILLIAM BROWN, CHERYL CRADDOCK, GEORGE LEWIS, TRACY FOINTNO, MICHAEL MEAD, SYLVIA FITE, WILMA PARHAM, CARITA MYRICK, LILLIAN IDLETT, ANGELA WHITFIELD, SYLVIA BROWN, BRENDA WORLEY, ELAINE DAVIDSON, PATRICIA GRANIERO, JOHN LANDWEHR. BEVERLY DAVIS, PAMEAL TAYLER, KATHY BARKER, GLADYS HACKNEY, LINDA WHITE, WANDA CARTER, PATRICIA FULLER, KATHLEEN RANSDELL, NORMA JEAN ROBERTS and MINNIE FOX.** Said Plaintiffs' physician(s) relied upon this Defendant's false and misleading representations in prescribing phentermine, fenfluramine and/or dexfenfluramine to each Plaintiff, as well as other patients.  This Defendant was also involved in a conspiracy to conceal certain information relating to the dangers

- 38 -

associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

144.

Defendant Kaiser was also involved in a conspiracy to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

145.

Defendant Steven Kaiser may be served with a copy of summons and complaint at 595 Danas Ridge Drive, Roswell, Fulton County, State of Georgia 30075.

146.

Defendant Kaiser is subject to the jurisdiction and venue of this court.

147.

Defendants JOHN DOE NOS. 1-5 are five separate persons, firms and/or corporations, who are believed to be citizens of the State of Georgia whose identities are otherwise unknown at this time. At all times material hereto, said Defendants were in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs phentermine, fenfluramine and/or dexfenfluramine. The John Doe Defendants were also involved in a conspiracy to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to, Plaintiffs.

148.

Once the identities and whereabouts of each John Doe Defendant is established, said Defendants will be served with a copy of summons and complaint as provided by law.

149.

- 39 -

The John Doe Defendants are subject to the jurisdiction and venue of this court.

## GENERAL ALLEGATIONS

### 150.

The drugs, fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine were widely sold, distributed, promoted and advertised by the named Defendants, and various fictitious party Defendants, as effective weight control products. Defendants sold and distributed the subject drugs in Georgia as well as other states and placed said drugs into the stream of commerce knowing that they would enter the state(s) in which Plaintiffs resided and be consumed therein.

### 151.

Fenfluramine was one of the drugs prescribed in combination and promoted and referred to as "fen/phen." The AHP/WYETH Defendants marketed fenfluramine under the trade name, Pondimin. In doing so, the AHP/WYETH Defendants actively encouraged, and/or failed to effectively discourage, the combined use of fenfluramine because they knew that the combined use would increase sales of fenfluramine.

### 152.

The named Defendants, as well as the fictitious party Defendants, directly or indirectly, made, created, manufactured, assembled, designed, sterilized, tested, evaluated, labeled, supplied, packaged, marketed, advertised, warranted, distributed and/or sold the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine. These same Defendants assisted in, and had control over, the design, assembly, packaging, labeling, marketing,

advertising, manufacturing distribution and sale of the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine.

### 153.

At all times material hereto, all Defendants, including the fictitious party Defendants, either knew or should have known that the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine had been related to and associated with severe  and life threatening complications.

### 154.

In 1965, the diet drug Aminorex was introduced in Europe.  Aminorex was touted as a wonder weight loss drug that worked by increasing brain serotonin and inhibiting reuptake of serotonin.  However, by 1967 evidence began to surface that the ingestion of Aminorex was associated with pulmonary hypertension.  Over the next six years, an Aminorex epidemic raged in Europe.  There was a ten-fold increase in primary pulmonary hypertension cases.  Half of the patients died within ten years and the rest of the patients suffered significant oxygen deprivation and are debilitated for the remainder of their lives.  Aminorex was removed from the European market in 1972.  The AHP/WYETH Defendants knew, or should have known, of the European experience with Aminorex and how it would relate to AHP/WYETH's drugs Pondimin and Redux three (3) decades later.

### 155.

In 1973, Pondimin was introduced into the United States market.  Pondimin is a fenfluramine drug and is in the same family of drugs as Aminorex, and is very similar to Aminorex.  Pondimin was touted as a wonder weight loss drug that worked by increasing brain

serotonin and inhibiting reuptake of serotonin.   However, because the drug when used alone made users lethargic and tired, sales of Pondimin languished.

156.

In the year 1990, the Food and Drug Administration (FDA) approved fenfluramine for use as a weight reduction drug for the short-term medical management of obesity.   Since that time, fenfluramine has been increasingly prescribed and used in combination with the drug phentermine to maximize weight loss.  This combination is commonly known as "fen-phen."

157.

The AHP/WYETH Defendants actively encouraged, and/or failed to effectively discourage, the combined use of fenfluramine and phentermine because they knew that the combined use would increase sales of fenfluramine.

158.

The "phen" portion of "fen-phen" consists of phentermine, an amphetamine which helps the body burn calories faster and which serves to counteract the drowsiness caused by the "fen" portion of the dosage consisting of fenfluramine, a drug which affected the serotonin levels in the brain.  Despite the fact that the concomitant use of fenfluramine and phentermine was never approved by the FDA, the subject drugs were widely prescribed for use in combination with each other and/or with dexfenfluramine in place of fenfluramine, as promoters of weight loss.

159.

Dexfenfluramine is the d-isomer of fenfluramine, containing essentially the same active ingredient as fenfluramine.  The AHP/WYETH Defendants marketed dexfenfluramine under the trade name Redux.

160.

The AHP/WYETH Defendants have known the serious side effects of fenfluramine and/or dexfenfluramine for a substantial period of time.   These side effects were known or should have been known to all Defendants at the time that they marketed the drugs to the public based on, among other things, medical evidence of dangerous and potentially fatal side effects from the use of the drugs in Europe and elsewhere, as detailed below.   Defendants did not, however, conduct adequate testing to establish the safety of the drugs before marketing them. Rather, the Defendants aggressively marketed the drugs and promoted their use, both individually and in combination with other drugs, while downplaying evidence of the serious and potentially fatal side effects that consumers of these drugs could face.

161.

Defendants undertook a willful wanton and reckless course of action and marketing strategy which included advertising and promotional campaigns to aggressively promote and sell the subject drugs by falsely misleading potential users about the products, by suppressing material facts, and by failing to warn users about the serious health effects which Defendants knew or should have known could result from the use of the subject drugs.

162.

This advertising campaign on the whole, through its affirmative misrepresentations and omissions, falsely and fraudulently sought to create the impression and to convey to Plaintiffs and others on whom Plaintiffs would rely, that the use of either fenfluramine or dexfenfluramine alone or in combination with phentermine as "fen-phen" was safe and had fewer adverse health

- 43 -

and side effects than was actually known to Defendants at the time they made these representations.

<div align="center">163.</div>

Phentermine, fenfluramine and dexfenfluramine were aggressively marketed by Defendants, often by encouraging unapproved off-label combination use of the products.

<div align="center">164.</div>

Defendants, as manufacturers and distributors, or agents thereof, knew of and recklessly encouraged the prevalence of off-label combination use of their drugs and failed to warn physicians and consumers that the combination drug regimen was not FDA approved, was not recommended and had not been systematically tested by appropriate clinical trials or follow-up reporting of adverse effects.

<div align="center">165.</div>

Defendants undertook a promotional campaign that included the placement of numerous articles in scientific, medical and general interest magazines extolling the virtues of fenfluramine combined with phentermine in order to induce widespread use of the product. Many of these articles either cited or reported the results of studies that were funded by the AHP/WYETH Defendants. Thus, the AHP/WYETH Defendants actively encouraged, or failed to effectively discourage, combinations of these drugs.

<div align="center">166.</div>

Defendants actively encouraged, or failed to effectively discourage, combinations of these drugs by employing and/or contracting with commission based salespersons to promote the widespread prescribing of fenfluramine and/or the combination of fenfluramine and phentermine to patients that were not clinically obese.

<div align="center">- 44 -</div>

167.

The marketing program as a whole, by affirmative misrepresentations and omissions, falsely and fraudulently sought to create the image and impression that the use of fenfluramine, both individually and/or in combination with phentermine, was safe for human use, had fewer side effects and adverse reactions than other methods of weight loss, constituted a convenient, safe form of weight loss and would not interfere with daily life.

168.

Defendants purposefully downplayed and understated the health hazards and risks associated with fenfluramine and/or dexfenfluramine.

169.

Defendants falsely and fraudulently concealed relevant information from doctors and potential fenfluramine and/or dexfenfluramine users regarding the safety of fenfluramine and/or dexfenfluramine.

170.

In particular, the AHP/WYETH Defendants' marketing efforts as well as their product inserts, falsely, fraudulently and negligently misrepresented a number of facts regarding fenfluramine and/or dexfenfluramine, including the following:

(1)     The presence of adequate testing of fenfluramine and the presence of adequate testing of any combination use of the product with phentermine;

- 45 -

(2)     Fenfluramine and/or dexfenfluramine's efficacy including but not limited to the severity, frequency and discomfort of side effects and adverse health effects caused by the drugs; and

(3)     The relative risks associated with the drugs including the prevalence of pulmonary hypertension and primary pulmonary hypertension.

171.

On October 3, 1981, Dr. J.G. Douglas published *Pulmonary Hypertension and Fenfluramine* in the British Medical Journal. On January 25, 1986 an article entitled *Irreversible Pulmonary Hypertension after Treatment with Fenfluramine*, was published in the British Medical Journal.   The AHP/WYETH Defendants knew, or should have known, of the British Medical Journal articles and how those articles related to their drug Pondimin a decade later.

172.

In 1984, Dr. Michael Weintraub published *A Double-Blind Clinical Trial in Weight Control: Use of Fenfluramine and Phentermine Alone and in Combination* in the Archives of Internal Medicine.   Dr. Weintraub's study was supported by A.H. Robins (which was later acquired by AHP/WYETH).  Despite noting some adverse effects associated with fenfluramine, Dr. Weintraub entirely failed to examine the long-term safety of fenfluramine.  Instead, the study focused on the short-term effectiveness of the drugs used individually, and in combination.

173.

In 1992, Dr. Weintraub published a series of articles in Clinical Pharmacological Therapies, in which he reported his research regarding the long term use of fenfluramine and

- 46 -

phentermine for weight control. Dr. Weintraub's research was supported by the AHP/WYETH Defendants.

174.

Dr. Weintraub's research assumed the safety of fenfluramine, and did not examine the short-term or long-term safety of the drug. Further, the AHP/WYETH Defendants failed to conduct or fund any studies or research regarding the long-term safety of the fenfluramine drug, Pondimin. Nevertheless, the AHP/WYETH Defendants did promote to physicians and the public Dr. Weintraub's conclusion that long term combination use of fenfluramine and phentermine was effective for the management of obesity.

175.

By 1993, the AHP/WYETH Defendants labeling for Pondimin indicated that there were only 4 reported cases of pulmonary hypertension reported in association with the drug. Yet, that same year, Dr. Francois Brenot published *Primary Pulmonary Hypertension and Fenfluramine Use*, in the British Heart Journal. Dr. Brenot identified 25 cases of primary pulmonary hypertension associated with the use of fenfluramine and/or dexfenfluramine. The AHP/WYETH Defendants knew or should have known of the Brenot article. AHP/WYETH should have known by at least 1993 that Pondimin was defective and unreasonably dangerous. AHP/WYETH should have known by at least 1993 that AHP/WYETH's labeling of Pondimin was false.

176.

On June 24, 1994, AHP/WYETH Safety Surveillance Monitor, Amy Myers, wrote a memo to AHP Medical Monitor, Fred Wilson, and indicated that AHP/WYETH's database

- 47 -

contained 37 cases of primary pulmonary hypertension associated with Pondimin. Further, in February 1994, the preliminary results of the International Primary Pulmonary Hypertension study ("IPPH Study") entitled "Appetite Suppressants and the Risk of Primary Pulmonary Hypertension" was released and available to the AHP/WYETH Defendants. The preliminary results of the IPPH Study confirmed the association between fenfluramine and dexfenfluramine, and pulmonary hypertension and primary pulmonary hypertension. The AHP/WYETH Defendants concealed the number of cases of primary pulmonary hypertension associated with Pondimin that the AHP/WYETH Defendants knew existed in order to continue to market Pondimin for profit.

177.

On June 15, 1995 AHP/WYETH Defendants' James Ottinger, reported to Joseph Bathish the status of the European Committee on Proprietary Medicinal Product's ("CPMP") pharmacovigilance discussion wherein the CPMP working party concluded that a causal relationship between anorectic agents, like fenfluramine and/or dexfenfluramine, and the occurrence of primary pulmonary hypertension had been established.

178.

The August 26, 1996 issue of the New England Journal of Medicine reported the final results of IPPH Study, which had been preliminarily released in February 1994. The IPPH Study concluded that fenfluramine-based anorexigens, such as fenfluramine and dexfenfluramine, increased the risk of PPH by a multiple of more than 23 times.

179.

The AHP/WYETH Defendants were aware of the result of the IPPH study by at least February 1994. Nevertheless, the AHP/WYETH Defendants failed to apprise the public or

physicians that the risk of contracting PH or PPH was many, many multiples of that previously reported by the AHP in their literature. Even after the Brenot article and the preliminary release of the IPPH Study the AHP/WYETH Defendants failed to remove Pondimin from the market when the AHP/WYETH Defendants knew of the extreme danger, causal relationship and substantial risk of harm associated with the use AHP's drug Pondimin.

<div align="center">180.</div>

Even prior to their knowledge of the IPPH Study, the manufacturers and distributors of the subject drugs knew about the risks of PPH associated with using the subject drugs from experience with and subsequent banning of such drugs in various countries in Europe. Nevertheless, Defendants failed to apprise Plaintiffs, the public at large, or physicians of these material facts and risks.

<div align="center">181.</div>

The AHP/WYETH Defendants continued to promote Pondimin after learning of the extreme danger associated with it. The AHP/WYETH Defendants continued to promote Pondimin knowing the drug had no beneficial use. The AHP/WYETH Defendants labeling on the drug was totally inadequate to alert prescribing physicians and patients of the actual PH or PPH danger and risk associated with its fenfluramine drug, Pondimin. The AHP/WYETH Defendants knew that danger and that risk.

<div align="center">182.</div>

Even after they knew of the danger the AHP/WYETH Defendants did not remove Pondimin from the market and did not do any further testing of the drug. Instead, the AHP/WYETH Defendants continued to market the drug to prescribing physicians like the physicians that prescribed the diet drugs to the Plaintiffs in this case.

<div align="center">- 49 -</div>

183.

Further, in 1996 the AHP/WYETH Defendants introduced their dexfenfluramine drug, Redux into the U.S. market despite the fact that the AHP/WYETH Defendants knew of the danger and risks of primary pulmonary hypertension associated with Pondimin.

184.

The AHP/WYETH Defendants did not adequately or appropriately disclose fenfluramine and/or dexfenfluramine information or related drug information to physicians in the United States.   Instead the AHP/WYETH Defendants fraudulently concealed the pulmonary hypertension (PH) or primary pulmonary hypertension (PPH) danger they knew of from physicians.  As a result, physicians have over-prescribed fenfluramine and/or dexfenfluramine drugs, Pondimin and Redux, to patients who were grossly under-informed regarding the risk of PH or PPH associated with the drugs.

185.

Although the FDA approved phentermine and fenfluramine separately, the FDA never approved the drugs for combined use.  The AHP/WYETH Defendants knew of and encouraged the prevalence of off-label combined use of their drugs, and failed to adequately and appropriately warn physicians and consumers that the combination drug regimen was not FDA approved, was hazardous due to the presence of fenfluramine, was not recommended and had not been systematically tested by appropriate clinical trials.  Further, the AHP/WYETH Defendants fraudulently concealed, destroyed and removed written evidence and/or intentionally misrepresented evidence supporting the association between PH and/or PPH with fenfluramine and/or dexfenfluramine.

186.

The AHP/WYETH Defendants failed to fully and adequately warn doctors, the public and/or the Plaintiffs about the risk of pulmonary hypertension and primary pulmonary hypertension from Pondimin and Redux.

187.

At all times relevant to this cause, Defendants also knew or should have known of many other studies, regulatory actions and concerns, incidences of injury and/or death, concerns about the subject drugs, safety among scientists, researchers, regulators and other knowledgeable professionals, the dangers of drug combinations, meetings among pharmaceutical industry officers, executives or employees (including Defendants), internal memos and reports of health concerns regarding the subject drugs, the desire of Defendants to stop or delay regulatory action regarding the subject drugs, the lack of sufficient safety studies before and during marketing of the subject drugs, the contents of Defendants' own files, plans and reports, the danger of the off-label use of medications, the desire of Defendants to maximize profits despite safety concerns, safety concerns about the drugs which could block or change FDA approval, regulatory actions, reports of injury and concerns about the subject drugs in Europe, case reports of pulmonary hypertension, regulatory efforts to make changes in the warning and labels required on these products and the plans and actions of Defendants to fight such changes (including supplying regulators with false or misleading information), warning labels on the products designed so that they would be overlooked by physicians and users such as Plaintiffs, statements by medical professionals regarding safety concerns for the subject drugs, the fact that phentermine is an MOAI drug which would be contra-indicated for usage with fenfluramine and dexfenfluramine,

- 51 -

prevalent usage of unsafe combinations of the subject drugs (as promoted by Defendants) and adverse effects reported therefrom, the failure of Defendants to report incidences of PPH resulting from the use of the subject drugs to regulators and health care professionals, false information provided by sales representatives and others concerned with advertising and promoting the subject drugs, efforts to derail regulatory review and oversight of the subject drugs, the identification of groups most at risk of injury, the misrepresentation and concealment of reports regarding adverse health effect of the subject drugs by Defendants from regulators and health care professionals, and many other material facts regarding the subject drugs and which would have shown the danger and adverse health effect of using the subject drugs. Nevertheless, Defendants did suppress, misrepresent and failed to inform Plaintiffs, the public at large, or physicians of these material facts and risks, and did encourage and promote unsafe usage by Plaintiffs and others.

188.

Defendants, having undertaken the manufacture, sale, marketing, distribution and promotion of the diet drugs described herein owed a duty to provide Plaintiffs, physicians, state regulators and others upon whom it was known, or should have known, by Defendants that Plaintiffs would rely, accurate and complete information regarding the subject drug products. Nevertheless, Defendants misrepresented these facts, and failed to inform and did conceal from Plaintiffs, the public at large, and physicians of the material facts and risks of using the subject drugs.

189.

Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, state regulators and others upon whom it was known, or should have been known that each Plaintiff would rely,

- 52 -

that the subject drugs were safe and effective, that the benefits of taking the subject drugs outweighed any risks and misrepresented and concealed safety and effectiveness information regarding its products including but not limited to the propensity to cause serious physical harm when used alone and in combination. The continuous and ongoing course of action constituting fraud and misrepresentation upon Plaintiffs started as early as 1993, if not earlier, and continued through repeated acts and non-disclosure every year since then, in the State(s) in which the Plaintiffs reside, throughout the United States, and elsewhere.

190.

Defendants' fraudulent misrepresentations took the form of, among other forms, express and implied statements, publicly disseminated misinformation, misinformation provided to state regulatory agencies, inadequate, incomplete and misleading warnings about the subject products, failure to disclose important safety and injury information regarding the products while having a duty to disclose to Plaintiffs and others such information, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead regarding the safety of the subject products.

191.

The subject drug products were in fact unsafe, and the use of the subject drug products posed a risk of injury and death that outweighed the purported benefits of their use, such that injury was in fact caused to Plaintiffs and others.

192.

Defendants failed to adequately warn Plaintiffs and those whom they knew Plaintiffs would rely of the hazards associated with the use of the subject diet drug products and conspired

- 53 -

to conceal and did conceal this knowledge from Plaintiffs and others. As a result of this failure to warn, Plaintiffs were caused to suffer the injuries and damages hereinafter set forth.

193.

Plaintiffs were prescribed and/or ingested the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and/or phentermine for weight loss and suffered injury thereby.

194.

Although Defendants knew or should have known that dangerous risks were associated with the use of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine, Defendants proceeded to or permitted the same to be advertised, promoted, distributed and sold without adequate warnings of the serious side effects and dangerous risks. Defendants knew of and encouraged the prevalence of off-label combination use of their drugs and failed to warn physicians and consumers that the combination drug regimen was not FDA approved, was not recommended and had not been tested by appropriate clinical trials.

195.

The drugs fenfluramine, dexfenfluramine and phentermine were defective and unreasonably dangerous when they left the possession of Defendants in that, among other ways:

(1) The subject drugs caused injury to the user far beyond any warned, noticed, expected or reasonable side effect or adverse reaction and when placed in the stream of commerce they contained unreasonably dangerous defects subjecting Plaintiffs to risks from expected or known usage, including bodily injury and death, which exceeded the benefits of the subject drugs;

(2) When placed in the stream of commerce the subject drugs were defective in design and formulation, making use of the drugs more dangerous than an ordinary consumer

would expect and more dangerous than other risks associated with obesity and weight loss;

(3) The subject drugs contained insufficient and/or ineffective warnings to alert consumers and users to the risks of injury and death by PPH;

(4) The subject drugs were insufficiently tested (singularly or in combination);

(5) There were insufficient instructions on the proper use of the subject drugs;

(6) There was misleading advertising and promotion concerning the safety and benefits of using the subject drugs;

(7) There were inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the significant risks previously described, Defendants failed to provide adequate warnings to users and consumers, and/or their physicians, and continued to promote the sale and use of the subject drugs; and the subject drugs had not been materially altered or modified prior to the use of said drugs by Plaintiffs.

(8) Defendants were in the business of distributing and selling the products made the basis of this lawsuit. Defendants sold and/or distributed these products in a defective condition that was unreasonably dangerous to the user or ultimate consumer of this product. Each product was expected to and did reach the user and consumer Plaintiffs without substantial change in the condition at which it was sold.

196.

As a direct and legal result of the defective condition of the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine, Plaintiffs have sustained and will continue to sustain serious and permanent injuries, physical pain and suffering, impairment,

disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors, physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems associated with their injuries.

197.

Defendant Scott, Defendant Molnar, and certain John Doe Defendants each reside and work in the State of Georgia. Said Defendants worked for or on behalf of the Manufacturing and Distributing Defendants herein in the State of Georgia, and elsewhere throughout the United States, at times relevant to this cause, and each actively and personally participated in the marketing, distribution, promotion and advertising in each state that the subject diet drugs were ultimately used by Plaintiffs, resulting in injury to Plaintiffs.

198.

The tortious actions and misdeeds of Defendants as alleged herein are ongoing and at all times relevant hereto were ongoing and continuous and constituted ongoing and continuous torts.


## COUNT I (STRICT LIABILITY-DEFECTIVE PRODUCT)

199.

Plaintiffs adopt and re-alleges each paragraph above, as if fully set forth herein.

200.

The allegations set forth under Count I apply only to the Manufacturer Defendants as identified hereinabove.

- 56 -

201.

The fenfluramine (Pondimin), dexfenfluramine (Redux ), and phentermine drugs which were designed, developed, researched, manufactured, and/or supplied by the Manufacturer Defendants were not merchantable nor reasonably suited to their intended use due to design defects in the subject drugs.

202.

The risk of severe and life threatening complications and other side effects associated with use of the subject diet drugs constituted dangers and risks which were inherent in the design of the drugs that served to outweigh any utility the drugs may have had.

203.

The Manufacturer Defendants, individually and collectively, knew, or should have known, that fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine were, and are, dangerously defective products that posed an unacceptable risk unknown to, and unknowable by, the consuming public.

204.

Plaintiffs have suffered injury and have incurred damages as a direct and proximate result of the design defects existing in regard to fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine causing Defendants to be liable to Plaintiffs under the doctrine of strict liability due to the defective nature of the subject drug products.

## COUNT II (STRICT LIABILITY  FAILURE TO WARN)

205.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

206.

- 57 -

The allegations set forth under Count II apply only to the Manufacturer Defendants as identified hereinabove.

207.

At the time the Manufacturer Defendants placed fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine into the stream of commerce for sale or consumption by Plaintiffs, said Manufacturer Defendants failed to accompany said inherently dangerous products with sufficient warnings to advise doctors or consumers of the health risks associated with the subject drugs.

208.

To the extent that any warning was provided by the Manufacturer Defendants with the subject drug products, the warning was defective as it did not accurately reflect the true dangers associated with the defective drug products and did not accurately serve to warn physicians or consumers of:

(a) the true risks of injury associated with the products;

(b) the symptoms of such injuries;

(c) the scope of such injuries; or

(d) the severity of the known risks associated with these products.

209.

As a direct and proximate result of the Manufacturer Defendants' failure to provide adequate warnings with the subject drug products, Plaintiffs have suffered injury and damages for which they are entitled to recover.

## COUNT III (STRICT LIABILITY FAILURE TO TEST)

210.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

211.

The allegations set forth under Count III apply only to the Manufacturer Defendants as identified hereinabove.

212.

The Manufacturer Defendants failed to perform adequate testing of the subject drug products prior to placing said products in the stream of commerce, in that adequate testing would have shown that fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine each posed a substantial and serious risk of harm to consumers of the drugs which were not accurately disclosed.

213.

As a direct and proximate result of the Manufacturer Defendants' breach of their duty to adequately test the subject drug products, Plaintiffs have suffered injury and damages for which they are entitled to recover.

## COUNT IV (NEGLIGENCE)

214.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

215.

At all times material hereto, each Defendant owed a duty to Plaintiffs to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing,

promotion, labeling, assembling, packaging, distributing and selling of the subject diet drug products.

<div align="center">216.</div>

Defendants, individually and collectively, were negligent in their actions, misrepresentations, and omissions toward Plaintiffs.

<div align="center">217.</div>

Defendants were negligent in their design, manufacture, processing, testing, advertising, marketing, promotion, labeling, assembling, packaging, distributing and/or selling the subject drugs which they knew were unreasonably dangerous and carried with them significant side effects. Such negligent acts include, but are not limited to the following:

(1) Defendants acted negligently in designing, manufacturing, processing, advertising, marketing, promotion, testing, labeling, assembling, packaging, distributing and/or selling the drugs which they knew, or through the exercise of reasonable diligence should have known, were dangerous or unreasonably dangerous and carried with them significant side effects;

(2) Defendants acted negligently in failing to include adequate warnings with the drugs that would alert consumers and physicians to the potential risks and serious side effects of the drugs;

(3) Defendants acted negligently in failing to adequately and properly test the drugs before placing the drugs on the market;

(4) Defendants acted negligently in failing to conduct sufficient testing on the drugs that, if properly performed, would have shown that the drugs had serious side effects;

(5) Defendants acted negligently in failing to warn Plaintiffs that use of the drugs should be accompanied by a professional examination and regularly scheduled follow-up examinations so that primary pulmonary hypertension (PPH) could be avoided and/or detected early;

(6) Defendants acted negligently in failing to warn Plaintiffs that use of the drugs carried a risk of temporary or permanent disability due to primary pulmonary hypertension (PPH) while at the same time promoting dangerous use of the drugs alone and in combination;

(7) Defendants acted negligently in failing to warn Plaintiffs that use of the drugs carried a risk that heart transplant and lung transplant might become necessary to repair damages caused by the drugs; and

(8) Defendants acted negligently in failing to provide post-marketing warnings or instructions after Defendants knew or should have known of the significant risks of pulmonary and/or cardiovascular injury from the use of the drugs.

<div align="center">218.</div>

Defendants knew or should have known that the drugs caused unreasonably dangerous risks and serious side effects of which Plaintiffs would not be aware.  Defendants nevertheless manufactured, packaged, advertised, marketed, promoted, sold and distributed the subject diet drug products in a negligent manner knowing that there were safer methods and products for weight loss and/or weight control.

<div align="center">219.</div>

As a direct and proximate result of the negligence of Defendants, Plaintiffs have sustained, and will continue to sustain in the future, serious and permanent injuries; physical pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings; loss of the ability to earn money in the past and the future; expense of hospitalization; medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems associated with their injuries, and as otherwise set forth under this Complaint.

<div align="center">**COUNT V (BREACH OF WARRANTIES)**</div>

<div align="center">220.</div>

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

<div align="center">- 62 -</div>

221.

When the Manufacturer Defendants and the John Doe Defendants placed the subject drugs into the stream of commerce, they knew of the use for which the drugs were intended (as diet aids and weight loss medications), and expressly and impliedly warranted the products to be of merchantable quality and to be safe and fit for such use.

222.

Plaintiffs reasonably relied upon the expertise, skill, judgment and knowledge of the Manufacturer Defendants and the John Doe Defendants and upon the express and/or implied warranty that the drugs were of merchantable quality and fit for use for weight loss and/or weight control.

223.

The drugs were not of merchantable quality and were not safe or fit for their intended use because the products were, and are, unreasonably dangerous and unfit for the ordinary purposes for which they were used, in that they caused injury to Plaintiffs and others far beyond any acceptable or warned side effect.  Said drug products were unduly dangerous in expected use and did cause undue injury to Plaintiffs.

224.

As a direct and proximate result of the Manufacturer Defendants' and the John Doe Defendants' breach of both implied and expressed warranties, Plaintiffs has suffered injuries and sustained damages.

225.

As a direct and proximate result of the breach of warranty by the Manufacturer Defendants and the John Doe Defendants, Plaintiffs have sustained and will continue to sustain serious and permanent injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with her injuries; and as otherwise set forth under this Complaint.

## COUNT VI (FRAUD AND MISREPRESENTATION)

226.

Plaintiffs adopt and re-allege each paragraph above as if fully set forth herein.

227.

All Defendants, including Defendant Scott, Defendant Molnar, and the John Doe Defendants, knew or should have known that the material representations they were making regarding the safety and efficacy of the subject diet drug products were false, and made such misrepresentations with the intent or purpose that Plaintiffs, Plaintiffs' physicians, state medical boards, state pharmacy boards, state regulators, and others would rely upon them, leading to the ingestion and use of the subject drugs by Plaintiffs.

228.

At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiffs were unaware of the falsity of the statements being made, reasonably believed such statements to be true, and acted in reasonable reliance upon such statements.

229.

Defendants breached their duty to disclose to Plaintiffs (including those duties established under 21 C.F.R §§ 1.21; 99.101; 201.56; 201.57; 310.303; 314.70; 314.80; & 314.81 as well as under other laws of this State and others) by willfully and recklessly providing false, incomplete, and misleading information regarding the subject drug products, and Defendants acted with deliberate intent to deceive and mislead Plaintiffs, and those who Defendants knew or should have known each Plaintiffs would rely upon in ingesting and using of the subject diet drugs.

230.

Plaintiffs reasonably relied upon these inaccurate and fraudulent misrepresentations, and relied upon the absence of adverse safety information about the drugs which Defendants did suppress, conceal, or fail to disclose, and suffered damage and injury as a result thereof.

231.

As a direct and proximate result of Defendants' willful, fraudulent and intentional misrepresentations, made with the intent to deceive Plaintiffs and others, Plaintiffs have suffered injury and damages; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care

and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with their injuries; and as otherwise set forth under this Complaint.

### COUNT VII (NEGLIGENT AND RECKLESS MISREPRESENTATION)

232.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

233.

Defendants negligently and recklessly represented to Plaintiffs, Plaintiffs' physicians, state medical boards, state pharmacy boards, state regulators and other persons and professionals on whom it was known by Defendants that Plaintiffs would rely, as well as the public at large, that the subject diet drug products were safe to ingest and that the utility of these products outweighed any risk in use for the intended purpose of weight loss and/or weight control. Also, by negligently failing to disclose to Plaintiffs, and others for the benefit of Plaintiffs, important safety and injury information, thereby suppressing material facts about the drugs, while having a duty to disclose such information, which duty arose from their actions of making, marketing, lobbying in support of, promoting, distributing and selling pharmaceutical products to Plaintiffs and others, Defendants further led Plaintiffs to rely upon the safety of the product in its use.

234.

The false representations of Defendants were negligently and recklessly made, in that the subject drug products in fact caused injury, were unsafe, and the benefits of their use were far outweighed by the risk associated with use thereof. Defendants, individually and collectively, committed acts of negligent misrepresentation and negligent concealment by suppressing

material facts relating to the dangers and injuries associated with, and caused by, the use of the subject drugs.

235.

Defendants knew or should have known that their representations were false. Defendants made such false, negligent and/or reckless representations with the intent or purpose that Plaintiffs and Plaintiffs' physicians would rely upon such representations, leading to the use of the subject drugs by Plaintiffs.

236.

As a direct and proximate result of Defendants' negligent and reckless misrepresentations or concealment of facts, upon which Plaintiffs reasonably relied, Plaintiffs have suffered injury and sustained damages for which Defendants are liable.

237.

In undertaking to disseminate the negligent and reckless misrepresentations set forth above, Defendants intended to cause the deregulation, removal of restrictions on sale, and otherwise make the subject diet drug products readily available to Plaintiffs and the general public for purchase and/or use of the subject drug products solely to facilitate economic gain by Defendants. As a direct result of the negligent and reckless misrepresentation of Defendants, Plaintiffs have sustained and will continue to sustain serious and permanent injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical

monitoring in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with their injuries; and as otherwise set forth under this Complaint.

## COUNT VIII (CONSPIRACY TO DEFRAUD AND FRAUDULENTLY CONCEAL)

238.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

239.

All Defendants, including Defendant Scott, Defendant Molnar, as well as the John Doe Defendants, entered into a conspiracy to suppress and fraudulently misrepresent material information that they were under a duty to disclose to Plaintiffs. In undertaking such conspiracy, Defendants purposely failed to properly inform consumers, including Plaintiffs, of the health risks associated with these products as known by Defendants. Defendants entered this conspiracy that included those acts previously described concerning various studies and reports which were not disclosed to the consuming public, and the other specific allegations regarding fraud and misrepresentation made hereinabove.

240.

Defendants conspired together to commit the tort of fraud and misrepresentation upon Plaintiffs, in the same manner as contained in the allegations of fraud, concealment and misrepresentation stated above, knowing that same would lead to increased sales of said products and personal gain to each Defendant with a proportionate increased incidence and risk of injury and death to Plaintiffs.

- 68 -

241.

Each Defendant herein participated in combination in the conspiracy to defraud, conceal and misrepresent, which conspiracy had an unlawful, oppressive, and immoral purpose (to increase profits by increasing incidences and risks of death and injury) and/or achieved its purpose by unlawful, oppressive and immoral means (the suppression and fraudulent misrepresentation of material facts regarding important safety and health information which Defendants had a duty to disclose and disseminate under applicable state and federal law) and did commit overt acts in furtherance of the conspiracy, which was a legal cause of actual injury and damage to Plaintiffs.

242.

As a result of the conspiracy, Defendants made fraudulent misrepresentations to Plaintiffs and others as set forth above, and important safety and injury information was concealed from and misrepresented to Plaintiffs, and others upon whom Plaintiffs relied, with the intent that Plaintiffs would rely upon the misrepresentations and absence of concealed information, as more specifically set forth above.

243.

As a result of the conspiracy, Plaintiffs relied upon the misrepresentations of fact as specifically stated above, and did rely upon the absence of important safety and injury information, and as a result was injured and suffered serious and permanent injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the

future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with her injuries; and as otherwise set forth under this Complaint.

## COUNT IX (JOHN DOE DEFENDANT LIABILITY)

244.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

245.

The John Doe Defendants listed in this Complaint, whose identities at this time are unknown, are also liable to Plaintiff in strict liability, negligence, breach of expressed and implied warranty, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, as well as those other actions pled in this Complaint.

246.

As a direct and proximate of the aforementioned illegal and tortious acts, Plaintiffs were injured and suffered damages including, but not limited to: (permanent and ongoing into the future) injury to Plaintiffs' hearts and other physical injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and

mental anguish concerning future medical problems including but not limited to those associated with her injuries; and as otherwise set forth under this Complaint.

## COUNT X (SALES DIRECTOR DEFENDANT LIABILITY)

247.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

248.

The Sales Director Defendants, including those named as parties as well as those qualifying as John Doe Defendants, are also liable to Plaintiffs in negligence, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, as well as those other actions pled in this Complaint other than strict liability and breach of expressed and implied warranty.

249.

Those positive tortious and overt acts by the Sales Director Defendants were committed in their individual and representative capacity and include, but are not limited to, the following: the Sales Director Defendants failed to convey adequate warnings to Plaintiffs through the prescribing physicians; the Sales Director Defendants were in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous subject drug which has caused harm to Plaintiffs; the Sales Director Defendants negligently distributed, marketed, advertised and/or promoted the unreasonably dangerous subject drug; the Sales Director Defendants made negligent misrepresentations regarding the safety and efficacy of the unreasonably dangerous subject drug; the Sales Director Defendants negligently failed to provide sufficient instructions to each Plaintiff and/or their prescribing physician(s) regarding the use of the subject drug; and the

- 71 -

Sales Director Defendants acted negligently in their hiring, supervision and retention of the sales representatives they oversaw in that said Defendants knew or should have known that the field sales forces members acting under their control were providing materially false and inaccurate information to Plaintiffs' physicians, and others upon whom Plaintiff relied, relating to the safety and efficacy of the subject drug product.

250.

As a direct and proximate result of such unlawful and tortious acts, Plaintiffs were injured and suffered damages including, but not limited to: (permanent and ongoing into the future) injury to each Plaintiffs gastrointestinal system and other physical injuries, physical pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors, physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems as otherwise set forth under this Complaint.


## COUNT XI (JOINT AND SEVERAL LIABILITY)

251.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

252.

By virtue of their individual and collective acts and omissions, Defendants are jointly and severally liable to Plaintiffs as such acts and omissions have proximately caused Plaintiffs to suffer a single indivisible injury for which each Defendant is responsible.

## COUNT XII (PLAINTIFF'S DAMAGES)

### 253.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

### 254.

As a result of the individual, combined and concurring acts and omissions of Defendants as set forth herein above, each above-named Defendant, caused or contributed to cause the following injuries to Plaintiffs:

(1) Plaintiffs have been caused to suffer physical injury, past, present and future pain and suffering, disability, impairment, lost capacity to enjoy life, mental anguish, and lost earnings in an amount to be proven at trial;

(2) Plaintiffs have been caused to incur medical expenses and will in the future incur medical expenses an amount to be proven at trial;

(3) Plaintiffs have been caused to undergo medical monitoring and will be required to undergo medical  monitoring for the rest of Plaintiffs' lives an amount to be proven at trial; and

(4) Plaintiffs have been caused to suffer past, present and future fear and mental anguish concerning their present and future medical problems including but not limited to those associated with her injuries in an amount to be proven at trial.

## COUNT XIV (PUNITIVE DAMAGES)

### 255.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

256.

The conduct of each Defendant, as set forth herein above was intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that each Defendant acted only out of self interest and personal gain. Such conduct evidences a specific intent to cause harm to Plaintiffs as provided under O.C.G.A. § 51-12-5.1. Accordingly, punitive damages should be imposed against each Defendant (other than the AHP/WYETH Defendants) pursuant O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each Defendant from repeating or continuing such unlawful conduct.

WHEREFORE, Plaintiffs pray:

(1)    That process issue according to law;

(2)    That each Defendant be served with a copy of Plaintiffs= Complaint and show causewhy the prayers for relief requested by each Plaintiff herein should not be granted;

(3)    That Plaintiffs be granted a trial by jury in this matter;

(4)    That the Court enter a judgment against each Defendant, jointly and severally, for all general and compensatory damages allowable to Plaintiffs under the terms of the National Settlement, to the extent it applies;

(5)    That the Court enter a judgment against each Defendant, jointly and severally, for all special damages allowable to Plaintiffs under the terms of the National Settlement, to the extent it applies;

(6)    That the Court enter a judgment against each Defendant (other than the

- 74 -

AHP/WYETH Defendants) serving to award Plaintiffs punitive damages under the provisions of O.C.G.A. § 51-12-5.1;

(7)   That the Court enter a judgment against each Defendant, jointly and severally, for all other relief sought by Plaintiffs under this Complaint in a manner consistent with the National Settlement, to the extent that it applies;

(8)   That the costs of this action be cast upon Defendants; and

(9)   That the Court grant Plaintiffs such further relief which the Court deems just and appropriate.

Respectfully submitted this 23rd day of June, 2003.


_____Robert C. Buck_____
SCHLUETER, BUCK & CHILDERS
Robert C. Buck  -  Georgia Bar No. 092495
C. Andrew Childers - Georgia Bar No. 124398
940 Center Street
Conyers, Georgia 30012
(770) 388-9000


_____Charles A. Mathis, Jr._____
THE MATHIS LAW FIRM
Charles A. Mathis, Jr.  -  Georgia Bar No. 477025
The Equitable Building
Suite 1400
100 Peachtree Street, N.W.
Atlanta, GA 30303
(404) 523-5000

- 75 -

_Michelle Parfitt_

ASHCRAFT & GEREL, LLP
Michelle Parfitt - DC Bar No. 358592
(Pro Hac Vice Application filed herewith)
2000 L Street
Suite 400
Washington, DC 20036
(202)783-6400

**Attorneys for Plaintiffs**

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

RICHARD BROWN; MARY C. BROWN; SANDRA JANSEN )
LAMARA MORRIS; JAMES MORRIS;                          )
CHERYL CRADDOCK; CHRISTOPHER CRADDOCK;               )
JOSEPH BANIEWICZ; LINDA WILSON;                      )
WILLIAM WILSON; CHRISTINA BURCH;                     )
NANCY BROCK; DENNIS BROCK; GEORGE LEWIS;             )    CIVIL ACTION FILE
KATHLEEN RANSDELL; LEWIS A. RANSDELL;               )    NO. 2003VS052187
GLORIA HUBER; DONALD F. HUBER;                       )
THERESA PERFETTO; SHANON KEENAN;                     )
ERIC KEENAN; TRACY FOINTNO;                          )
ARZELLA WHITE; MICHAEL MEAD; IRIS MEAD;             )
SYLVIA FITE; WILLIAM L. FITE;                        )
WILMA PARHAM; AMOROS ALEXANDER PARHAM;              )
CARITA MYRICK; LILLIAN IDLETT; EUGENE IDLETT; )
ANGELA WHITFIELD; MAX WHITFIELD;                    )
 KATHLEEN KNEZICH; DEBORAH JONES;                   )
SUSAN THURNHERR; LARRY THURNHERR;                   )
CHERYL BESEDICK; REBECCA BOYETTE;                    )
CYNTHIA EDWARDS;                                      )
SYLVIA BROWN; BRENDA WORLEY; JAMES WORLEY; )
ELAINE DAVIDSON; EDWARD DAVIDSON;                   )
PATRICIA GRANIERO; DONALD GRANIERO;                 )
GILLIAN PAWLICK; HELEN MOORE;                        )
MONIQUE MARCOUX; ROCK MARCOUX;                       )
SHIELA HAROLD; CHARLES HAROLD; LESA THOMAS;         )        )
GARY THOMAS;                                          )
LUTHER PHILLIP CARTER; KAREN MOSLEY CARTER; )
HELEN BLANQUE; JOHN BLANQUE; MICHELLE CHICK; )
JOHN LANDWEHR; DONNA LANDWEHR;                      )
BEVERLY DAVIS; JOEL ROSENBLATT;                     )
PAMELA TAYLOR; KATHY BARKER;      KEITH BARKER; )
GLADYS HACKNEY; LINDA WHITE; WANDA CARTER;  )
MARCEL CARTER; FLORENCE WILSON;                     )
RONALD WILSON; BARBARA STADLER;                     )
KENNETH STADLER; CAROL CANNAROZZO;                  )
VICTOR CANNAROZZO Jr.; ANGELA GUAGLIANO;            )
NORMA JEAN ROBERTS; EARL SCOTT;                     )
MARVELLE EDELIN; RHONDA TRACEY;                     )
FRANCIS CLARK; BARBARA HARTNETT;                    )
SALLY ROGALA; PATRICIA FULLER;                      )
JOANN ABRAM; MARY SUGGS;                            )
LEON SUGGS; TAMMY FRYMAN; RANDOLPH FRYMAN; )

MINNIE FOX; KIMBERLY GREEN; JAMES PASTONIK;   )
YVONNE RUTTERS; THOMAS RUTTERS;   )
DEBORAH GOOD; DONALD W. GOOD; ANETTE KELLY; )
MARILYN THOMPSON; ALLEN NESTOR; BLEN GARY;   )
and GENA WILSON   )
   )
      Plaintiffs,   )
   )
vs.   )
   )
WYETH, INC., f/k/a AMERICAN HOME   )
PRODUCTS CORPORATION;   )
WYETH PHARMACEUTICALS, INC f/k/a   )
WYETH-AYERST PHARMACEUTICALS,   )
INC., a Division of American Home Products   )
Corporation; INDEVUS   )
PHARMACEUTICALS, INC., f/k/a   )
INTERNEURON PHARMACEUTICALS, INC.;   )
MEDEVA PHARMACEUTICALS, INC.;   )
FISONS PHARMACEUTICALS; CELLTECH   )
PHARMACEUTICALS, INC.; GOLDLINE   )
LABORATORIES, INC.; ZENITH-GOLDLINE   )
PHARMACEUTICALS, INC.;   )
ROBERT L. SCOTT, a citizen of the State of   )
Georgia; JOHN A. MOLNAR, a citizen of the   )
State of Georgia; STEVEN KAISER a citizen of   )
the State of Georgia; and JOHN DOE NOS.   )
1 B5,   )
   )
      Defendants.   )
_____)

## AMENDED AND RECAST COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs, **RICHARD BROWN, MARY C. BROWN, SANDRA JANSEN,**

**LAMARA MORRIS, JAMES MORRIS, CHERYL CRADDOCK, CHRISTOPHER**

**CRADDOCK, JOSEPH BANIEWICZ, LINDA WILSON, WILLIAM WILSON, CHRISTINA**

**BURCH, NANCY BROCK, DENNIS BROCK, GEORGE LEWIS, KATHLEEN RANSDELL,**

**LEWIS A . RANDSDELL, GLORIA HUBER, DONALD F. HUBER, THERESA PERFETTO,**

SHANON KEENAN, ERIC KEENAN, TRACY FOINTINO, ARZELLA WHITE, MICHAEL MEAD, IRIS MEAD, SYLVIA FITE, WILLIAM L. FITE,  WILMA PARHAM, AMOROS ALEXANDER PARHAM, CARITA MYRICK, LILLIAN IDLETT, EUGENE IDLETT, ANGELA WHITFIELD, MAX WHITFIELD, KATHLEEN KNEZICH, DEBORAH JONES, SUSAN THURNHERR, LARRY THURNHERR, CHERYL BESEDICK, REBECCA BOYETTE, CYNTHIA EDWARDS, SYLVIA BROWN, BRENDA WORLEY, JAMES WORLEY, ELAINE DAVIDSON, EDWARD DAVIDSON, PATRICIA GRANIERO, DONALD GRANIERO, GILLIAN PAWLICK, HELEN MOORE, MONIQUE MARCOUX, ROCK MARCOUX, SHIELA HAROLD, CHARLES HAROLD, LESA THOMAS, GARY THOMAS, LUTHER PHILLIP CARTER, KAREN MOSLEY CARTER, HELEN BLANQUE, JOHN BLANQUE, MICHELLE CHICK, JOHN LANDWEHR, DONNA LANDWEHR, BEVERLY DAVIS, JOEL ROSENBLATT, PAMELA TAYLOR, KATHY BARKER, KEITH BARKER, GLADYS HACKNEY, LINDA WHITE, WANDA CARTER, MARCEL CARTER, FLORENCE WILSON, RONALD WILSON, BARBARA STADLER, KENNETH STADLER, CAROL CANNAROZZO, VICTOR CANNAROZZO, Jr., ANGELA GUAGLIANO, NORMA JEAN ROBERTS, EARL SCOTT, MARVELLE EDELIN, RHONDA TRACEY, FRANCIS CLARK, BARBARA HARTNETT, SALLY ROGALA, PATRICIA FULLER, JOANN ABRAM, MARY SUGGS, LEON SUGGS, TAMMY FRYMAN, RANDOLPH FRYMAN, MINNIE FOX, KIMBERLY GREEN, JAMES PASTONIK, YVONNE RUTTERS, THOMAS RUTTERS, DEBORAH GOOD, DONALD W. GOOD, ANETTE KELLY, MARILYN THOMPSON, ALLEN NESTOR, BLEN GARY, and

**GENA WILSON** in the matter above captioned and files this Amended and Recast Complaint against Defendants as follows:

## INTRODUCTION

1.

Plaintiff RICHARD BROWN is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation which required surgical intervention as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

2.

Plaintiff MARY C. BROWN is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Richard Brown.

3.

Plaintiff SANDRA JANSEN is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

4.

Plaintiff LAMARA MORRIS, is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

5.

Plaintiff JAMES MORRIS is a citizen and resident of the State of Maryland, and has at all times relevant hereto been married to Plaintiff Lamara Morris.

- 4 -

6.

Plaintiff CHERYL CRADDOCK is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion. consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

7.

Plaintiff CHRISTOPHER CRADDOCK is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Cheryl Craddock.

8.

Plaintiff JOSEPH BANIEWICZ is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

9.

Plaintiff LINDA WILSON is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

10.

Plaintiff WILLIAM WILSON is a citizen and resident of the State of Maryland, and has at all time relevant hereto been married to Plaintiff Linda Wilson.

11.

Plaintiff CHRISTINA BURCH is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

- 5 -

12.

Plaintiff NANCY BROCK is a citizen and resident of the State of North Carolina suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

13.

Plaintiff DENNIS BROCK is a citizen and resident of the State of North Carolina, and has at all times relevant hereto been married to Plaintiff Nancy I. Brock.

14.

Plaintiff GEORGE LEWIS is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

15.

Plaintiff KATHLEEN RANSDELL is a citizen and resident of the State of Tennessee suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

16.

Plaintiff LEWIS A. RANSDELL is a citizen and resident of the State of Tennessee, and has at all times relevant hereto been married to Plaintiff Kathleen J. Ransdell.

17.

Plaintiff GLORIA HUBER is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

18.

Plaintiff DONALD F. HUBER is a citizen and resident of the State of Louisiana, and has at all times relevant hereto been married to Plaintiff Gloria Huber.

19.

Plaintiff THEREA PERFETTO is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

20.

Plaintiff SHANON KEENAN is a citizen and resident of the State of Indiana who is suffering from heart valve damage and/or valvular regurgitation which required surgical intervention as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

21.

Plaintiff ERIC KEENAN is a citizen and resident of the State of Indiana, and has at all times relevant hereto been married to Plaintiff Shanon Keenan.

22.

Plaintiff TRACY FOINTINO is a citizen and resident of the State of Georgia who is suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

23

Plaintiff ARZELLA WHITE is a citizen and resident of the Commonwealth of Kentucky suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion,

consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

24.

Plaintiff MICHAEL MEAD is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

25.

Plaintiff IRIS MEAD is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Michael Mead.

26.

Plaintiff SYLVIA FITE is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

27.

Plaintiff WILLIAM L. FITE is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Sylvia C. Fite.

28.

Plaintiff WILMA PARHAM is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

29.

Plaintiff AMOROS ALEXANDER PARHAM is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Wilma J. Parham.

30.

Plaintiff CARITA MYRICK is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

31.

Plaintiff LILLIAN IDLETT is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

32.

Plaintiff EUGENE IDLETT is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Lillian Idlett.

33.

Plaintiff ANGELA WHITFIELD is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

34.

Plaintiff MAX WHITFIELD is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Angela Whitfield.

35.

Plaintiff KATHLEEN KNEZICH is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

36.

Plaintiff DEBORAH JONES is a citizen and resident of the State of Ohio suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

37.

Plaintiff SUSAN THURNHERR is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

38.

Plaintiff LARRY THURNHERR is a citizen and resident of the State of New York, and has at all times relevant hereto been married to Plaintiff Susan Thurnherr.

39.

Plaintiff CHERYL BESEDICK is a citizen and resident of the State of Pennsylvania who is suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

40.

Plaintiff REBECCA BOYETTE is a citizen and resident of the State of Pennsylvania who is suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

- 10 -

41.

Plaintiff CYNTHIA EDWARDS is a citizen and resident of the District of Columbia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

42.

Plaintiff SYLVIA BROWN is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

43.

Plaintiff BRENDA WORLEY is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

44.

Plaintiff JAMES WORLEY is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Brenda Worley.

45.

Plaintiff ELAINE DAVIDSON is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

46.

Plaintiff EDWARD DAVIDSON is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Elaine Davidson.

47.

Plaintiff PATRICIA GRANIERO is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

48.

Plaintiff DONALD GRANIERO is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Patricia Graniero.

49.

Plaintiff GILLIAN PAWLICK is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

50.

Plaintiff HELEN MOORE is a citizen and resident of the District of Columbia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

51.

Plaintiff MONIQUE MARCOUX is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

52.

Plaintiff ROCK MARCOUX is a citizen and resident of the State of Maryland, and has at all times relevant hereto been married to Plaintiff Monique Marcoux.

- 12 -

53.

Plaintiff SHEILA HAROLD is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

54.

Plaintiff CHARLES HAROLD is a citizen and resident of the State of Maryland, and has at all times relevant hereto been married to Plaintiff Sheila Harold.

55.

Plaintiff LESA THOMAS is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

56.

Plaintiff GARY THOMAS is a citizen and resident of the State of Louisiana, and has at all times relevant hereto been married to Plaintiff Lesa Thomas.

57.

Plaintiff LUTHER PHILLIP CARTER is a citizen and resident of the State of North Carolina suffering from heart valve damage and/or valvular regurgitation as a result of his ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

58.

Plaintiff KAREN MOSLEY CARTER is a citizen and resident of the State of North Carolina, and has at all times relevant hereto been married to Plaintiff Phillip Luther Carter.

59.

- 13 -

Plaintiff HELEN BLANQUE is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

60.

Plaintiff JOHN BLANQUE is a citizen and resident of the State of Louisiana, and has at all times relevant hereto been married to Plaintiff Helen Blanque.

61.

Plaintiff MICHELLE CHICK is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

62.

Plaintiff JOHN LANDWEHR is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

63.

Plaintiff DONNA LANDWEHR is a citizen and resident of the State of Geogia, and has at all times relevant hereto been married to Plaintiff John Landwehr.

64.

Plaintiff BEVERLY DAVIS is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

65.

Plaintiff JOSEPH ROSENBLATT is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

66.

Plaintiff PAMELA TAYLOR is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

67.

Plaintiff KATHY BARKER is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

68.

Plaintiff KEITH BARKER is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Kathy Barker.

69.

Plaintiff GLADYS HACKNEY is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

70.

Plaintiff LINDA WHITE is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

- 15 -

71.

Plaintiff WANDA CARTER is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

72.

Plaintiff MARCEL CARTER is a citizen and resident of the State of Georgia, and has at all times relevant hereto been married to Plaintiff Wanda Carter.

73.

Plaintiff FLORENCE WILSON is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

74.

Plaintiff RONALD WILSON is a citizen and resident of the State of New York, and has at all times relevant hereto been married to Plaintiff Florence Wilson.

75.

Plaintiff BARBARA STADLER is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

76.

Plaintiff KENNETH STADLER is a citizen and resident of the State of New York, and has at all times relevant hereto been married to Plaintiff Barbara Stadler.

77.

Plaintiff CAROL CANNAROZZO is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

78.

Plaintiff VICTOR CANNAROZZO Jr. is a citizen and resident of the State of New York, and has at all times relevant hereto been married to Plaintiff Carol Cannarozzo.

79.

Plaintiff ANGELA GUAGLIANO is a citizen and resident of the State of New York suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

80.

Plaintiff NORMA JEAN ROBERTS is a citizen and resident of the State of Tennessee suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

81.

Plaintiff EARL SCOTT is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

82.

Plaintiff MARVELLE EDELIN is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

83.

Plaintiff RHONDA TRACEY is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

84.

Plaintiff FRANCIS CLARK is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

85.

Plaintiff BARBARA HARTNETT is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

86.

Plaintiff SALLY ROGALA is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

87.

Plaintiff PATRICIA FULLER is a citizen and resident of the State of Georgia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

88.

- 18 -

Plaintiff JOANN ABRAM is a citizen and resident of the State of Louisiana suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

89.

Plaintiff MARY SUGGS is a citizen and resident of the State of North Carolina suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

90.

Plaintiff LEON SUGGS is a citizen and resident of the State of North Carolina, and has at all times relevant hereto been married to Plaintiff Mary Suggs.

91.

Plaintiff TAMMY FRYMAN is a citizen and resident of the Commonwealth of Kentucky suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

92.

Plaintiff RANDOLPH FRYMAN is a citizen and resident of the Commonwealth of Kentucky, and has at all times relevant hereto been married to Plaintiff Tammy L. Fryman.

93.

Plaintiff MINNIE FOX is a citizen and resident of the State of Tennessee suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

94.

Plaintiff KIMBERLY GREEN is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

95.

Plaintiff JAMES PASTONIK is a citizen and resident of the Commonwealth of Virginia, and has at all times relevant hereto been married to Plaintiff Kim Green.

96.

Plaintiff YVONNE RUTTERS is a citizen and resident of the State of West Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

97.

Plaintiff THOMAS RUTTERS is a citizen and resident of the State of West Virginia, and has at all times relevant hereto been married to Plaintiff Yvonne Rutters.

98.

Plaintiff DEBORAH GOOD is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

99.

Plaintiff DONALD W. GOOD is a citizen and resident of the State of Maryland, and has at all times relevant hereto been married to Plaintiff Deborah L. Good.

100.

- 20 -

Plaintiff ANNETTE KELLY is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

101.

Plaintiff MARILYN THOMPSON is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

102.

Plaintiff ALLEN NESTOR is a citizen and resident of the Commonwealth of Virginia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

103.

Plaintiff BLEN GARY is a citizen and resident of the District of Columbia suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

104.

Plaintiff GENA WILSON is a citizen and resident of the State of Maryland suffering from heart valve damage and/or valvular regurgitation as a result of her ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine.

105.

Each named Plaintiff, by virtue of certain defined damage to their heart incurred as a result of their ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™),

- 21 -

and/or phentermine, is properly classified as a <u>Brown</u> class member (<u>Brown v. American Home Products, et al.</u>, U.S.D.C. E.D.Pa. Civil Action File No. 99-20593) holding claims which may be properly opted out of the Nationwide Class Action Settlement Agreement With American Home Products Corporation (hereinafter "National Settlement") under the terms and conditions of Pre-trial Order No. 1415 entered in Multi District Litigation Proceeding 1203, pending in the United States District Court for the Eastern District of Pennsylvania.

106.

The injuries that are the subject of this Complaint were first diagnosed by echocardiograms performed subsequent to September 30, 1999.

107.

Each Plaintiff suffers from injury to their mitral and/or aortic valve that has been established as being FDA Positive or greater by a board certified cardiologist.

108.

Each named Plaintiff timely and properly filed an Intermediate and/or Back-End opt-out form with the Claims Administrator in compliance with the terms and conditions of the National Settlement.

109.

By virtue of the filing of an Intermediate and/or Back-End opt-opt out, each named Plaintiff is entitled to pursue the present action against the "AHP/WYETH Defendants" as defined herein below.

110.

- 22 -

This action has been brought by each named Plaintiff for the purpose of recovering damages for the personal injuries and damages they sustained as the result of their ingestion, consumption and use of fenfluramine (Pondimin®), dexfenfluramine (Redux™), and/or phentermine. Defendants are liable to Plaintiffs for their individual and collective acts, omissions, and involvement in developing, testing, evaluating, securing government approval for, manufacturing, distributing, advertising, conspiring to promote, monitoring and/or selling said drug compounds despite Defendants' knowledge of the unreasonable risk of death and bodily injury associated with the use of said drugs which was knowingly and purposely concealed by Defendants from the Plaintiffs, the Plaintiffs' doctors, and others.

111.

Each named Plaintiff seeks to recover only those damages permitted under the terms and conditions of the National Settlement in relation to the "AHP/WYETH Defendants."

112.

Each named Plaintiff seeks to recover all damages permitted under law against all other Defendants in this action (i.e. all Defendants other than the "AHP/WYETH Defendants").

113.

The injuries sustained by Plaintiffs were the result of the acts and omissions of Defendants committed both inside and outside the State of Georgia.

114.

As a direct and proximate result of Defendants' purposeful concealment of the dangers associated with the use of fenfluramine, dexfenfluramine and phentermine, Plaintiffs have only recently discovered and learned that that they were injured and damaged by Defendants' misconduct.

- 23 -

Plaintiffs were prevented from discovering, and could not have discovered, their injuries and damages earlier because of Defendants' fraudulent misrepresentations, conspiracy and concealment of facts and information relating to the subject drugs as more specifically alleged below.

115.

The Honorable Louis Bechtle, formerly of the District Court for the Eastern District of Pennsylvania made the following findings in his Order approving the Nationwide Class Action Settlement with American Home Products in MDL Proceeding 1203 (In Re: Diet Drugs):

"The instant class has a great deal of cohesion in that the class was basically exposed to one substance, manufactured by one defendant over a relatively short period of time and suffers or is at risk of suffering one particular type of injury." (PTO 1415 at p. 46)

"Each class member's claims allege a common defect in the diet drugs and a common course of conduct by AHP with regard to developing and marketing those diet drugs." (PTO 1415 at p. 43)

"[T]he court finds that common issues that pre-existed this settlement - - involving a common product, defendant, and course of conduct - - when considered in light of the proposed settlement, predominate over any individual issues between class members." (PTO 1415 at p. 43)

"Although there are some individual differences among class members, the common class-wide focus of AHP's knowledge and conduct predominate such that judicial efficiency will be improved through the class mechanism as opposed to relitigating the

- 24 -

same issues in a series of individual cases…the class here involves a single defendant

with essentially a single diet drug product." (PTO 1415 at p. 42)

See Pretrial Order 1415 (MDL Proceeding 1203), 2000 WL 1222042 (E.D. Pa. August 8, 2000)

116.

The Honorable Harvey Bartle of the District Court for the Eastern District of Pennsylvania

made the following findings in his Order approving the joinder of multiple intermediate and back-end

opt out plaintiffs in single complaints in MDL Proceeding 1203 (In Re: Diet Drugs):

"We do not think that the joinder of multiple intermediate and back-end opt-out

plaintiffs adversely affects the intentions or goals of the parties to the Settlement

Agreement. Each such plaintiff in a joint trial is limited to compensatory damages,

and each must prove his or her own individual claim. We are confident that in these

circumstances, the appropriate limiting instructions to the jury will protect Wyeth

from the dangers related to res judicata, collateral estoppel, issue preclusion and claim

preclusion.

In addition, we cannot ignore the interests of judicial economy which are at the heart

of procedural rules allowing multiple joinder. They generally have the effect of saving

the courts time and reducing the parties' costs. They also allow cases, particularly in

overburdened jurisdictions, to move to trial more quickly than if a blanket rule existed

requiring each person's case to be instituted and tried separately."

See Pretrial Order 2627 (MDL 1203) at p. 3 (A copy of PTO 2627 is attached hereto as

Exhibit "A").

117.

The Honorable Penny Brown Reynolds of the State Court of Fulton County, Georgia recently held not only that the claims of two (2) individuals alleging injuries as a result of their ingestion of diet drugs were properly joined under O.C.G.A. § 9-11-20, but that said claims were properly joined for trial as well.  (See November 27, 2002 Order attached hereto as Exhibit "B").

118.

On December 6, 2002, the Honorable Penny Brown Reynolds of the State Court of Fulton County, Georgia denied Defendants' Motion for Reconsideration of her November 27, 2002 Order (Exhibit "B" attached hereto), and denied Defendant's request for a Certificate of Immediate Review.  (See December 6, 2002 Order attached hereto as Exhibit "C").

119.

- 26 -

In <u>Alexander v. Fulton County</u>, 207 F.3d 1303 (11th Cir. 2000), the Eleventh Circuit Court of

Appeals discussed Federal Rule of Civil Procedure 20, the permissive joinder rule on which O.C.G.A.

§ 9-11-20 is based.  In <u>Alexander</u>, eighteen plaintiffs sued a defendant for discriminatory practices.

Following discovery, the defendants moved to sever the plaintiffs' claims on the grounds that the

multiple claims would confuse the jury and unfairly prejudice the defendant.  The district court denied

the motion.  The Eleventh Circuit affirmed on appeal, noting that "the central purpose of Rule 20 is to

promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary

lawsuits."  <u>Id</u>. at 1323.  The Court held that, even though each plaintiff had a different claim and

sought different relief, all of the plaintiffs' claims were "based on the same series of discriminatory

transactions by the same decision-maker in the same department during the same short time frame."

<u>Id</u>. at 1324.

120.

Plaintiffs claims are properly joined in this action under O.C.G.A. § 9-11-20, as they have

asserted rights to relief in respect of or arising out of the same transaction, occurrence, or series of

transactions or occurrences, and have alleged that multiple questions of law and fact common to all of

them will arise in this action.  Further, judgment may be given for one of more of the plaintiffs

according to their respective rights to relief and against one or more of the defendant according to

their respective liabilities.

## **DEFENDANTS**

121.

Defendant, WYETH, INC. (formerly known as AMERICAN HOME PRODUCTS CORPORATION)

(hereinafter "AHP/WYETH" or "AHP/WYETH Defendant," or "Manufacturer Defendant"), has its

principal place of business at 5 Giralda Farms, Madison, New Jersey.  AHP/WYETH is incorporated under the laws of the State of Delaware. At all times relevant hereto, AHP/WYETH (itself and as a successor to A. H. Robins Company) was and has been in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceutical drugs fenfluramine and/or dexfenfluramine.  At all times relevant to this action, AHP/WYETH developed, manufactured, promoted, marketed, distributed and/or sold the aforementioned drugs through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause.

122.

On March 11, 2002 AMERICAN HOME PRODUCTS CORPORATION changed its name to "WYETH" or "WYETH, INC."

123.

Defendant AHP/WYETH may be served with a copy of summons and complaint through its registered agent for service of process, Prentice-Hall Corp System, Inc. at 4845 Jimmy Carter Blvd., Norcross, Gwinnett County, State of Georgia, 30093.

124.

Defendant AHP/WYETH is subject to the jurisdiction and venue of this court.

125.

Defendant, WYETH PHARMACEUTICALS, INC., a division of Wyeth, Inc. (formerly known as Wyeth-Ayerst Pharmaceuticals, Inc.) (hereinafter "WYETH PHARMACEUTICALS" or "AHP/WYETH Defendant" or "Manufacturer Defendant"), has its principal place of business at 555 Lancaster Avenue, St. Davids, Pennsylvania 19087.  To the extent that WYETH PHARMACEUTICALS does not maintain its principal place of business at said address, it maintains its principal place of business at

500 Arcola Road, Collegeville, Pennsylvania 19426.   WYETH PHARMACEUTICALS is incorporated

under the laws of the State of Delaware. At all times relevant hereto, WYETH PHARMACEUTICALS was

in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceutical

drugs fenfluramine and /or dexfenfluramine.    At all times relevant to this action WYETH

PHARMACEUTICALS developed, manufactured, promoted, marketed, distributed and/or sold the

aforementioned drugs through interstate commerce and in the State of Georgia, and otherwise did

business in Georgia related to this cause.

126.

On March 11, 2002 WYETH-AYERST PHARMACEUTICALS, INC. changed its name to "WYETH

PHARMACUETICALS."

127.

Defendant WYETH PHARMACEUTICALS may be served with a copy of summons and complaint

through the Georgia Secretary of State and/or at its principal place of business, 555 Lancaster

Avenue, St. Davids, Pennsylvania 19087.

128.

Defendant WYETH PHARMACEUTICALS is subject to the jurisdiction and venue of this court.

129.

Defendant, INDEVUS PHARMACEUTICALS, INC. (formerly known as INTERNEURON

PHARMACEUTICALS, INC.) (hereinafter "INTERNEURON" or "Manufacturer Defendant"), has

its principal place of business at One Ledgemont Center, 99 Hayden Avenue, Lexington,

Massachusetts. Defendant Interneuron is incorporated under the laws of the State of Delaware. At

all times relevant hereto, Interneuron was engaged in the business of manufacturing, distributing,

- 29 -

promoting, marketing, and/or selling the pharmaceutical dexfenfluramine. At all times relevant hereto, Interneuron developed, manufactured, promoted, marketed, and/or sold its products through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause. Defendant Interneuron is not registered with the Georgia Secretary of State as an entity properly qualified to transact business within the State.

130.

On April 2, 2002 INTERNEURON PHARMACEUTICALS, INC. changed its name to "INDEVUS PHARMACEUTICALS."

131.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant Interneuron.

132.

Defendant Interneuron may be served with a copy of summons and complaint, through the Georgia Secretary of State and/or at its principal place of business, One Ledgemont Center, Suite 200, 99 Hayden Avenue, Lexington, Massachusetts, 02173.

133.

Defendant Interneuron is subject to the jurisdiction and venue of this court.

134.

Defendant, MEDEVA PHARMACEUTICALS, INC. (hereinafter "MEDEVA" or "Manufacturer Defendant"), is a corporation previously having its principal place of business at 14801 Sovereign Road, Ft. Worth, Texas. Defendant MEDEVA is incorporated under the laws of the State of Texas. Prior to the filing of the present action, MEDEVA entered into a series of mergers,

- 30 -

including a merger with CELLTECH PHARMACEUTICALS, INC. CELLTECH PHARMACEUTICALS, INC. currently serves as successor in interest MEDEVA. At all times relevant hereto, MEDEVA was engaged in the business of manufacturing, distributing, promoting, marketing, and/or selling the pharmaceutical phentermine. At all times relevant hereto, MEDEVA developed, manufactured, promoted, marketed, and/or sold its products through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause.

135.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant MEDEVA.

136.

Defendant MEDEVA may be served with a copy of summons and complaint by service upon its successor in interest, CELLTECH PHARMACEUTICALS, INC. CELLTECH PHARMACEUTICALS, INC.'s registered agent for service of process is C.T. Corporation System, 1201 Peachtree Street, Atlanta, Fulton County, State of Georgia, 30361.

137.

Defendant MEDEVA is subject to the jurisdiction and venue of this court.

138.

Defendant, FISONS CORPORATION (hereinafter "FISONS" or "Manufacturer Defendant"), has its principal place of business at 755 Jefferson Road, Rochester, NY. Defendant FISONS is incorporated under the laws of the State of Delaware. At all times relevant hereto, FISONS manufactured, marketed, promoted, distributed and/or sold the pharmaceutical phentermine in

- 31 -

interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause.

<div align="center">139.</div>

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant FISONS.

<div align="center">140.</div>

Defendant FISONS may be served with a copy of summons and complaint by service upon its registered agent for service of process C.T. Corporation System, 101 Federal Street, Boston, Massachusetts 02110.

<div align="center">141.</div>

Defendant FISONS is subject to the jurisdiction and venue of this court.

<div align="center">142</div>

Defendant, CELLTECH PHARMACEUTICALS, INC. (hereinafter "CELLTECH" or "Manufacturer Defendant"), has its principal place of business at 755 Jefferson Road, Rochester, NY 14603. Defendant CELLTECH is incorporated under the laws of the State of Delaware. Prior to the filing of the present action, CELLTECH entered into a series of mergers and acquisitions, as a result of which, it now serves as the successor in interest to Defendant MEDEVA. Defendant CELLTECH is liable to Plaintiffs for the obligations and liabilities of Defendant MEDEVA as their successor in interest.

<div align="center">143.</div>

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant CELLTECH.

<div align="center">- 32 -</div>

144.

Defendant CELLTECH may be served with a copy of summons and complaint through its registered agent for service of process, C.T. Corporation System at 1201 Peachtree Street, Atlanta, Fulton County, State of Georgia, 30361.

145.

Defendant CELLTECH is subject to the jurisdiction and venue of this court.

146.

Defendant, GOLDLINE LABORATORIES, INC. (hereinafter "GOLDLINE LABS"), maintains its principal place of business at 4400 Biscayne Boulevard, Miami, Florida 33137. Defendant GOLDLINE LABS is incorporated under the laws of the State of Florida. At all times material hereto, Defendant GOLDLINE LABS was in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs phentermine hydrochloride, fenfluramine hydrochloride and/or dexfenfluramine hydrochloride through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause. Defendant GOLDLINE LABS is not registered with the Georgia Secretary of State as an entity properly qualified to transact business within the State.

147.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant GOLDLINE LABS.

148.

Defendant GOLDLINE LABS may be served with a copy of summons and complaint through the Georgia Secretary of State and/or at its principal place of business located at 4400 Biscayne Boulevard, Miami, Florida 33137.

149.

Defendant GOLDLINE LABS is subject to the jurisdiction and venue of this court.

150.

Defendant, ZENITH GOLDLINE PHARMACEUTICALS, INC. (hereinafter "Zenith"), maintains its principal place of business at 4400 Biscayne Boulevard, Miami, Florida 33137. Defendant Zenith is incorporated under the laws of the State of Florida. At all times material hereto, Defendant Zenith was in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs phentermine hydrochloride, fenfluramine hydrochloride and/or dexfenfluramine hydrochloride through interstate commerce and in the State of Georgia, and otherwise did business in Georgia related to this cause. Defendant Zenith is not registered with the Georgia Secretary of State as an entity properly qualified to transact business within the State.

151.

The National Settlement does not relate to, nor place any limitations upon, the claims asserted by Plaintiffs against Defendant Zenith.

152.

Defendant Zenith may be served with a copy of summons and complaint through the Georgia Secretary of State and/or at its principal place of business located at 4400 Biscayne Boulevard, Miami, Florida 33137.

153.

- 34 -

Defendant Zenith is subject to the jurisdiction and venue of this court.

154.

Defendant ROBERT L. SCOTT (hereinafter Defendant Scott or "AHP/WYETH Defendant" is a citizen of the State of Georgia residing at 660 St. Regis Lane, Alpharetta, Fulton County, State of Georgia. At all times relevant to the allegations set forth under this Complaint Defendant Scott was employed by Defendant Wyeth-Ayerst, its predecessor in interest, Lederle, and/or Defendant AHP/WYETH.

155.

Defendant Scott assisted Wyeth-Ayerst, Lederle and AHP/WYETH, as well as the other Defendants, in the promotion, marketing, and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine throughout portions of the United States, including but not limited to, the state(s) in which Plaintiffs obtained or ingested the subject drug products.

156.

Defendant Scott affirmatively undertook to provide materially false and misleading information relating to the safety and efficacy of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine to various state medical boards, state pharmacy boards, and state regulatory entities for the specific purpose of increasing the availability and sale of the subject drug products to Plaintiffs and the general public by lobbying for the removal of restrictions on the consumption and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine in the subject states.

157.

Defendant Scott, in his capacity as State Government Affairs Manager for various defendants, was responsible for obtaining of government approval for the pharmaceutical drugs phentermine

- 35 -

hydrochloride, fenfluramine hydrochloride and/or dexfenfluramine hydrochloride so as to permit their distribution, sale and consumption in the United States of America.

158.

Defendant Scott was also involved in a conspiracy with the named Defendants to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

159.

Defendant Scott may be served with a copy of summons and complaint at his residence located at 660 St. Regis Lane, Alpharetta, Fulton County, State of Georgia 30022.

160.

Defendant Scott is subject to the jurisdiction and venue of this court.

161.

Defendant JOHN ("JACK") A. MOLNAR (hereinafter "Defendant Molnar" or "AHP/WYETH Defendant") is a citizen of the State of Georgia residing at 740 Winston Drive, Lawrenceville, Gwinnett County, State of Georgia.  At all times relevant to the allegations set forth under this Complaint, Defendant Molnar was employed by Defendant Wyeth-Ayerst, its predecessor in interest, Lederle, and/or Defendant AHP/WYETH.

162.

Defendant Molnar assisted Wyeth-Ayerst, Lederle and AHP/WYETH, as well as the other Defendants, in the promotion, marketing, and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine throughout portions of the United States, including but not limited to, the state(s) in which Plaintiffs obtained or ingested the subject drug products.

- 36 -

163.

Defendant Molnar affirmatively undertook to provide materially false and misleading information relating to the safety and efficacy of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine to various state medical boards, state pharmacy boards, and state regulatory entities for the specific purpose of increasing the availability and sale of the subject drug products to Plaintiffs and the general public by lobbying for the removal of restrictions on the consumption and sale of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine in the subject states.

164.

Prior to May 20, 1997, all Tennessee physicians (including Plaintiff KATHLEEN RANSDELL, NORMA JEAN ROBERTS, and MINNIE FOX's prescribing physicians) were precluded by law from prescribing Pondimin, Redux, and phentermine to their patients.

165.

On May 20, 1997, Tennessee State Senate Bill No. 1343, which lifted the ban on prescrib ing of Pondimin, Redux, and phentermine by Tennessee physicians (including KATHLEEN RANSDELL, NORMA JEAN ROBERTS, and MINNIE FOX's prescribing physicians), was signed into law by Tennessee Governor Don Sunquist.

166.

In addition to lifting the ban on prescribing of Pondimin, Redux, and phentermine by Tennessee physicians, Tennessee State Senate Bill No. 1343 also effectively prevented the Tennessee Board of Medical Examiners from promulgating rules to limit physicians' (including KATHLEEN RANSDELL, NORMA JEAN ROBERTS, and MINNIE FOX's prescribing physicians) abilities to

prescribe Pondimin, Redux, and phentermine, except where the patient being treated for obesity was under eighteen (18) years of age.

167.

Prior to the passage of Tennessee State Senate Bill No. 1343, Defendant Molnar petitioned the Tennessee Board of Medical Examiners and the Tennessee legislature to give Tennessee physicians (including KATHLEEN RANSDELL, NORMA JEAN ROBERTS, and MINNIE FOX's prescribing physicians) the ability to prescribe Pondimin, Redux, and phentermine.

168.

Defendant Molnar's efforts to have the ban on prescribing Pondimin, Redux, and phentermine in Tennessee lifted were successful with the enactment of Tennessee State Senate Bill 1343.

169.

According to a May 28, 1997 Wyeth memorandum, the passage of the Tennessee State Senate Bill lifting the ban on prescribing of Pondimin, Redux, and phentermine by Tennessee physicians (including KATHLEEN RANSDELL, NORMA JEAN ROBERTS, and MINNIE FOX's prescribing physicians), was possible only through the excellent work and efforts of Defendant Molnar and one other individual, with assistance from Wyeth's Tennessee sales force.

170.

The passage of Tennessee State Senate Bill No. 1343 was the direct result of material misrepresentations made by Defendant Molar to Tennessee legislators, physicians, and citizens relating to the safety and efficacy of Pondimin, Redux, and phentermine.

171.

- 38 -

But for the passage of Tennessee State Senate Bill No. 1343, Plaintiffs KATHLEEN RANSDELL, NORMA JEAN ROBERTS, and MINNIE FOX, and possibly other Plaintiffs in this action, would never have been prescribed Pondimin, Redux, and/or phentermine.

<div align="center">172.</div>

Defendant Molnar was further responsible for obtaining governmental approval for the pharmaceutical drugs phentermine hydrochloride, fenfluramine hydrochloride (Pondimin) and/or dexfenfluramine hydrochloride (Redux) so as to permit their distribution, sale and consumption in the United States of America.

<div align="center">173.</div>

Defendant Molnar was also involved in a conspiracy with the named Defendants to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

<div align="center">174.</div>

Defendant Molnar may be served with a copy of summons and complaint at his residence located at 740 Winston Drive, Lawrenceville, Gwinnett County, State of Georgia 30044.

<div align="center">175.</div>

Defendant Molnar is subject to the jurisdiction and venue of this court.

<div align="center">176.</div>

Defendant Steven Kaiser (hereinafter "Defendant Kaiser", "Sales Director Defendant", or "AHP/WYETH Defendant") is a citizen of the State of Georgia residing at 595 Danas Ridge Drive, Roswell, Fulton County, State of Georgia.  At all times material hereto, this Defendant was in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs

<div align="center">- 39 -</div>

phentermine, fenfluramine and/or dexfenfluramine in the States of Georgia, Tennessee, and Florida, as well as other states in the southeastern United States. This Defendant was responsible for and participated in the dissemination of false and misleading information, including but not limited to safety and associated risks, regarding the pharmaceutical drugs phentermine, fenfluramine and/or dexfenfluramine to physicians in the States of Georgia, Tennessee, and Florida, as well as other states in the southeastern United States, including the physician(s) of Plaintiffs RICHARD BROWN, CHERYL CRADDOCK, GEORGE LEWIS, KATHLEEN RANSDELL, TRACY FOINTINO, MICHAEL MEAD, SYLVIA FITE, WILMA PARHAM, CARITA MYRICK, LILLIAN IDLETT, ANGELA WHITFIELD, SYLVIA BROWN, BRENDA WORLEY, ELAINE DAVIDSON, PATRICIA GRANIERO, JOHN LANDWEHR, BEVERLY DAVIS, PAMELA TAYLOR, KATHY BARKER, GLADYS HACKNEY, LINDA WHITE, WANDA CARTER, NORMA JEAN ROBERTS, PATRICIA FULLER, and MINNIE FOX. Said Plaintiffs' physician(s) relied upon this Defendant's false and misleading representations in prescribing phentermine, fenfluramine and/or dexfenfluramine to each Plaintiff, as well as other patients. This Defendant was also involved in a conspiracy to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

177.

Defendant Kaiser was also involved in a conspiracy to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to Plaintiffs.

178.

Defendant Steven Kaiser may be served with a copy of summons and complaint at 595 Danas Ridge Drive, Roswell, Fulton County, State of Georgia 30075.

179

Defendant Kaiser is subject to the jurisdiction and venue of this court.

180

Defendants JOHN DOE NOS. 1-5 are five separate persons, firms and/or corporations, who are believed to be citizens of the State of Georgia whose identities are otherwise unknown at this time. At all times material hereto, said Defendants were in the business of promoting, marketing, developing, selling and/or distributing the pharmaceutical drugs phentermine, fenfluramine and/or dexfenfluramine. The John Doe Defendants were also involved in a conspiracy to conceal certain information relating to the dangers associated with the subject drug products from the consuming public, including but not limited to, Plaintiffs.

181

Once the identities and whereabouts of each John Doe Defendant is established, said Defendants will be served with a copy of summons and complaint as provided by law.

182

The John Doe Defendants are subject to the jurisdiction and venue of this court.

## **GENERAL ALLEGATIONS**

183

The drugs, fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine were widely sold, distributed, promoted and advertised by the named Defendants, and various fictitious party Defendants, as effective weight control products. Defendants sold and distributed the subject drugs

- 41 -

in Georgia as well as other states and placed said drugs into the stream of commerce knowing that they would enter the state(s) in which Plaintiffs resided and be consumed therein.

184

Fenfluramine was one of the drugs prescribed in combination and promoted and referred to as "fen/phen." The AHP/WYETH Defendants marketed fenfluramine under the trade name, Pondimin. In doing so, the AHP/WYETH Defendants actively encouraged, and/or failed to effectively discourage, the combined use of fenfluramine because they knew that the combined use would increase sales of fenfluramine.

185

The named Defendants, as well as the fictitious party Defendants, directly or indirectly, made, created, manufactured, assembled, designed, sterilized, tested, evaluated, labeled, supplied, packaged, marketed, advertised, warranted, distributed and/or sold the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine. These same Defendants assisted in, and had control over, the design, assembly, packaging, labeling, marketing, advertising, manufacturing distribution and sale of the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine.

186

At all times material hereto, all Defendants, including the fictitious party Defendants, either knew or should have known that the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine had been related to and associated with severe  and life threatening complications.

187

In 1965, the diet drug Aminorex was introduced in Europe.  Aminorex was touted as a wonder weight loss drug that worked by increasing brain serotonin and inhibiting reuptake of

serotonin.  However, by 1967 evidence began to surface that the ingestion of Aminorex was associated with pulmonary hypertension.  Over the next six years, an Aminorex epidemic raged in Europe.  There was a ten-fold increase in primary pulmonary hypertension cases.  Half of the patients died within ten years and the rest of the patients suffered significant oxygen deprivation and are debilitated for the remainder of their lives.  Aminorex was removed from the European market in 1972.  The AHP/WYETH Defendants knew, or should have known, of the European experience with Aminorex and how it would relate to AHP/WYETH's drugs Pondimin and Redux three (3) decades later.

188

In 1973, Pondimin was introduced into the United States market.  Pondimin is a fenfluramine drug and is in the same family of drugs as Aminorex, and is very similar to Aminorex.  Pondimin was touted as a wonder weight loss drug that worked by increasing brain serotonin and inhibiting reuptake of serotonin.  However, because the drug when used alone made users lethargic and tired, sales of Pondimin languished.

189

In the year 1990, the Food and Drug Administration (FDA) approved fenfluramine for use as a weight reduction drug for the short-term medical management of obesity.  Since that time, fenfluramine has been increasingly prescribed and used in combination with the drug phentermine to maximize weight loss.  This combination is commonly known as "fen-phen."

190

The AHP/WYETH Defendants actively encouraged, and/or failed to effectively discourage, the combined use of fenfluramine and phentermine because they knew that the combined use would increase sales of fenfluramine.

191

The "phen" portion of "fen-phen" consists of phentermine, an amphetamine which helps the body burn calories faster and which serves to counteract the drowsiness caused by the "fen" portion of the dosage consisting of fenfluramine, a drug which affected the serotonin levels in the brain. Despite the fact that the concomitant use of fenfluramine and phentermine was never approved by the FDA, the subject drugs were widely prescribed for use in combination with each other and/or with dexfenfluramine in place of fenfluramine, as promoters of weight loss.

192

Dexfenfluramine is the *d*-isomer of fenfluramine, containing essentially the same active ingredient as fenfluramine. The AHP/WYETH Defendants marketed dexfenfluramine under the trade name Redux.

193

The AHP/WYETH Defendants have known the serious side effects of fenfluramine and/or dexfenfluramine for a substantial period of time. These side effects were known or should have been known to all Defendants at the time that they marketed the drugs to the public based on, among other things, medical evidence of dangerous and potentially fatal side effects from the use of the drugs in Europe and elsewhere, as detailed below. Defendants did not, however, conduct adequate testing to establish the safety of the drugs before marketing them. Rather, the Defendants aggressively marketed the drugs and promoted their use, both individually and in combination with other drugs,

while downplaying evidence of the serious and potentially fatal side effects that consumers of these drugs could face.

194

Defendants undertook a willful wanton and reckless course of action and marketing strategy which included advertising and promotional campaigns to aggressively promote and sell the subject drugs by falsely misleading potential users about the products, by suppressing material facts, and by failing to warn users about the serious health effects which Defendants knew or should have known could result from the use of the subject drugs.

195

This advertising campaign on the whole, through its affirmative misrepresentations and omissions, falsely and fraudulently sought to create the impression and to convey to Plaintiffs and others on whom Plaintiffs would rely, that the use of either fenfluramine or dexfenfluramine alone or in combination with phentermine as "fen-phen" was safe and had fewer adverse health and side effects than was actually known to Defendants at the time they made these representations.

196

Phentermine, fenfluramine and dexfenfluramine were aggressively marketed by Defendants, often by encouraging unapproved off-label combination use of the products.

197

Defendants, as manufacturers and distributors, or agents thereof, knew of and recklessly encouraged the prevalence of off-label combination use of their drugs and failed to warn physicians and consumers that the combination drug regimen was not FDA approved, was not recommended

and had not been systematically tested by appropriate clinical trials or follow-up reporting of adverse effects.

198

Defendants undertook a promotional campaign that included the placement of numerous articles in scientific, medical and general interest magazines extolling the virtues of fenfluramine combined with phentermine in order to induce widespread use of the product. Many of these articles either cited or reported the results of studies that were funded by the AHP/WYETH Defendants. Thus, the AHP/WYETH Defendants actively encouraged, or failed to effectively discourage, combinations of these drugs.

199

Defendants actively encouraged, or failed to effectively discourage, combinations of these drugs by employing and/or contracting with commission based salespersons to promote the widespread prescribing of fenfluramine and/or the combination of fenfluramine and phentermine to patients that were not clinically obese.

200

The marketing program as a whole, by affirmative misrepresentations and omissions, falsely and fraudulently sought to create the image and impression that the use of fenfluramine, both individually and/or in combination with phentermine, was safe for human use, had fewer side effects and adverse reactions than other methods of weight loss, constituted a convenient, safe form of weight loss and would not interfere with daily life.

201

Defendants purposefully downplayed and understated the health hazards and risks associated with fenfluramine and/or dexfenfluramine.

202

Defendants falsely and fraudulently concealed relevant information from doctors and potential fenfluramine and/or dexfenfluramine users regarding the safety of fenfluramine and/or dexfenfluramine.

203

In particular, the AHP/WYETH Defendants' marketing efforts as well as their product inserts, falsely, fraudulently and negligently misrepresented a number of facts regarding fenfluramine and/or dexfenfluramine, including the following:

(1)     The presence of adequate testing of fenfluramine and the presence of adequate testing of any combination use of the product with phentermine;

(2)     Fenfluramine and/or dexfenfluramine's efficacy including but not limited to the severity, frequency and discomfort of side effects and adverse health effects caused by the drugs; and

(3)     The relative risks associated with the drugs including the prevalence of pulmonary hypertension and primary pulmonary hypertension.

204

On October 3, 1981, Dr. J.G. Douglas published *Pulmonary Hypertension and Fenfluramine* in the British Medical Journal. On January 25, 1986 an article entitled *Irreversible Pulmonary Hypertension after Treatment with Fenfluramine*, was published in the British Medical Journal. The

- 47 -

AHP/WYETH Defendants knew, or should have known, of the British Medical Journal articles and how those articles related to their drug Pondimin a decade later.

205

In 1984, Dr. Michael Weintraub published *A Double-Blind Clinical Trial in Weight Control: Use of Fenfluramine and Phentermine Alone and in Combination* in the Archives of Internal Medicine. Dr. Weintraub's study was supported by A.H. Robins (which was later acquired by AHP/WYETH). Despite noting some adverse effects associated with fenfluramine, Dr. Weintraub entirely failed to examine the long-term safety of fenfluramine. Instead, the study focused on the short-term effectiveness of the drugs used individually, and in combination.

206

In 1992, Dr. Weintraub published a series of articles in Clinical Pharmacological Therapies, in which he reported his research regarding the long term use of fenfluramine and phentermine for weight control. Dr. Weintraub's research was supported by the AHP/WYETH Defendants.

207.

Dr. Weintraub's research assumed the safety of fenfluramine, and did not examine the short-term or long-term safety of the drug. Further, the AHP/WYETH Defendants failed to conduct or fund any studies or research regarding the long-term safety of the fenfluramine drug, Pondimin. Nevertheless, the AHP/WYETH Defendants did promote to physicians and the public Dr. Weintraub's conclusion that long term combination use of fenfluramine and phentermine was effective for the management of obesity.

208.

By 1993, the AHP/WYETH Defendants labeling for Pondimin indicated that there were only 4 reported cases of pulmonary hypertension reported in association with the drug. Yet, that same year, Dr. Francois Brenot published *Primary Pulmonary Hypertension and Fenfluramine Use*, in the British Heart Journal. Dr. Brenot identified 25 cases of primary pulmonary hypertension associated with the use of fenfluramine and/or dexfenfluramine. The AHP/WYETH Defendants knew or should have known of the Brenot article. AHP/WYETH should have known by at least 1993 that Pondimin was defective and unreasonably dangerous. AHP/WYETH should have known by at least 1993 that AHP/WYETH's labeling of Pondimin was false.

209.

On June 24, 1994, AHP/WYETH Safety Surveillance Monitor, Amy Myers, wrote a memo to AHP Medical Monitor, Fred Wilson, and indicated that AHP/WYETH's database contained 37 cases of primary pulmonary hypertension associated with Pondimin. Further, in February 1994, the preliminary results of the International Primary Pulmonary Hypertension study ("IPPH Study") entitled "Appetite Suppressants and the Risk of Primary Pulmonary Hypertension" was released and available to the AHP/WYETH Defendants. The preliminary results of the IPPH Study confirmed the association between fenfluramine and dexfenfluramine, and pulmonary hypertension and primary pulmonary hypertension. The AHP/WYETH Defendants concealed the number of cases of primary pulmonary hypertension associated with Pondimin that the AHP/WYETH Defendants knew existed in order to continue to market Pondimin for profit.

210

On June 15, 1995 AHP/WYETH Defendants' James Ottinger, reported to Joseph Bathish the status of the European Committee on Proprietary Medicinal Product's ("CPMP") pharmacovigilance

- 49 -

discussion wherein the CPMP working party concluded that a causal relationship between anorectic agents, like fenfluramine and/or dexfenfluramine, and the occurrence of primary pulmonary hypertension had been established.

211

The August 26, 1996 issue of the New England Journal of Medicine reported the final results of IPPH Study, which had been preliminarily released in February 1994. The IPPH Study concluded that fenfluramine-based anorexigens, such as fenfluramine and dexfenfluramine, increased the risk of PPH by a multiple of more than 23 times.

212

The AHP/WYETH Defendants were aware of the result of the IPPH study by at least February 1994. Nevertheless, the AHP/WYETH Defendants failed to apprise the public or physicians that the risk of contracting PH or PPH was many, many multiples of that previously reported by the AHP in their literature. Even after the Brenot article and the preliminary release of the IPPH Study the AHP/WYETH Defendants failed to remove Pondimin from the market when the AHP/WYETH Defendants knew of the extreme danger, causal relationship and substantial risk of harm associated with the use AHP's drug Pondimin.

213

Even prior to their knowledge of the IPPH Study, the manufacturers and distributors of the subject drugs knew about the risks of PPH associated with using the subject drugs from experience with and subsequent banning of such drugs in various countries in Europe. Nevertheless, Defendants failed to apprise Plaintiffs, the public at large, or physicians of these material facts and risks.

214

The AHP/WYETH Defendants continued to promote Pondimin after learning of the extreme danger associated with it. The AHP/WYETH Defendants continued to promote Pondimin knowing the drug had no beneficial use. The AHP/WYETH Defendants labeling on the drug was totally

- 51 -

inadequate to alert prescribing physicians and patients of the actual PH or PPH danger and risk associated with its fenfluramine drug, Pondimin. The AHP/WYETH Defendants knew that danger and that risk.

215

Even after they knew of the danger the AHP/WYETH Defendants did not remove Pondimin from the market and did not do any further testing of the drug. Instead, the AHP/WYETH Defendants continued to market the drug to prescribing physicians like the physicians that prescribed the diet drugs to the Plaintiffs in this case.

216.

Further, in 1996 the AHP/WYETH Defendants introduced their dexfenfluramine drug, Redux into the U.S. market despite the fact that the AHP/WYETH Defendants knew of the danger and risks of primary pulmonary hypertension associated with Pondimin.

217.

The AHP/WYETH Defendants did not adequately or appropriately disclose fenfluramine and/or dexfenfluramine information or related drug information to physicians in the United States. Instead the AHP/WYETH Defendants fraudulently concealed the pulmonary hypertension (PH) or primary pulmonary hypertension (PPH) danger they knew of from physicians. As a result, physicians have over-prescribed fenfluramine and/or dexfenfluramine drugs, Pondimin and Redux, to patients who were grossly under-informed regarding the risk of PH or PPH associated with the drugs.

218.

Although the FDA approved phentermine and fenfluramine separately, the FDA never approved the drugs for combined use. The AHP/WYETH Defendants knew of and encouraged the prevalence of off-label combined use of their drugs, and failed to adequately and appropriately warn physicians and consumers that the combination drug regimen was not FDA approved, was hazardous due to the presence of fenfluramine, was not recommended and had not been systematically tested by appropriate clinical trials. Further, the AHP/WYETH Defendants fraudulently concealed, destroyed and removed written evidence and/or intentionally misrepresented evidence supporting the association between PH and/or PPH with fenfluramine and/or dexfenfluramine.

219.

The AHP/WYETH Defendants failed to fully and adequately warn doctors, the public and/or the Plaintiffs about the risk of pulmonary hypertension and primary pulmonary hypertension from Pondimin and Redux.

220.

At all times relevant to this cause, Defendants also knew or should have known of many other studies, regulatory actions and concerns, incidences of injury and/or death, concerns about the subject drugs, safety among scientists, researchers, regulators and other knowledgeable professionals, the dangers of drug combinations, meetings among pharmaceutical industry officers, executives or employees (including Defendants), internal memos and reports of health concerns regarding the subject drugs, the desire of Defendants to stop or delay regulatory action regarding the subject drugs, the lack of sufficient safety studies before and during marketing of the subject drugs, the contents of Defendants' own files, plans and reports, the danger of the off-label use of medications, the desire of Defendants to maximize profits despite safety concerns, safety concerns about the drugs which could

- 53 -

block or change FDA approval, regulatory actions, reports of injury and concerns about the subject

drugs in Europe, case reports of pulmonary hypertension, regulatory efforts to make changes in the

warning and labels required on these products and the plans and actions of Defendants to fight such

changes (including supplying regulators with false or misleading information), warning labels on the

products designed so that they would be overlooked by physicians and users such as Plaintiffs,

statements by medical professionals regarding safety concerns for the subject drugs, the fact that

phentermine is an MOAI drug which would be contra-indicated for usage with fenfluramine and

dexfenfluramine, prevalent usage of unsafe combinations of the subject drugs (as promoted by

Defendants) and adverse effects reported therefrom, the failure of Defendants to report incidences of

PPH resulting from the use of the subject drugs to regulators and health care professionals, false

information provided by sales representatives and others concerned with advertising and promoting

the subject drugs, efforts to derail regulatory review and oversight of the subject drugs, the

identification of groups most at risk of injury, the misrepresentation and concealment of reports

regarding adverse health effect of the subject drugs by Defendants from regulators and health care

professionals, and many other material facts regarding the subject drugs and which would have shown

the danger and adverse health effect of using the subject drugs. Nevertheless, Defendants did

suppress, misrepresent and failed to inform Plaintiffs, the public at large, or physicians of these

material facts and risks, and did encourage and promote unsafe usage by Plaintiffs and others.

221.

Defendants, having undertaken the manufacture, sale, marketing, distribution and promotion

of the diet drugs described herein owed a duty to provide Plaintiffs, physicians, state regulators and

others upon whom it was known, or should have known, by Defendants that Plaintiffs would rely,

- 54 -

accurate and complete information regarding the subject drug products. Nevertheless, Defendants misrepresented these facts, and failed to inform and did conceal from Plaintiffs, the public at large, and physicians of the material facts and risks of using the subject drugs.

222.

Defendants fraudulently represented to Plaintiffs, Plaintiffs' physicians, state regulators and others upon whom it was known, or should have been known that each Plaintiff would rely, that the subject drugs were safe and effective, that the benefits of taking the subject drugs outweighed any risks and misrepresented and concealed safety and effectiveness information regarding its products including but not limited to the propensity to cause serious physical harm when used alone and in combination. The continuous and ongoing course of action constituting fraud and misrepresentation upon Plaintiffs started as early as 1993, if not earlier, and continued through repeated acts and non-disclosure every year since then, in the State(s) in which the Plaintiffs reside, throughout the United States, and elsewhere.

223.

Defendants' fraudulent misrepresentations took the form of, among other forms, express and implied statements, publicly disseminated misinformation, misinformation provided to state regulatory agencies, inadequate, incomplete and misleading warnings about the subject products, failure to disclose important safety and injury information regarding the products while having a duty to disclose to Plaintiffs and others such information, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead regarding the safety of the subject products.

224.

- 55 -

The subject drug products were in fact unsafe, and the use of the subject drug products posed a risk of injury and death that outweighed the purported benefits of their use, such that injury was in fact caused to Plaintiffs and others.

225.

Defendants failed to adequately warn Plaintiffs and those whom they knew Plaintiffs would rely of the hazards associated with the use of the subject diet drug products and conspired to conceal and did conceal this knowledge from Plaintiffs and others. As a result of this failure to warn, Plaintiffs were caused to suffer the injuries and damages hereinafter set forth.

226.

Plaintiffs were prescribed and/or ingested the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and/or phentermine for weight loss and suffered injury thereby.

227.

Although Defendants knew or should have known that dangerous risks were associated with the use of fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine, Defendants proceeded to or permitted the same to be advertised, promoted, distributed and sold without adequate warnings of the serious side effects and dangerous risks. Defendants knew of and encouraged the prevalence of off-label combination use of their drugs and failed to warn physicians and consumers that the combination drug regimen was not FDA approved, was not recommended and had not been tested by appropriate clinical trials.

228.

The drugs fenfluramine, dexfenfluramine and phentermine were defective and unreasonably dangerous when they left the possession of Defendants in that, among other ways:

(4)    The subject drugs caused injury to the user far beyond any warned, noticed, expected or reasonable side effect or adverse reaction and when placed in the stream of commerce they contained unreasonably dangerous defects subjecting Plaintiffs to risks from expected or known usage, including bodily injury and death, which exceeded the benefits of the subject drugs;

(5)    When placed in the stream of commerce the subject drugs were defective in design and formulation, making use of the drugs more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with obesity and weight loss;

(6)    The subject drugs contained insufficient and/or ineffective warnings to alert consumers and users to the risks of injury and death by PPH;

(7)    The subject drugs were insufficiently tested (singularly or in combination);

(8)    There were insufficient instructions on the proper use of the subject drugs;

(f)    There was misleading advertising and promotion concerning the safety and benefits of using the subject drugs;

(7)    There were inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the significant risks previously described, Defendants failed to provide adequate warnings to users and consumers, and/or their physicians, and continued to promote the sale and use of the subject drugs; and the

subject drugs had not been materially altered or modified prior to the use of said drugs by Plaintiffs.

(8)     Defendants were in the business of distributing and selling the products made the basis of this lawsuit.  Defendants sold and/or distributed these products in a defective condition that was unreasonably dangerous to the user or ultimate consumer of this product.  Each product was expected to and did reach the user and consumer Plaintiffs without substantial change in the condition at which it was sold.

229.

As a direct and legal result of the defective condition of the drugs fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine, Plaintiffs have sustained and will continue to sustain serious and permanent injuries, physical pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors, physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems associated with their injuries.

230

Defendant Scott, Defendant Molnar, and certain John Doe Defendants each reside and work in the State of Georgia.  Said Defendants worked for or on behalf of the Manufacturing and Distributing Defendants herein in the State of Georgia, and elsewhere throughout the United States, at times relevant to this cause, and each actively and personally participated in the marketing,

distribution, promotion and advertising in each state that the subject diet drugs were ultimately used by Plaintiffs, resulting in injury to Plaintiffs.

231

The tortious actions and misdeeds of Defendants as alleged herein are ongoing and at all times relevant hereto were ongoing and continuous and constituted ongoing and continuous torts.

## COUNT I (STRICT LIABILITY-DEFECTIVE PRODUCT)

232

Plaintiffs adopt and re-alleges each paragraph above, as if fully set forth herein.

233

The allegations set forth under Count I apply only to the Manufacturer Defendants as identified hereinabove.

234

The fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine drugs which were designed, developed, researched, manufactured, and/or supplied by the Manufacturer Defendants were not merchantable nor reasonably suited to their intended use due to design defects in the subject drugs.

235

The risk of severe and life threatening complications and other side effects associated with use of the subject diet drugs constituted dangers and risks which were inherent in the design of the drugs that served to outweigh any utility the drugs may have had.

236.

The Manufacturer Defendants, individually and collectively, knew, or should have known, that fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine were, and are, dangerously defective products that posed an unacceptable risk unknown to, and unknowable by, the consuming public.

<div align="center">237.</div>

Plaintiffs have suffered injury and have incurred damages as a direct and proximate result of the design defects existing in regard to fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine causing Defendants to be liable to Plaintiffs under the doctrine of strict liability due to the defective nature of the subject drug products.

<div align="center">

### COUNT II (STRICT LIABILITY FAILURE TO WARN)

238.
</div>

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

<div align="center">239.</div>

The allegations set forth under Count II apply only to the Manufacturer Defendants as identified hereinabove.

<div align="center">240.</div>

At the time the Manufacturer Defendants placed fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine into the stream of commerce for sale or consumption by Plaintiffs, said Manufacturer Defendants failed to accompany said inherently dangerous products with sufficient warnings to advise doctors or consumers of the health risks associated with the subject drugs.

241.

To the extent that any warning was provided by the Manufacturer Defendants with the subject drug products, the warning was defective as it did not accurately reflect the true dangers associated with the defective drug products and did not accurately serve to warn physicians or consumers of:

(a) the true risks of injury associated with the products;

(b) the symptoms of such injuries;

(c) the scope of such injuries; or

(d) the severity of the known risks associated with these products.

242.

As a direct and proximate result of the Manufacturer Defendants' failure to provide adequate warnings with the subject drug products, Plaintiffs have suffered injury and damages for which they are entitled to recover.

## COUNT III (STRICT LIABILITY FAILURE TO TEST)

243.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

244.

The allegations set forth under Count III apply only to the Manufacturer Defendants as identified hereinabove.

245.

The Manufacturer Defendants failed to perform adequate testing of the subject drug products prior to placing said products in the stream of commerce, in that adequate testing would have shown

that fenfluramine (Pondimin), dexfenfluramine (Redux), and phentermine each posed a substantial and serious risk of harm to consumers of the drugs which were not accurately disclosed.

246.

As a direct and proximate result of the Manufacturer Defendants' breach of their duty to adequately test the subject drug products, Plaintiffs have suffered injury and damages for which they are entitled to recover.

## COUNT IV (NEGLIGENCE)

247.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

248.

At all times material hereto, each Defendant owed a duty to Plaintiffs to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, promotion, labeling, assembling, packaging, distributing and selling of the subject diet drug products.

249.

Defendants, individually and collectively, were negligent in their actions, misrepresentations, and omissions toward Plaintiffs.

250.

Defendants were negligent in their design, manufacture, processing, testing, advertising, marketing, promotion, labeling, assembling, packaging, distributing and/or selling the subject drugs which they knew were unreasonably dangerous and carried with them significant side effects. Such negligent acts include, but are not limited to the following:

- 62 -

(1)     Defendants acted negligently in designing, manufacturing, processing, advertising, marketing, promotion, testing, labeling, assembling, packaging, distributing and/or selling the drugs which they knew, or through the exercise of reasonable diligence should have known, were dangerous or unreasonably dangerous and carried with them significant side effects;

(1)     Defendants acted negligently in failing to include adequate warnings with the drugs that would alert consumers and physicians to the potential risks and serious side effects of the drugs;

(2)     Defendants acted negligently in failing to adequately and properly test the drugs before placing the drugs on the market;

(3)     Defendants acted negligently in failing to conduct sufficient testing on the drugs that, if properly performed, would have shown that the drugs had serious side effects;

(4)     Defendants acted negligently in failing to warn Plaintiffs that use of the drugs should be accompanied by a professional examination and regularly scheduled follow-up examinations so that primary pulmonary hypertension (PPH) could be avoided and/or detected early;

(5)     Defendants acted negligently in failing to warn Plaintiffs that use of the drugs carried a risk of temporary or permanent disability due to primary pulmonary hypertension (PPH) while at the same time promoting dangerous use of the drugs alone and in combination;

(6)     Defendants acted negligently in failing to warn Plaintiffs that use of the drugs carried a risk that heart transplant and lung transplant might become necessary to repair

- 63 -

damages caused by the drugs; and

(h)     Defendants acted negligently in failing to provide post-marketing warnings or instructions after Defendants knew or should have known of the significant risks of pulmonary and/or cardiovascular injury from the use of the drugs.

251.

Defendants knew or should have known that the drugs caused unreasonably dangerous risks and serious side effects of which Plaintiffs would not be aware. Defendants nevertheless manufactured, packaged, advertised, marketed, promoted, sold and distributed the subject diet drug products in a negligent manner knowing that there were safer methods and products for weight loss and/or weight control.

252.

As a direct and proximate result of the negligence of Defendants, Plaintiffs have sustained, and will continue to sustain in the future, serious and permanent injuries; physical pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings; loss of the ability to earn money in the past and the future; expense of hospitalization; medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems associated with their injuries, and as otherwise set forth under this Complaint.

**COUNT V (BREACH OF WARRANTIES)**

253.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

- 64 -

254.

When the Manufacturer Defendants and the John Doe Defendants placed the subject drugs into the stream of commerce, they knew of the use for which the drugs were intended (as diet aids and weight loss medications), and expressly and impliedly warranted the products to be of merchantable quality and to be safe and fit for such use.

255.

Plaintiffs reasonably relied upon the expertise, skill, judgment and knowledge of the Manufacturer Defendants and the John Doe Defendants and upon the express and/or implied warranty that the drugs were of merchantable quality and fit for use for weight loss and/or weight control.

256.

The drugs were not of merchantable quality and were not safe or fit for their intended use because the products were, and are, unreasonably dangerous and unfit for the ordinary purposes for which they were used, in that they caused injury to Plaintiffs and others far beyond any acceptable or warned side effect. Said drug products were unduly dangerous in expected use and did cause undue injury to Plaintiffs.

257.

As a direct and proximate result of the Manufacturer Defendants' and the John Doe Defendants' breach of both implied and expressed warranties, Plaintiffs has suffered injuries and sustained damages.

258.

- 65 -

As a direct and proximate result of the breach of warranty by the Manufacturer Defendants and the John Doe Defendants, Plaintiffs have sustained and will continue to sustain serious and permanent injuries: physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with her injuries; and as otherwise set forth under this Complaint.

## COUNT VI (FRAUD AND MISREPRESENTATION)

259.

Plaintiffs adopt and re-allege each paragraph above as if fully set forth herein.

260.

All Defendants, including Defendant Scott, Defendant Molnar, and the John Doe Defendants, knew or should have known that the material representations they were making regarding the safety and efficacy of the subject diet drug products were false, and made such misrepresentations with the intent or purpose that Plaintiffs, Plaintiffs' physicians, state medical boards, state pharmacy boards, state regulators, and others would rely upon them, leading to the ingestion and use of the subject drugs by Plaintiffs.

261.

- 66 -

At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiffs were unaware of the falsity of the statements being made, reasonably believed such statements to be true, and acted in reasonable reliance upon such statements.

262.

Defendants breached their duty to disclose to Plaintiffs (including those duties established under 21 C.F.R §§ 1.21; 99.101; 201.56; 201.57; 310.303; 314.70; 314.80; & 314.81 as well as under other laws of this State and others) by willfully and recklessly providing false, incomplete, and misleading information regarding the subject drug products, and Defendants acted with deliberate intent to deceive and mislead Plaintiffs, and those who Defendants knew or should have known each Plaintiffs would rely upon in ingesting and using of the subject diet drugs.

263.

Plaintiffs reasonably relied upon these inaccurate and fraudulent misrepresentations, and relied upon the absence of adverse safety information about the drugs which Defendants did suppress, conceal, or fail to disclose, and suffered damage and injury as a result thereof.

264.

As a direct and proximate result of Defendants' willful, fraudulent and intentional misrepresentations, made with the intent to deceive Plaintiffs and others, Plaintiffs have suffered injury and damages; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring

- 67 -

in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with their injuries; and as otherwise set forth under this Complaint.

## COUNT VII (NEGLIGENT AND RECKLESS MISREPRESENTATION)

265.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

266.

Defendants negligently and recklessly represented to Plaintiffs, Plaintiffs' physicians, state medical boards, state pharmacy boards, state regulators and other persons and professionals on whom it was known by Defendants that Plaintiffs would rely, as well as the public at large, that the subject diet drug products were safe to ingest and that the utility of these products outweighed any risk in use for the intended purpose of weight loss and/or weight control. Also, by negligently failing to disclose to Plaintiffs, and others for the benefit of Plaintiffs, important safety and injury information, thereby suppressing material facts about the drugs, while having a duty to disclose such information, which duty arose from their actions of making, marketing, lobbying in support of, promoting, distributing and selling pharmaceutical products to Plaintiffs and others, Defendants further led Plaintiffs to rely upon the safety of the product in its use.

267.

The false representations of Defendants were negligently and recklessly made, in that the subject drug products in fact caused injury, were unsafe, and the benefits of their use were far outweighed by the risk associated with use thereof. Defendants, individually and collectively, committed acts of negligent misrepresentation and negligent concealment by suppressing material facts relating to the dangers and injuries associated with, and caused by, the use of the subject drugs.

- 68 -

268.

Defendants knew or should have known that their representations were false. Defendants made such false, negligent and/or reckless representations with the intent or purpose that Plaintiffs and Plaintiffs' physicians would rely upon such representations, leading to the use of the subject drugs by Plaintiffs.

269.

As a direct and proximate result of Defendants' negligent and reckless misrepresentations or concealment of facts, upon which Plaintiffs reasonably relied, Plaintiffs have suffered injury and sustained damages for which Defendants are liable.

270.

In undertaking to disseminate the negligent and reckless misrepresentations set forth above, Defendants intended to cause the deregulation, removal of restrictions on sale, and otherwise make the subject diet drug products readily available to Plaintiffs and the general public for purchase and/or use of the subject drug products solely to facilitate economic gain by Defendants. As a direct result of the negligent and reckless misrepresentation of Defendants, Plaintiffs have sustained and will continue to sustain serious and permanent injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning

future medical problems including but not limited to those associated with their injuries; and as otherwise set forth under this Complaint.

### COUNT VIII (CONSPIRACY TO DEFRAUD AND FRAUDULENTLY CONCEAL)

271.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

272.

All Defendants, including Defendant Scott, Defendant Molnar, as well as the John Doe Defendants, entered into a conspiracy to suppress and fraudulently misrepresent material information that they were under a duty to disclose to Plaintiffs. In undertaking such conspiracy, Defendants purposely failed to properly inform consumers, including Plaintiffs, of the health risks associated with these products as known by Defendants. Defendants entered this conspiracy that included those acts previously described concerning various studies and reports which were not disclosed to the consuming public, and the other specific allegations regarding fraud and misrepresentation made hereinabove.

273.

Defendants conspired together to commit the tort of fraud and misrepresentation upon Plaintiffs, in the same manner as contained in the allegations of fraud, concealment and misrepresentation stated above, knowing that same would lead to increased sales of said products and personal gain to each Defendant with a proportionate increased incidence and risk of injury and death to Plaintiffs.

274.

Each Defendant herein participated in combination in the conspiracy to defraud, conceal and misrepresent, which conspiracy had an unlawful, oppressive, and immoral purpose (to increase profits by increasing incidences and risks of death and injury) and/or achieved its purpose by unlawful, oppressive and immoral means (the suppression and fraudulent misrepresentation of material facts regarding important safety and health information which Defendants had a duty to disclose and disseminate under applicable state and federal law) and did commit overt acts in furtherance of the conspiracy, which was a legal cause of actual injury and damage to Plaintiffs.

275.

As a result of the conspiracy, Defendants made fraudulent misrepresentations to Plaintiffs and others as set forth above, and important safety and injury information was concealed from and misrepresented to Plaintiffs, and others upon whom Plaintiffs relied, with the intent that Plaintiffs would rely upon the misrepresentations and absence of concealed information, as more specifically set forth above.

276.

As a result of the conspiracy, Plaintiffs relied upon the misrepresentations of fact as specifically stated above, and did rely upon the absence of important safety and injury information, and as a result was injured and suffered serious and permanent injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing

care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with her injuries; and as otherwise set forth under this Complaint.

## COUNT IX (JOHN DOE DEFENDANT LIABILITY)

277.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

278.

The John Doe Defendants listed in this Complaint, whose identities at this time are unknown, are also liable to Plaintiff in strict liability, negligence, breach of expressed and implied warranty, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, as well as those other actions pled in this Complaint.

279.

As a direct and proximate of the aforementioned illegal and tortious acts, Plaintiffs were injured and suffered damages including, but not limited to: (permanent and ongoing into the future) injury to Plaintiffs' hearts and other physical injuries; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems including but not limited to those associated with her injuries; and as otherwise set forth under this Complaint.

- 72 -

## COUNT X (SALES DIRECTOR DEFENDANT LIABILITY)

280

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

281.

The Sales Director Defendants, including those named as parties as well as those qualifying as John Doe Defendants, are also liable to Plaintiffs in negligence, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, as well as those other actions pled in this Complaint other than strict liability and breach of expressed and implied warranty.

282.

Those positive tortious and overt acts by the Sales Director Defendants were committed in their individual and representative capacity and include, but are not limited to, the following:  the Sales Director Defendants failed to convey adequate warnings to Plaintiffs through the prescribing physicians; the Sales Director Defendants were in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous subject drug which has caused harm to Plaintiffs; the Sales Director Defendants negligently distributed, marketed, advertised and/or promoted the unreasonably dangerous subject drug; the Sales Director Defendants made negligent misrepresentations regarding the safety and efficacy of the unreasonably dangerous subject drug; the Sales Director Defendants negligently failed to provide sufficient instructions to each Plaintiff and/or their prescribing physician(s) regarding the use of the subject drug; and the Sales Director Defendants acted negligently in their hiring, supervision and retention of the sales representatives they oversaw in that said Defendants knew or should have known that the field sales forces members acting under their

control were providing materially false and inaccurate information to Plaintiffs' physicians, and others upon whom Plaintiff relied, relating to the safety and efficacy of the subject drug product.

283.

As a direct and proximate result of such unlawful and tortious acts, Plaintiffs were injured and suffered damages including, but not limited to: (permanent and ongoing into the future) injury to each Plaintiffs gastrointestinal system and other physical injuries, physical pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life past and future; time in life that could have been spent doing things other than going to doctors, physically suffering, and undergoing medical monitoring; loss of earnings and loss of the ability to earn money in the past and the future; expense of hospitalization, medical and nursing care and treatment and medical monitoring in the past and in the future; fear and mental anguish concerning future medical problems as otherwise set forth under this Complaint.

## COUNT XI (JOINT AND SEVERAL LIABILITY)

284.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

285.

By virtue of their individual and collective acts and omissions, Defendants are jointly and severally liable to Plaintiffs as such acts and omissions have proximately caused Plaintiffs to suffer a single indivisible injury for which each Defendant is responsible.

## COUNT XII (PLAINTIFF'S DAMAGES)

286.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

287.

As a result of the individual, combined and concurring acts and omissions of Defendants as set forth herein above, each above-named Defendant, caused or contributed to cause the following injuries to Plaintiffs:

(1)     Plaintiffs have been caused to suffer physical injury, past, present and future pain and suffering, disability, impairment, lost capacity to enjoy life, mental anguish, and lost earnings in an amount to be proven at trial;

(2)     Plaintiffs have been caused to incur medical expenses and will in the future incur medical expenses an amount to be proven at trial;

(3)     Plaintiffs have been caused to undergo medical monitoring and will be required to undergo medical monitoring for the rest of Plaintiffs' lives an amount to be proven at trial; and

(4)     Plaintiffs have been caused to suffer past, present and future fear and mental anguish concerning their present and future medical problems including but not limited to those associated with her injuries in an amount to be proven at trial.

## COUNT XIII (LOSS OF CONSTORTIUM)

288.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

- 75 -

289.

At all times material to this lawsuit, the ingesting Plaintiffs and their respective Spousal Plaintiffs were married, lived, and continue to live as husband and wife. They were so married and living together at all times complained of herein and had a marital relationship that included all elements of consortium.

290.

Prior to the ingestion of Pondimin and phentermine and/or Redux, each ingesting Plaintiff provided substantial services, care and assistance to his or her respective spouse, as well as security, companionship, guidance, kindly offices and advice, income and support.

291.

As a direct and proximate result of negligence of the Defendants as alleged herein Plaintiffs were injured as set forth above and Plaintiffs spouses as named herein have suffered and will continue to suffer a loss of their spouses consortium including but not limited to a loss of services, care and assistance, society, companionship, comfort, guidance, kindly offices, income and support.

292.

As a direct and proximate result of Defendants' willful and wanton disregard of, and indifference to, the rights and safety of the general public and of Plaintiffs, Plaintiffs' spouses have suffered a loss of consortium, entitling them to compensatory and punitive damages.

- 76 -

## COUNT XIV (PUNITIVE DAMAGES)

293.

Plaintiffs adopt and re-allege each paragraph above, as if fully set forth herein.

294.

The conduct of each Defendant, as set forth herein above was intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that each Defendant acted only out of self interest and personal gain. Such conduct evidences a specific intent to cause harm to Plaintiffs as provided under O.C.G.A. § 51-12-5.1. Accordingly, punitive damages should be imposed against each Defendant (other than the AHP/WYETH Defendants) pursuant O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each Defendant from repeating or continuing such unlawful conduct.

WHEREFORE, Plaintiffs pray:

(1)     That process issue according to law;

(2)     That each Defendant be served with a copy of Plaintiffs= Complaint and show cause why the prayers for relief requested by each Plaintiff herein should not be granted;

(3)     That Plaintiffs be granted a trial by jury in this matter;

(4)     That the Court enter a judgment against each Defendant, jointly and severally, for all general and compensatory damages allowable to Plaintiffs under the terms of the National Settlement, to the extent it applies;

(5)     That the Court enter a judgment against each Defendant, jointly and severally, for all

special damages allowable to Plaintiffs under the terms of the National Settlement, to the extent it applies;

(6)     That the Court enter a judgment against each Defendant (other than the AHP/WYETH Defendants) serving to award Plaintiffs punitive damages under the provisions of O.C.G.A. § 51-12-5.1;

(7)     That the Court enter a judgment against each Defendant, jointly and severally, for all other relief sought by Plaintiffs under this Complaint in a manner consistent with the National Settlement, to the extent that it applies;

(8)     That the costs of this action be cast upon Defendants; and

(9)     That the Court grant Plaintiffs such further relief which the Court deems just and appropriate.

Respectfully submitted this _____ day of _____, 2003.

SCHLUETER, BUCK & CHILDERS
Robert C. Buck  -  Georgia Bar No. 092495
C. Andrew Childers - Georgia Bar No. 124398
940 Center Street
Conyers, Georgia 30012
(770) 388-9000

THE MATHIS LAW FIRM
Charles A. Mathis, Jr.  -  Georgia Bar No. 477025
The Equitable Building, ite 1400

Peachtree Street, N.W.
Atlanta, GA 30303

ASHCRAFT & GEREL, LLP
Michelle Parfitt - DC Bar No. 358592
(Pro Hac Vice Application filed herewith)
2000 L Street, Suite 400
Washington, DC 20036
(202)783-6400

Attorneys for Plaintiffs

DO NOT WRITE IN THIS SPACE

GEORGIA
FULTON COUNTY

STATE COURT OF FULTON COUNTY
     (Civil Division)

**RICHARD BROWN; SANDRA JANSEN;**
**LAMARA MORRIS; CHERYL CRADDOCK;**
**JOSEPH BANIEWICZ; LINDA WILSON;**
**CHRISTINA BURCH; NANCY BROCK; GEORGE LEWIS;**
**KATHLEEN RANSDELL; GLORIA HUBER;**
**THERESA PERFETTO; SHANON KEENAN**
**TRACY FOINTNO; ARZELLA WHITE;MICHAEL MEAD;**
**SYLVIA FITE; WILMA PARHAM;CARITA MYRICK;**
**LILLIAN IDLETT; ANGELA WHITFIELD;**
**KATHLEEN KNEZICH; DEBORAH JONES;**
**SUSAN THURNHERR; unknown plaintiff**
**CYNTHIA EDWARDS; SYLVIA BROWN;**
**BRENDA WORLEY; ELAINE DAVIDSON;**
**PATRICIA GRANIERO; GILLIAN PAWLICK;**
**HELEN MOORE; MONIQUE MARCOUX;**
**SHIELA HAROLD; LESA THOMAS; L.PHILLIP CARTER;**
**HELEN BLANQUE; MICHELLE CHICK;**
**JOHN LANDWEHR; BEVERLY DAVIS;**
**JOEL ROSENBLATT; PAMELA TAYLOR;**
**KATHY BARKER;  GLADYS HACKNEY; LINDA WHITE;**
**WANDA CARTER; FLORENCE WILSON;**
**BARBARA STADLER; CAROL CANNAROZZO;**
**ANGELA GUAGLIANO; NORMA JEAN ROBERTS;**
**EARL SCOTT; MARVELLE EDELIN; RHONDA TRACEY;**
**FRANCIS CLARK; BARBARA HARTNETT;**
**SALLY ROGALA; PATRICIA FULLER;**
**JOANN ABRAM; MARY SUGGS; TAMMY FRYMAN**
**MINNIE FOX; KIMBERLY GREEN; YVONNE RUTTERS;**
**DEBORAH GOOD; ANETTE KELLY;**
**MARILYN THOMPSON; ALLEN NESTOR; BLEN GARY;**
**And  GENA WILSON**
    (Plaintiff's Name and Address)
          VS.

**WYETH, INC., f/k/a AMERICAN HOME**
**PRODUCTS CORPORATION;**
**WYETH PHARMACEUTICALS, INC f/k/a**
**WYETH-AYERST PHARMACEUTICALS,**
**INC., a Division of American Home Products,**

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| ___Account | Principal $_____ |
| ___Contract |  |
| ___Note | Interest  $_____ |

| | |
|---|---|
| **Corporation; INDEVUS** | ___Tort |
| **PHARMACEUTICALS, INC., f/k/a** | ___Trover          Atty. Fees$_____ |
| **INTERNEURON PHARMACEUTICALS, INC.;** | ___Special Lien |
| **MEDEVA PHARMACEUTICALS, INC.;** | ___Foreign Judgment  Ct. Costs $_____ |
| **FISONS PHARMACEUTICALS; CELLTECH** | _X_ Personal Injury |
| **PHARMACEUTICALS, INC.; GOLDLINE** | |

**LABORATORIES, INC.; ZENITH-GOLDLINE**
**PHARMACEUTICALS, INC.;**
**ROBERT L. SCOTT, a citizen of the State of Georgia;**
**JOHN A. MOLNAR, a citizen of the State of**
**Georgia; STEVEN KAISER a citizen of the**
**State of Georgia; and JOHN DOE NOS. 1 – 5,**
   (Defendant's Name and Address)

## SUMMONS

TO THE ABOVE-NAMED DEFENDANT:   _____
You are hereby required to file with the Clerk of said Court and to serve a copy on the Plaintiff's Attorney, or on
Plaintiff if no Attorney, to-wit:

Robert C. Buck_____          _X_ NEW FILING
 (Name)                                   ____REFILING
940 Center Street, Conyers, GA 30012         PREVIOUS CASE NO._____
 (Address)
770-388-9000_____
 (Phone No.)

an Answer to the Complaint which is herewith served on you, within (30) days after service on you, exclusive of the
day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the
Complaint, plus cost of this action.

This_____          _____
                                          DEPUTY CLERK

### WRITE VERDICT HERE

We, the Jury, find for _____
_____
_____

This _____ day of _____, 200____.

                                          _____
                                          FOREPERSON

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

RICHARD BROWN; SANDRA JANSEN;   )
LAMARA MORRIS; CHERYL CRADDOCK;  )
JOSEPH BANIEWICZ; LINDA WILSON;   )
CHRISTINA BURCH; NANCY BROCK; GEORGE LEWIS; )  CIVIL ACTION FILE
KATHLEEN RANSDELL; GLORIA HUBER;  )  NO._____
THERESA PERFETTO; SHANON KEENAN  )
TRACY FOINTNO; ARZELLA WHITE;MICHAEL MEAD; )
SYLVIA FITE; WILMA PARHAM;CARITA MYRICK; )
LILLIAN IDLETT;  ANGELA WHITFIELD;  )
KATHLEEN KNEZICH; DEBORAH JONES;  )
SUSAN THURNHERR; unknown plaintiff   )
CYNTHIA EDWARDS; SYLVIA BROWN;  )
BRENDA WORLEY; ELAINE DAVIDSON;  )
PATRICIA GRANIERO; GILLIAN PAWLICK;  )
HELEN MOORE; MONIQUE MARCOUX;  )
SHIELA HAROLD; LESA THOMAS; L.PHILLIP CARTER; )
HELEN BLANQUE; MICHELLE CHICK;  )
JOHN LANDWEHR; BEVERLY DAVIS;  )
JOEL ROSENBLATT; PAMELA TAYLOR;  )
KATHY BARKER;  GLADYS HACKNEY; LINDA WHITE; )
WANDA CARTER; FLORENCE WILSON;  )
BARBARA STADLER; CAROL CANNAROZZO; )
ANGELA GUAGLIANO; NORMA JEAN ROBERTS; )
EARL SCOTT; MARVELLE EDELIN; RHONDA TRACEY; )
FRANCIS CLARK; BARBARA HARTNETT;  )
SALLY ROGALA; PATRICIA FULLER;  )
JOANN ABRAM; MARY SUGGS; TAMMY FRYMAN )
MINNIE FOX; KIMBERLY GREEN; YVONNE RUTTERS; )
DEBORAH GOOD; ANETTE KELLY;  )
MARILYN THOMPSON; ALLEN NESTOR; BLEN GARY; )
And  GENA WILSON     )
          )
  Plaintiffs,     )
          )
vs.          )
          )
WYETH, INC., f/k/a AMERICAN HOME  )
PRODUCTS CORPORATION;   )
WYETH PHARMACEUTICALS, INC f/k/a  )
WYETH-AYERST PHARMACEUTICALS,  )
INC., a Division of American Home Products )
Corporation; INDEVUS    )

1

| | |
|---|---|
| PHARMACEUTICALS, INC., f/k/a | ) |
| INTERNEURON PHARMACEUTICALS, INC.; | ) |
| MEDEVA PHARMACEUTICALS, INC.; | ) |
| FISONS PHARMACEUTICALS; CELLTECH | ) |
| PHARMACEUTICALS, INC.; GOLDLINE | ) |
| LABORATORIES, INC.; ZENITH-GOLDLINE | ) |
| PHARMACEUTICALS, INC.; | ) |
| ROBERT L. SCOTT, a citizen of the State of | ) |
| Georgia; JOHN A. MOLNAR, a citizen of the | ) |
| State of Georgia; STEVEN KAISER a citizen of | ) |
| the State of Georgia; and JOHN DOE NOS. | ) |
| 1 - 5, | ) |
| | ) |
| Defendants. | ) |

## APPLICATION OF MICHELLE PARFITT FOR ADMISSION PRO HAC VICE

Pursuant to U.S.C.R. 4.4, Michelle Parfitt hereby respectfully applies to this Honorable Court for leave to appear on behalf of the Plaintiffs in the above-styled action.

Michelle Parfitt is a member of the law firm of Ashcraft & Gerel, LLP, located at 2000 L Street, Suite 400, Washington, DC 20036. Ashcraft & Gerel, LLP's office telephone number is (202)783-6400.

Michelle Parfitt is duly licensed to practice law in the District of Columbia.

Michelle Parfitt has associated with Charles A. Mathis, Jr., Robert C. Buck and C. Andrew Childers, all of whom are residents of the State of Georgia, and all of whom are duly and regularly admitted to practice in the Superior Courts of the State of Georgia.

Charles A. Mathis, Jr. is a member of The Mathis Law Firm, located at The Equitable Building, Suite 1400, 100 Peachtree Street, N.W., Atlanta, GA 30303. The telephone number of The Mathis Law Firm is (404) 523-5000.

Robert C. Buck and C. Andrew Childers are members of the law firm Schlueter, Buck & Childers, located at 940 Center Street, Conyers, Georgia 30012. The telephone number of Schlueter,

2

Buck & Childers is (770) 388-9000.

Service may be had upon Charles A. Mathis, Jr., as well as Robert C. Buck and C. Andrew Childers in all matters connected with the above-styled action with the same effect as though personally made upon Michelle Parfitt.

This the 23rd day of June, 2003.


_____/s/ Michelle Parfitt_____
**ASHCRAFT & GEREL, LLP**
Michelle Parfitt  - DC Bar No. 358592
**2000 L Street**
**Suite 400**
**Washington, DC 20036**
**(202)783-6400**


_____/s/ Charles A. Mathis, Jr._____
**THE MATHIS LAW FIRM**
Charles A. Mathis, Jr.  -  Georgia Bar No. 477025
**The Equitable Building**
**Suite 1400**
**100 Peachtree Street, N.W.**
**Atlanta, GA 30303**
**(404) 523-5000**


_____/s/ C. Andrew Childers_____
**SCHLUETER, BUCK & CHILDERS**
Robert C. Buck  - State Bar of Georgia No. 092495
C. Andrew Childers - State Bar of Georgia No. 124398
**940 Center Street**
**Conyers, Georgia 30012**

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| RICHARD BROWN; SANDRA JANSEN; | ) | |
| LAMARA MORRIS; CHERYL CRADDOCK; | ) | |
| JOSEPH BANIEWICZ; LINDA WILSON; | ) | |
| CHRISTINA BURCH; NANCY BROCK; GEORGE LEWIS; | ) | CIVIL ACTION FILE |
| KATHLEEN RANSDELL; GLORIA HUBER; | ) | NO._____ |
| THERESA PERFETTO; SHANON KEENAN | ) | |
| TRACY FOINTNO; ARZELLA WHITE;MICHAEL MEAD; | ) | |
| SYLVIA FITE; WILMA PARHAM;CARITA MYRICK; | ) | |
| LILLIAN IDLETT;  ANGELA WHITFIELD; | ) | |
| KATHLEEN KNEZICH; DEBORAH JONES; | ) | |
| SUSAN THURNHERR; unknown plaintiff | ) | |
| CYNTHIA EDWARDS; SYLVIA BROWN; | ) | |
| BRENDA WORLEY; ELAINE DAVIDSON; | ) | |
| PATRICIA GRANIERO; GILLIAN PAWLICK; | ) | |
| HELEN MOORE; MONIQUE MARCOUX; | ) | |
| SHIELA HAROLD; LESA THOMAS; L.PHILLIP CARTER; | ) | |
| HELEN BLANQUE; MICHELLE CHICK; | ) | |
| JOHN LANDWEHR; BEVERLY DAVIS; | ) | |
| JOEL ROSENBLATT; PAMELA TAYLOR; | ) | |
| KATHY BARKER;  GLADYS HACKNEY; LINDA WHITE; | ) | |
| WANDA CARTER; FLORENCE WILSON; | ) | |
| BARBARA STADLER; CAROL CANNAROZZO; | ) | |
| ANGELA GUAGLIANO; NORMA JEAN ROBERTS; | ) | |
| EARL SCOTT; MARVELLE EDELIN; RHONDA TRACEY; | ) | |
| FRANCIS CLARK; BARBARA HARTNETT; | ) | |
| SALLY ROGALA; PATRICIA FULLER; | ) | |
| JOANN ABRAM; MARY SUGGS; TAMMY FRYMAN | ) | |
| MINNIE FOX; KIMBERLY GREEN; YVONNE RUTTERS; | ) | |
| DEBORAH GOOD; ANETTE KELLY; | ) | |
| MARILYN THOMPSON; ALLEN NESTOR; BLEN GARY; | ) | |
| And  GENA WILSON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WYETH, INC., f/k/a AMERICAN HOME | ) | |
| PRODUCTS CORPORATION; | ) | |
| WYETH PHARMACEUTICALS, INC f/k/a | ) | |
| WYETH-AYERST PHARMACEUTICALS, | ) | |
| INC., a Division of American Home Products | ) | |
| Corporation; INDEVUS | ) | |
| PHARMACEUTICALS, INC., f/k/a | ) | |

4

INTERNEURON PHARMACEUTICALS, INC.;            )
MEDEVA PHARMACEUTICALS, INC.;                 )
FISONS PHARMACEUTICALS; CELLTECH              )
PHARMACEUTICALS, INC.; GOLDLINE               )
LABORATORIES, INC.; ZENITH-GOLDLINE           )
PHARMACEUTICALS, INC.;                        )
ROBERT L. SCOTT, a citizen of the State of    )
Georgia; JOHN A. MOLNAR, a citizen of the     )
State of Georgia; STEVEN KAISER a citizen of  )
the State of Georgia; and JOHN DOE NOS.       )
1 - 5,                                        )
                                              )
        Defendants.                           )
_____ )

## ORDER APPROVING THE APPLICATION OF MICHELLE PARFITT FOR ADMISSION PRO HAC VICE

The Application of Michelle Parfitt for Admission Pro Hac Vice having come before this

Court, and the Court having read and considered the same, and for good cause shown, it is

ORDERED that said Application be granted, and that Michelle Parfitt be admitted to practice in this

Court pro hac vice.

SO ORDERED THIS _____ DAY OF _____, 2003.


                        _____
                        Judge, Superior Court of Fulton County

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS                    :    MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,          :
DEXFENFLURAMINE) PRODUCTS            :
LIABILITY LITIGATION                 :

THIS DOCUMENT RELATES TO:            :
                                     :
SHEILA BROWN, et al.                 :
                                     :
        v.                           :
                                     :
AMERICAN HOME PRODUCTS               :
CORPORATION                          :    CIVIL ACTION NO. 99-20593

MEMORANDUM AND PRETRIAL ORDER NO. 2627

Bartle, J.                                October 17, 2002

        Whether multiple joinder of parties, other than
derivative claimants, is permitted under the Settlement Agreement
approved in Pretrial Order No. ("PTO") 1415 in opt-out cases has
been a recurring but undecided question.  We have been advised
that there are pending a number of state court actions with
multiple plaintiffs who have exercised opt-out rights pursuant to
the Settlement Agreement.  Although initial opt-outs are not part
of the settlement, intermediate and back end opt-out plaintiffs
remain bound by the terms of the Settlement Agreement.  The court
entered PTO 2570 asking for briefs on the joinder issue.  The
court thereafter held oral argument.

        It is true, as a chorus of attorneys on all sides have
been quick to point out, that the Settlement Agreement says

nothing explicit about joinder of multiple class members as plaintiffs in lawsuits against Wyeth. Moreover, class counsel and counsel for Wyeth, who negotiated the settlement over many months, candidly admit that the subject was never discussed. Class counsel and Wyeth argue instead that we should imply a prohibition against joinder in opt-out cases to give efficacy to the court approved Settlement Agreement. They contend such a term is essential to a determination of the parties' rights and duties and is reasonable under the circumstances. See Restatement (Second) of Contracts § 204 (1981); Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 147-48 (3d Cir. 1987), aff'd in part and rev'd in part 489 U.S. 101 (1989).

In support of their position, class counsel and Wyeth focus on certain provisions of the Settlement Agreement. In return for Wyeth's waiving the statute of limitations, the class members agreed to certain limitations on their right to sue. Those who exercise intermediate or back-end opt-out rights are prohibited from seeking "punitive, multiple, or exemplary damages" and "may not use any previous verdicts or judgments against the AHP [now known as Wyeth] Released Parties or factual findings necessary to such verdicts or judgments for purposes of establishing claims or facts in order to obtain a verdict or judgment against the AHP Released Parties under the doctrines of res judicata, collateral estoppel, or other doctrines of claim or issue preclusion." See Settlement Agreement §§ IV.D.3.c. and

-2-

IV.D.4.c.  Allowing multiple joinder, it is argued, would undermine these provisions designed to protect Wyeth.

We do not think that the joinder of multiple intermediate and back-end opt-out plaintiffs adversely affects the intentions or goals of the parties to the Settlement Agreement.  Each such plaintiff in a joint trial is limited to compensatory damages, and each must prove his or her own individual claim.  We are confident that in these circumstances, the appropriate limiting instructions to the jury will protect Wyeth from the dangers related to res judicata, collateral estoppel, issue preclusion and claim preclusion.  Since evidence concerning malicious or wanton conduct on the part of Wyeth will not be before the jury, the danger of improperly inflated or otherwise improper verdicts is minimized, if not eliminated.

In addition, we cannot ignore the interests of judicial economy which are at the heart of procedural rules allowing multiple joinder.  They generally have the effect of saving the court's time and reducing the parties' costs.  They also allow cases, particularly in overburdened jurisdictions, to move to trial more quickly than if a blanket rule existed requiring each person's case to be instituted and tried separately.  We recognize, of course, that abuse of joinder can sometimes occur.  Absent evidence to the contrary, we must assume that the various state courts will interpret and apply their local joinder rules in a fair and impartial way with respect to intermediate and back-end opt-outs, just as this court and other federal courts

-3-

must apply Rule 20 of the Federal Rules of Civil Procedure to actions in the federal system.

While we will not read into the Settlement Agreement any prohibition against the joinder of intermediate and back-end opt-out plaintiffs in a single lawsuit, we have a decidedly different view with respect to the joinder of intermediate and back-end opt-out claims with initial opt-out claims.  Unlike intermediate and back-end opt-outs, initial opt-out plaintiffs are permitted to seek punitive damages and are not bound by any limitations concerning res judicata, collateral estoppel, or the like.  Indeed, they are not part of the class action settlement at all.  Thus, the initial opt-out plaintiff may introduce evidence of malicious or wanton conduct on the part of Wyeth.  Regardless of any limiting instructions, such evidence in a joint trial with intermediate or back-end opt-out plaintiffs would clearly infect the jury as it deliberates with respect to the intermediate and back-end opt-out claims that were also being tried.  Such a result would greatly prejudice Wyeth and would surely eviscerate the evidentiary and damage limitations for which Wyeth bargained in the Settlement Agreement in return for the waiver of the statute of limitations.  See In re Prudential Ins. Co. of Am., 261 F.3d 355, 367-68 (3d Cir. 2001)

Accordingly, we hold that a trial before the same jury of any initial opt-out claim with any intermediate or back-end opt-out claim would undermine the Settlement Agreement.  We will enjoin intermediate and back-end opt-out plaintiffs from

-4-

participating in such a trial. See id. Based on the present record, the propriety of joinder in other circumstances will depend on the procedural or other rules in effect in the particular jurisdiction where the case is pending.[1]

_____

1. This decision does not preclude or limit this court from considering in a particular case the issue of fraudulent joinder to prevent a federal court from exercising subject matter jurisdiction. See Pretrial Order No. 2567.

**IN THE STATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

|  |  |  |
|---|---|---|
| | ) | |
| BEVERLY BURT and GARY FULTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION FILE |
| | ) | No. 01VS022208A |
| AMERICAN HOME PRODUCTS | ) | |
| CORPORATION; WYETH-AYERST | ) | |
| PHARMACEUTICALS, INC., A | ) | |
| DIVISION OF AMERICAN HOME | ) | |
| PRODUCTS CORPORATION f/k/a | ) | |
| Wyeth Laboratories, Inc.; | ) | |
| INTERNEURON | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| MEDEVA PHARMACEUTICALS, | ) | |
| INC.; FISONS PHARMACEUTICALS; | ) | |
| CELLTECH PHARMACEUTICALS, | ) | |
| INC.; EON LABS MANUFACTURING, | ) | |
| INC.; RUGBY LABORATORIES, INC.; | ) | |
| ROBERT L. SCOTT, a citizen of the | ) | |
| State of Georgia; JOHN A. MOLNAR, a | ) | |
| citizen of the State of Georgia and JOHN | ) | |
| DOE NOS. 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**ORDER**

This case comes before the Court on "Certain Defendants'[1] Motion For Severance Or

Separate Trials Of Plaintiffs' Claims," filed May 31, 2002. The case came before the Court for

---

[1] The "Wyeth Defendants," consisting of Wyeth, Wyeth-Ayerst Pharmaceuticals, Inc.,
Robert L. Scott and John A. Molnar, filed the Motion.

1

oral argument on November 22, 2002. Having considered the arguments of counsel, as well as all submissions of the parties, the Court hereby finds as follows:

O.C.G.A. Section 9-11-20(a) provides in part: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." Id. Severance is largely a matter within the trial court's discretion. Vitner v. Funk, 182 Ga. App. 39 (1987).

The Multi District Litigation (MDL) Order approving nationwide class settlement for users of Pondimin and Redux noted that the class was basically exposed to one substance which was manufactured by one defendant. The Order further notes that each class member alleges a common defect in the diet drugs at issue. Moreover, the class suffers from one particular type of injury, primary pulmonary hypertension (PPH). PPH is a rare condition and each Plaintiff herein had to meet the stringent definition of PPH as defined in the national settlement. The diagnosis has been made with regard to each Plaintiff in this case by a board certified pulmonologist or cardiologist. Given these facts, the Court finds that the Plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions and occurrences. The Court will now examine whether any question of law or fact common to the Plaintiffs' cases will arise in the action.

Counsel for Plaintiffs has represented to the Court that Plaintiff Burt intends to call ten expert witnesses and Plaintiff Fults intends to call nine expert witnesses. Eight of the experts are the same and will testify in both cases. Moreover, Plaintiffs expect the testimony regarding each individual Plaintiff's medical condition to take one to two days for each Plaintiff. Defendants estimate the time of trial in this case to be at least four weeks. There are clearly common

2

questions of fact in these two cases and judicial economy strongly favors trying these cases together.

Judge Bartle, in Memorandum And Pretrial Order No. 2627, filed October 17, 2002, addressed many of the concerns raised by Defendants. Judge Bartle stated:

> "We do not think that the joinder of multiple intermediate and back-end opt-out plaintiffs adversely affects the intentions or goals of the parties to the Settlement Agreement. Each such plaintiff in a joint trial is limited to compensatory damages, and each must prove his or her own individual claim. We are confident that in these circumstances, the appropriate limiting instructions to the jury will protect Wyeth from the dangers related to res judicata, collateral estoppel, issue preclusion and claim preclusion. Since evidence concerning malicious or wanton conduct on the part of Wyeth will not be before the jury, the danger of improperly inflated or otherwise improper verdicts is minimized, if not eliminated.
>
> In addition, we cannot ignore the interests of judicial economy which are at the heart of procedural rules allowing multiple joinder. They generally have the effect of saving the court's time and reducing the parties' costs. They also allow cases, particularly in overburdened jurisdictions, to move to trial more quickly than if a blanket rule existed requiring each person's case to be instituted and tried separately."

Id. at page 3. The Court agrees with Judge Bartle's reasoning. Moreover, the Court finds that the Plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions and

3

occurrences and that there are common questions of fact in these two cases. Therefore, joinder is appropriate under O.C.G.A. Section 9-11-20(a).

Additionally, this ruling is consistent with the liberal interpretation of Rule 20 favored by federal courts. In <u>Alexander v. Fulton County</u>, 207 F.3d 1303 (11th Cir. 2000), the Eleventh Circuit Court of Appeals discussed Federal Rule of Civil Procedure 20, the permissive joinder rule on which O.C.G.A. Section 9-11-20 is based. In <u>Alexander</u>, eighteen plaintiffs sued defendant for discriminatory practices. Following discovery, the defendants moved to sever the plaintiffs' claims on the grounds that the multiple claims would confuse the jury and unfairly prejudice the defendant. The district court denied the motion.

The Eleventh Circuit affirmed on appeal, noting that "the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." <u>Id</u>. at 1323. The Court held that, even though each plaintiff had a different claim and sought different relief, all of the plaintiffs' claims were "based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame." <u>Id</u>. at 1324. Similarly, in the case at bar, the plaintiffs allegedly suffered from a common defect in Defendants' drugs and received the same rare diagnosis from a certified cardiologist or pulmonologist.

**THEREFORE**, it is **ORDERED** that Defendants' Motion For Severance Or Separate Trials Of Plaintiffs' Claims is hereby **DENIED**.

So **ORDERED** this 27th day of November 2002.

<u>/s/ Judge Penny Brown Reynolds</u>
Judge Penny Brown Reynolds
State Court of Fulton County

4

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| BEVERLY BURT; and SANDRA FULTS, | ) | |
| In her capacity as Personal Representative of the | ) | |
| Estate of GARY FULTS, deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN HOME PRODUCTS CORPORATION; | ) | CIVIL ACTION |
| WYETH-AYERST PHARMACEUTICALS INC., | ) | FILE NO. 01VS022208A |
| A DIVISION OF AMERICAN HOME PRODUCTS | ) | |
| CORPORATION f/k/a Wyeth Laboratories, Inc.; | ) | |
| MEDEVA PHARMACEUTICALS, INC.; | ) | |
| INTERNEURON PHARMACEUTICALS, INC.; | ) | |
| MEDEVA PHARMACEUTICALS, INC.; | ) | |
| FISONS PHARMACEUTICALS; CELLTECH | ) | |
| PHARMACEUTICALS, INC.; EON LABS | ) | |
| MANUFACTURING, INC.; RUGBY | ) | |
| LABORATORIES, INC.; ROBERT L. SCOTT, | ) | |
| a citizen of the State of Georgia; DAVID E. WILKES, | ) | |
| a citizen of the State of Georgia; TRACI E. MULLIS, | ) | |
| a citizen of the State of Georgia; and | ) | |
| JOHN DOES NOS. 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

This case having come before the Court on the Wyeth Defendants' Emergency Motion

For Reconsideration Of the Court's November 27, 2002 Order Or, In The Alternative, For

Issuance of a Certificate of Immediate Review; and the Court having read and considered the

Defendants' motion and brief, as well as Plaintiffs' Response Filed In Opposition to such motion

and request for relief, and the entire record before the Court;

For good cause shown:

1) Let it be **ORDERED** that the Defendants' Motion for Reconsideration is hereby

**DENIED**;

2) Let it be further **ORDERED** that the Defendants' request for a Certificate of

Immediate Review is also hereby **DENIED**.

So **ORDERED** this the 6th day of December, 2002.

_____/s/_____
Judge Penny Brown Reynolds
State Court of Fulton County



# EXHIBIT / ATTACHMENT

## B

**(To be scanned in place of tab)**

## CONSENT TO REMOVAL

Defendant    INDEVUS    PHARMACEUTICALS,    INC.,    f/k/a

INTERNEURON PHARMACEUTICALS, INC. hereby consents to the removal of

this action.

This **23** day of July 2003.

_____

M. Elizabeth O'Neill
Georgia Bar No. 058163
(*authorized with express permission*)

Hawkins & Parnell, LLP                *Attorneys for INDEVUS*
4000 SunTrust Plaza                   *PHARMACEUTICALS, INC., f/k/a*
303 Peachtree St., N.E.               *INTERNEURON*
Atlanta, Georgia  30308               *PHARMACEUTICALS, INC.*
404-614-7400
404-614-7500 (Fax)

## CONSENT TO REMOVAL

Defendant MEDEVA PHARMACEUTICALS, INC. hereby consents to the

removal of this action.

This **23** day of July 2003.

_____

Lori G. Baer
Georgia Bar No. 174455
Clifton M. Iler
Georgia Bar No. 382030
(*authorized with express permission*)

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

*Attorneys for CELLTECH*
*PHARMACEUTICALS*

## CONSENT TO REMOVAL

Defendant CELLTECH PHARMACEUTICALS, INC. hereby consents to the removal of this action.

This 23 day of July 2003.

_____
Lori G. Baer
Georgia Bar No. 174455
Clifton M. Iler
Georgia Bar No. 382030
(*authorized with express permission*)

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

*Attorneys for CELLTECH*
*PHARMACEUTICALS*

## CONSENT TO REMOVAL

Defendant GOLDLINE LABORATORIES, INC. hereby consents to the removal of this action.

This 23 day of July 2003.

                    _____
Marvin A. Devlin
Georgia Bar No. 219969
Chrisna J. Walker, Esq.
Georgia Bar No. 731598
Ernest Redwine, Jr.
Georgia Bar No. 597610
*(authorized with express permission)*

Devlin & Robinson PC
The Candler Building, Suite 300
127 Peachtree Street, NE
Atlanta, GA 30303

*Attorneys for GOLDLINE
LABORATORIES, INC.*

## CONSENT TO REMOVAL

Defendant ZENITH-GOLDLINE PHARMACEUTICALS, INC. hereby consents to the removal of this action.

This **23** day of July 2003.


_____

Marvin A. Devlin
Georgia Bar No. 219969
Chrisna J. Walker, Esq.
Georgia Bar No. 731598
Ernest Redwine, Jr.
Georgia Bar No. 597610
(*authorized with express permission*)

Devlin & Robinson PC
The Candler Building, Suite 300
127 Peachtree Street, NE
Atlanta, GA 30303

*Attorneys for ZENITH-GOLDLINE*
*PHARMACEUTICALS, INC.*